IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ORTHOFLEX, INC. d/b/a INTEGRATED ORTHOPEDICS, MOTION MEDICAL TECHNOLOGIES, LLC and WABASH MEDICAL COMPANY, LLC<br><br>Plaintiffs,<br><br>v.<br><br>THERMOTEK, INC.,<br><br>Defendant. | Case No. 10-cv-1875<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on motion by Defendant Thermotek, Inc. ("Thermotek") to transfer venue to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 28.) The motion has been fully briefed and the Court heard oral argument from the parties on November 29, 2010. For the reasons that follow the Court grants Thermotek's motion.

## BACKGROUND

Plaintiffs Orthoflex, Inc. d/b/a Integrated Orthopedics ("Orthoflex"), Motion Medical Technologies, LLC ("Motion Medical"), and Wabash Medical Company, LLC ("Wabash Medical") distributed medical devices they purchased from Thermotek. (Dkt. No. 9 ¶¶ 1-3.) Plaintiffs are either Illinois corporations or Illinois limited liability corporations. (*Id.*) Integrated Orthopedics and Motion Medical have their principal place of business within the Northern District of Illinois, Eastern Division. Wabash Medical has its primary place of business outside of this district in Indianapolis, Indiana. (*Id.* at ¶ 3.) Thermotek is a Texas corporation with its principal place of business in Flower Mound, Texas. (Dkt. No. 12 ¶ 4.) Thermotek admits that it does business within, and is subject to personal jurisdiction in this district. (*Id.* at ¶ 6.)

Plaintiffs are related entities engaged in the business of providing medical apparatus to patients under the care of physicians and/or hospitals. (Dkt. No. 45-1 ¶ 1.) Michael Wilford ("Wilford"), the chief operating officer for each of the Plaintiffs, began looking for thermo compression devices to fit the needs of Wabash Medical and Motion Medical and learned that Thermotek offered such devices. (*Id.* at ¶ 4.) Wilford contacted Thermotek and inquired about its VascuTherm Therapy System ("VascuTherm System"). (*Id.* at ¶¶ 3-4.) The VascuTherm System is a thermo compression device that provides fluid heating, cooling, and compression therapy to patients in the treatment of various medical conditions. (Dkt. No. 9 ¶ 8.) Plaintiffs allege Wabash Medical began purchasing VascuTherm Systems from Thermotek in March 2008. (Dkt. 9 ¶ 8.) Shortly thereafter, Motion Medical also began purchasing VascuTherm Systems. (Dkt. No. 45-1 ¶ 5.) In May 2008, Melissa Wojcik ("Wojcik"), a sales manager from Thermotek's Downer's Grove, Illinois office contacted Wilford and proposed Plaintiffs distribute the VascuTherm System and other Thermotek products in Illinois and Indiana. (*Id.*) One year later, Wilford traveled to Texas and toured Thermotek's facilities. Following Wilford's visit, Wabash Medical, Motion Medical, and Thermotek reached agreement on a Distributor Agreement effective May 6, 2009. (Dkt. No. 45-3.)

Orthoflex began purchasing VascuTherm Systems after Wilford acquired the company in August 2009. (Dkt. No. 45-1 ¶ 7.) Plaintiffs collectively purchased over 800 VascuTherm Systems between March 2008 and January 2010. (*Id.* at 9.) Plaintiffs allege that many of the VascuTherm Systems failed due to Thermotek's use of a plastic resin known as acrylonitrile-butadiene-styrene ("ABS") to manufacture the working fluid reservoir in the VascuTherm System. (Dkt. No. 9 ¶ 9.) Plaintiffs claim that Thermotek represented and warranted that the ABS reservoir was compatible with an operating fluid mixture comprised of water and isopropyl

alcohol, which was either heated or cooled to affect the therapy provided by the VascuTherm System. (*Id.* at ¶¶ 9-11.) Plaintiffs claim the ABS resin forming the reservoir was not compatible with a water and isopropyl alcohol mixture and that this incompatibility degraded the reservoir, caused leakage, and damaged the VascuTherm Systems including its electronic components. (*Id.* at ¶12.)

On March 25, 2010, Plaintiffs filed a four count complaint alleging breach of an express warranty, breach of an implied warranty of merchantability, breach of an implied warranty of fitness for a particular purpose, and breach of the Distributor Agreement. (*Id.* at pp. 7-11.) Plaintiffs claim they suffered economic losses, lost profits, repair expenses, and property damage resulting from Thermotek's alleged breaches and defects in the VascuTherm Systems. (*Id.* at ¶¶ 16-17, 20, 23, 26.) Thermotek filed is answer and affirmative defenses on April 22, 2010 admitting that this Court has subject matter jurisdiction over the claims, that Thermotek is subject to personal jurisdiction in this district, and that venue is proper in this district. (Dkt. No. 12. ¶¶ 6-7.) In May 2010, the Court directed the parties to participate in a settlement conference. (Dkt. No. 17.) That conference was held in July 2010 but the parties were unable to reach agreement. (Dkt. No. 24.) Thereafter on August 26, 2010, Thermotek filed the instant motion seeking transfer to the Northern District of Texas, Dallas Division asserting this case's "overwhelming connection to Texas" clearly makes the Northern District of Texas a more convenient venue that will better serve the interests of the parties, the witnesses, and the judicial system as a whole. (Dkt. No. 28.)

## **LEGAL STANDARD**

A district court is vested with broad discretion to transfer a civil action to another district where the action may have been filed "[f]or the convenience of the parties and witnesses, in the

interest of justice." *In Re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663 (7th Cir. 2003); 28 U.S.C. § 1404(a). Transfer is appropriate pursuant to 28 U.S.C. § 1404(a) where: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties and the witnesses and will promote the interest of justice. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 959 (N.D. Ill. 2000) (Alesia, J.). The moving party has the burden of establishing by reference to particular circumstances, that the transferee forum is clearly more convenient. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). In determining whether to grant or deny a motion to transfer venue, a district court must conduct an "individualized, case-by-case consideration of convenience and fairness." *Id.* at 219 (citing *Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

In analyzing whether transfer is convenient under 28 U.S.C. § 1404(a), a district court must consider both private and public interests. Factors relevant to the private interests of the parties include: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses. *Amoco Oil*, 90 F. Supp. 2d at 960. The factors relevant to public interest focus on the efficient administration of the court system and include such considerations as: (1) the speed at which the case will proceed to trial; (2) the court's familiarity with the applicable law; (3) the relation of the community to the occurrence at issue; and (4) the desirability of resolving controversies in their locale. *Id.* at 961-962. The weighting of factors for and against transfer is within the sound discretion of the district court. *See, e.g., Coffey*, 796 F.2d at 291.

**DISCUSSION**

Venue is proper in this district because Plaintiffs allege jurisdiction based solely on diversity of citizenship and both Plaintiffs and Thermotek assert that this Court has personal jurisdiction over Thermotek. Where jurisdiction is founded only on diversity of citizenship, an action may be brought in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced….*For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.*

28 U.S.C. § 1391(a) and (c) (emphasis added). Plaintiffs allege Thermotek "is a corporation organized and existing under the laws of the State of Texas." (Dkt. No. 9 ¶ 4.) Consequently, venue is also proper in the Northern District of Texas because Thermotek has sufficient minimum contacts to subject it to personal jurisdiction in that district. (Dkt. No. 28. p. 6.) Thus, the first two considerations in the transfer analysis are satisfied and the Court next considers whether the transfer will serve the convenience of the parties and the witnesses and will promote the interest of justice.

1. **Private Interest Factors**

    a. **The Plaintiff's Choice of Forum**

Plaintiffs are all Illinois corporations each having their principal place of business in this district or within 200 miles of this district.[1] A plaintiff's choice of forum is generally given substantial weight and should rarely be disturbed. *In Re: Nat'l Presto*, 347 F.3d at 664. Deference to the Plaintiff's choice of forum is recognized when the forum is the Plaintiff's home forum. There is no district that can serve as the home district for all three Plaintiffs given that Orthoflex and Motion Medical have their principal place of business in Illinois and Wabash Medical's principal place of business is in Indianapolis, Indiana. This district, however, is the home district for two of the three Plaintiffs. Thermotek correctly notes that the plaintiff's choice of forum is not determinative if the balance of considerations weighs heavily in the defendant's favor. (Dkt. No. 28 p. 7.). Nonetheless, the Court finds this factor weighs in Plaintiffs' favor as this district is the home district for the maximum number of Plaintiffs.

### b. The Situs of the Material Events

Thermotek argues that all of the material events giving rise to Plaintiffs' claims occurred in Texas. (Dkt. No. 28 p. 8.) These events include the design, manufacture, and repair of the VascuTherm Systems, all of which occur at Thermotek's facility in the Dallas suburb of Carrollton, Texas. At the hearing, Thermotek contended that although the complaint asserts breach of contract and warranty claims, that Plaintiffs allege design and manufacturing defects in the VascuTherm System are the core of this action. (Dkt. No. 45-1, Declaration of Michael Wilford, Ex. A ¶ 10 ("I have learned that [failures of the ABS reservoir], among others, were the result of material defects in the design and operation of the VascuTherm Systems.").) Courts have routinely held that in cases where the design and manufacture of a product is at issue, the situs of material events is where the product was produced. *See, e.g., Aldridge v. Forest River,*

---

[1] The Court takes judicial notice of the fact that Wabash Medical's principal place of business in Indianapolis, Indiana is approximately 175 miles from the Everett McKinley Dirksen United States Courthouse in Chicago, Illinois.

*Inc.*, 436 F. Supp. 2d 959, 961 (N.D. Ill. 2006) (Bucklo, J.); *Von Holdt v. Husky Injection Molding Sys.*, 887 F. Supp. 185, 188-89 (N.D. Ill. 1995) (Castillo, J.). Plaintiffs did not address this factor in their responding brief or during oral argument. The Court finds this factor weighs in favor of transfer.

### c. The Relative Ease of Access to Sources of Proof

Thermotek argues that critical information regarding the design and manufacture of the allegedly defective VascuTherm system is located in the Northern District of Texas. (Dkt. No. 28 pp. 8-9.) Plaintiffs do not dispute the location of this information and instead argue that the majority of discovery will be in the form of documents that are equally accessible in either district given advances in technology. (Dkt. No. 44 p. 8.) Plaintiffs failed to counter by indentifying any evidence or witness located in this district relating to the alleged failures of the VascuTherm System. Plaintiffs also failed to consider that access to the manufacturing and repair facilities in Carrollton, Texas may be necessary to determine whether the VascuTherm Systems were defective in any manner. Given the need to access non-documentary evidence located in the Northern District of Texas, the Court finds this factor also weighs in favor of transfer.

### d. The Convenience of the Parties

When a plaintiff chooses its own forum, it is reasonable to assume that the choice is convenient. The plaintiff is, after all the master of the complaint. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002). When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience. *In Nat'l Presto*, 347 F.3d at 665. When the inconvenience of the alternative venues is comparable, there is no basis for a transfer, and the tie is awarded to the plaintiff. *Id.*

One consideration in the convenience of the parties analysis is the cost that parties must incur in making their employees available for deposition and trial. Securing the attendance of the multiple Thermotek employees each having specific knowledge concerning the design, manufacture, or repair of the VascuTherm Systems comes at great cost to Thermotek should the proceedings remain in this district. Thermotek would also be adversely affected by the time away from work that would be necessary to allow these employees to travel to and testify in this district.

The Court finds that the inconvenience imposed on the parties by the alternate venues is not comparable here. Litigating in the Northern District of Texas imposes a burden on Plaintiffs. For purposes of this factor, that burden is significantly outweighed by the burden imposed on Thermotek to litigate the proceedings in this district. Consequently, this Court finds this factor weighs in favor of transfer to the Northern District of Texas.

### e. The Convenience of the Witnesses

The convenience of witnesses has often been described as the most important factor in the § 1404(a) analysis. *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006) (Guzman, J.); *Brandon Apparel Group v. Quitman Manuf. Co.*, 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999) (Alesia, J.). When weighing the convenience of witnesses, a court considers not only the number of witnesses located in each forum but also the nature and importance of their testimony. *See, e.g., Aldridge*, 436 F. Supp. 2d at 961-62. At the hearing, both parties focused on the convenience of non-party witnesses and claimed that this factor was the most salient consideration in the transfer analysis. Thermotek argued that all of Plaintiffs' interrogatories inquired about Thermotek's design, manufacturing, repair, and technician training activities. Thermotek contended that four individuals who are the proper witnesses to

address these issues are non-parties who reside outside of this district and are unwilling to travel to Chicago.[2] Plaintiffs countered by challenging the importance of these witnesses since Thermotek did not identify them in its Rule 26(a)(1) Initial Disclosure or in response to Plaintiffs' interrogatories. A review of Thermotek's interrogatory responses, which were attached as an exhibit to Plaintiffs' responding brief (Dkt. No. 45-7 p. 4), indicates that Thermotek did identify these witnesses to Plaintiffs by reference to documents Thermotek produced. Plaintiffs also argued that the videotaped depositions of these witnesses can be taken and used at trial if necessary. Plaintiffs ignore the fact that live testimony is preferred over other alternatives whenever feasible. *See, e.g., Bally Mfg. Corp. v. Kane*, 698 F. Supp. 734, 738 (N.D. Ill. 1988) (Alesia, J.); *Hess v. Gray*, 85 F.R.D. 15, 25 (N.D. Ill. 1979) (Aspen, J.)

Plaintiffs identified only one witness in their Rule 26(a)(1) Initial Disclosure who would be outside of the court's subpoena power and unwilling to travel to Dallas if the matter were transferred. Plaintiffs argue that this witness, Melissa Wojcik, is a former Thermotek sales representative who is the only person with information relating to the contract negotiations. Thermotek counters that Ms. Wojcik has no information that is relevant to any issue in dispute. Plaintiffs have not alleged that contract formation is an issue here and thus the importance of Ms. Wojcik's testimony is unclear. It is clear to the Court that the four non-party witnesses identified by Thermotek as having knowledge concerning key issues in the case would be inconvenienced if the case remains in this district. As a result, the Court finds this factor weighs in favor of transfer to the Northern District of Texas.

---

[2] Thermotek identified Dr. Overton Parrish, Mr. Darko Hadzidedic, and Mr. Jim Hartman who all reside within the subpoena power of the Northern District of Texas, Dallas Division as potential non-party witnesses who would be unwilling to travel to Chicago for these proceedings. (Dkt. No. 28-1 ¶¶ 7-14, 19-23.) Thermotek also identified Dr. Sam Harrell as a fourth potential witness who resides in Texas outside of the subpoena range of the Northern District of Texas, Dallas Division. (*Id.* at ¶¶ 15-16.) At oral argument, Thermotek's counsel claimed that while Dr. Harrell would not be willing to travel to Chicago to testify on Thermotek's behalf, he would be willing to travel to Dallas for this purpose. (Transcript of 11/29/2010 Hearing at 22:23-23:2.)

## 2. Public Interest Factors

### a. Speed to Trial

The Federal Court Management Statistics for 2009 reflect that the median time from filing to trial in the Northern District of Texas is 21 months versus a median time of 27.8 months in the Northern District of Illinois. The same statistics also reveal that the median time from filing to disposition is 7 months in the Northern District of Texas versus 6.2 months in the Northern District of Illinois. The differences are not significant and do not suggest that the Northern District of Texas would provide a faster resolution.

The location of the witnesses and the more immediate access to Thermotek's manufacturing facilities, however, indicate that this matter may proceed more efficiently in the Northern District of Texas. The sheer logistics of scheduling Thermotek employees and other willing witnesses who reside outside this district for deposition and trial will certainly impact the time necessary to reach a final resolution. This Court finds that this factor weighs in favor of transfer to the Northern District of Texas.

### b. Familiarity with Applicable Law

Plaintiffs have alleged claims under the Uniform Commercial Code, Illinois statutes, and for breach of a contract governed by Texas law. This Court is fully capable of applying the applicable UCC and Illinois statutory provisions as well as applying Texas law in interpreting the provisions of the contract in dispute. Although Texas courts may be more familiar with Texas law, contract interpretation is not so complex as to weigh this factor in favor of transfer. The Court finds this factor weighs in favor of retention in this district.

### c. Relationship of Communities to Litigation

Both venues have an interest in this action. Illinois has an interest in adjudicating injuries that occur in this state and in ensuring that products introduced into the stream of

commerce in Illinois are not harmful to its residents.  Similarly, Texas has an interest in ensuring that Texas manufacturing companies are not producing defective products.  Thus, this factor neither weighs in favor of transfer nor retention.

While a plaintiff's choice of forum is presumed to be proper, that presumption is overcome here based upon several factors including the situs of the material events, the relative ease of access to sources of proof, the convenience to the parties and witnesses, and the efficient administration of the trial proceedings.  In sum, the analysis of all appropriate factors conclusively establishes that transfer to the Northern District of Texas, Dallas Division is clearly more convenient.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion To Transfer Venue. Accordingly, this case is ordered transferred to the Northern District of Texas, Dallas Division for all further proceedings.

IT IS SO ORDERED.

Dated: December 3, 2010　　　　　　　　　　　　Hon. Sharon Johnson Coleman
　　　　　　　　　　　　　　　　　　　　　　　United States District Court