IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ORTHOFLEX, INC. d/b/a/ § <br> INTEGRATED ORTHOPEDICS, et al., § <br> § <br> Plaintiffs/Counter-Defendants, § <br> § <br> VS. § <br> § <br> § <br> THERMOTEK, INC., § <br> § <br> Defendant/Third-Party Plaintiff, § <br> § <br> VS. § <br> § <br> MIKE WILFORD, § <br> § <br> Consolidated Defendant, § <br> § <br> VS. § <br> § <br> WMI ENTERPRISES, LLC, et al., § <br> § <br> Third-Party Defendants. § | Civil Action No. 3:11-CV-0870-D <br> (Consolidated with <br> Civil Action No. 3:10-CV-2618-D) |

MEMORANDUM OPINION
AND ORDER

In these consolidated cases, defendant-third-party plaintiff ThermoTek, Inc. ("ThermoTek") asserts several claims against plaintiffs, consolidated defendant, and third-party defendants, who now move under Fed. R. Civ. P. 12(b)(6) to dismiss ThermoTek's claims for fraud, civil conspiracy, tortious interference with existing contracts, and under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"). For the reasons that follow, the court grants the motion in part and denies it in part, and

grants ThermoTek leave to replead.

I

ThermoTek, Inc. brings claims against plaintiffs-counterdefendants Orthoflex d/b/a Integrated Orthopedics ("Orthoflex"), Motion Medical Technologies, LLC ("Motion Medical"), Wabash Medical Company, LLC ("Wabash Medical"), consolidated defendant Mike Wilford ("Wilford"), and third-party defendants WMI Enterprises, LLC ("WMI"), Thermo Compression Solutions, Inc. ("TCS, Inc."), Thermo Compression Solutions, LLC ("TCS, LLC"), Tri 3 Enterprises, LLC ("Tri 3"), and Melissa Wojcik ("Wojcik") under RICO, and for breach of contract, fraud, tortious interference with existing contracts, unfair competition, and civil conspiracy. Orthoflex, Motion Medical, Wabash Medical, Wilford, Tri 3, WMI, and TCS, LLC (collectively, "defendants")[1] move under Rule 12(b)(6) to dismiss ThermoTek's RICO, fraud, tortious interference with existing contracts, and civil conspiracy claims for failure to state a claim on which relief can be granted.

ThermoTek manufactures the VascuTherm therapy system, an electronic heating, cooling, and compression system used during thermal compression, contrast therapy, and DVT prophylaxis.[2] ThermoTek also manufactures the only wraps it approves for use with the VascuTherm therapy system. Wilford is the President of Orthoflex, as well as the

---

[1] For clarity, the court will refer collectively to the parties who are moving to dismiss as "defendants."

[2] The court recounts the facts in the light most favorable to ThermoTek, the nonmovant.

manager for at least five other medical sales companies, including Motion Medical, Wabash Medical, WMI TCS, Inc., and Tri 3 (collectively, the "Wilford entities").[3] ThermoTek alleges that the Wilford entities are related through common ownership and employees.

Wilford, through the Wilford entities, entered into a distributor agreement with ThermoTek that appointed Tri 3 d/b/a Wabash Medical d/b/a Motion Medical and its affiliated entities as distributors of the VascuTherm system and the associated wraps. ThermoTek alleges that, after Wilford began serving as a ThermoTek distributor, he made numerous fraudulent warranty claims and product defect allegations,[4] without making clear which Wilford entity he represented. According to ThermoTek, Wilford did this to obtain ThermoTek's confidential and proprietary information regarding the VascuTherm therapy system and wraps. ThermoTek asserts that Wilford, with the assistance of former ThermoTek employee Wojcik,[5] used the fraudulently obtained information and products distributed to him under the protections of the distributor agreement to create and market therapy wraps for ThermoTek's VascuTherm therapy system,[6] which interfered with

---

[3]ThermoTek also alleges by information and belief that Wilford is the manager of TCS, LCC.

[4]ThermoTek alleges that Wilford directed numerous emails to ThermoTek under the guise of warranty claims and repairs, and in those emails requested, and subsequently received, specific design details of the VascuTherm system and thermal wraps.

[5]Wojcik was a regional sales manager for ThermoTek from 2007 to 2010. After leaving ThermoTek, she began performing sales and marketing services for the Wilford entities though ARW Events Limited.

[6]ThermoTek alleges that WMI manufactured the wraps, while TCS, Inc. and TCS, LLC were formed to sell the wraps manufactured by WMI, in direct competition with

ThermoTek's contracts with its other distributors and customers.[7] Orthoflex, Motion Medical, and Wabash Medical sued ThermoTek in federal court for breach of contract and various breach of warranty claims. ThermoTek then sued Wilford and WMI in Texas state court. After ThermoTek's suit was removed, the two cases were consolidated. ThemoTek then asserted the claims at issue in the current motion. Defendants move to dismiss portions of ThermoTek's first amended third-party complaint and second amended counterclaims ("complaint").[8]

II

In deciding this motion, the court evaluates the sufficiency of ThermoTek's complaint by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To survive defendants' motion to dismiss, ThermoTek must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has

---

ThermoTek.

[7] Such existing customers include Maldonado Medical, Kinex Medical, and NuLife Medical.

[8] Unless the context requires otherwise, the court for clarity will refer to ThermoTek's first amended third-party complaint and second amended counterclaims as its "complaint."

acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise the right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

### III

Defendants move to dismiss ThermoTek's civil RICO claim under 18 U.S.C. § 1962(c).

### A

RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "Reduced to their simplest terms, the essential elements of a RICO claim are: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Larrew v. Barnes*, 2002 WL 32130462, at *1 n.1 (N.D. Tex. Aug. 27, 2002) (Kaplan, J.) (citing *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988)), *rec. adopted*, 2002 WL 32130462 (N.D. Tex. Sept. 17, 2002) (Fitzwater, J.).

"Section 1961(1)(B) defines 'racketeering activity' according to whether it constitutes 'any act which is indictable' under several specified sections of title 18 of the United States Code, [two] of which [are] mail fraud [and wire fraud.]" *Trugreen Landcare, LLC v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citations omitted). To establish a pattern of racketeering activity, ThermoTek must allege (1) the predicate acts of racketeering activity, and (2) a pattern of such acts. *See in re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993) (citing *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). A pattern of racketeering activity includes two or more acts of racketeering activity. *See* 18 U.S.C. § 1961(5). Furthermore, "a 'pattern' requires both that the acts are 'related' to each other and that they have 'continuity.'" *Burzynski*, 989 F.2d at 742. "It is this factor of *continuity plus relationship* which combines to produce a pattern." *H.J., Inc.*, 492 U.S. at 239 (emphasis in original). Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. Continuity requires that the related acts "constitute or threaten long-term criminal activity." *Burzynski*, 989 F.2d at 742 (citing *H.J., Inc.*, 492 U.S. at 239). Continuity may be proved by "a closed period of repeated conduct, or . . . past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 492 U.S. at 241. "A closed period of conduct may be demonstrated 'by proving a series of related predicates extending over a substantial period of time,'" while "[a]n open period of conduct involves the establishment of 'a threat of continued racketeering activity.'" *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th

Cir. 1996) (citing *H.J., Inc.*, 492 U.S. at 242-43).

B

Defendants contend that ThermoTek has not adequately alleged a pattern of racketeering activity.[9] They argue that, even assuming that ThermoTek has adequately alleged the predicate acts, it has not sufficiently pleaded that there was a pattern of such acts, i.e., that the acts were related and have continuity. *See Burzynski*, 989 F.2d at 742. The court holds that the pleadings establish that the predicate acts were related because the allegedly fraudulent communications had the common purpose of acquiring ThermoTek's confidential and proprietary information related to the design of the VascuTherm thermal wraps.

Defendants argue that ThermoTek has not adequately pleaded continuity, because continuity requires at least a threat that the racketeering activities will continue into the future and the complaint does not adequately allege such a threat. ThermoTek responds that the fraudulent communications occurred over several years and that there is a threat that more fraudulent communications will occur because Wilford continues to use VascuTherm systems in his business and therefore will continue to request information related to the VascuTherm system and its corresponding wraps. Defendants reply that the need for future repairs is in no way connected to any alleged fraudulent activity, and more important, because the distributor agreement that is the basis for the allegedly fraudulent

---

[9]The parties do not dispute that the first element is met, i.e., that Wilford is the person who engaged in the alleged RICO activities.

communications between the parties was terminated in July 2010, there is no likelihood that the predicate acts will be repeated.

The court concludes that the complaint does not adequately plead a pattern of racketeering activity because the pleaded predicate acts lack continuity. Continuity cannot be established by multiple acts of fraud that are part of a single transaction. *See, e.g., Word of Faith*, 90 F.3d at 123 ("It is unnecessary to delve into the arcane concepts of closed-end or open-ended continuity under RICO. [Fifth Circuit precedent] make[s] clear that where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown."); *Burzynski*, 989 F.2d at 743 (holding that continuity was not established because "[a]ll of the alleged predicate acts took place as part of the *Burzynski I* litigation, which has ended"); *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 244 (5th Cir. 1988) ("Delta has alleged as a pattern of racketeering activity nothing more than numerous predicate acts which were necessary segments of an otherwise legitimate [merger].").[10] When this is the case, "[t]he conduct d[oes] not constitute or threaten long-term criminal activity." *Burzynski*, 989 F.2d at 743.

The predicate acts that ThermoTek alleges occurred from December 2008 through 2010 and are all communications among the defendants that establish the enterprise or communications among ThermoTek and the defendants in their role of distributor under the distributor agreement. The distributor agreement, however, was terminated in July 2010.

---

[10]The court notes that the law of other circuits differs on this point. *See Word of Faith*, 90 F.3d at 123 n.4.

Therefore, the allegations are similar to those in *Burzynski* and *Word of Faith*, where the predicate acts were part of an otherwise lawful transaction that has since ended. Because the distributor agreement has been terminated, ThermoTek has failed to adequately plead a threat of long-term criminal activity.

ThermoTek's argument that more fraudulent communications could occur because Wilford continues to use ThermoTek's products and will therefore make fraudulent repair requests does not establish continuity. Not only is there no such allegation in the complaint, but ThermoTek's assertion is speculative. ThermoTek does not explain why future repair requests would be fraudulent predicate acts or why defendants would continue to make such requests—fraudulent or otherwise—after the termination of the distributor agreement. Moreover, if, as ThermoTek alleges, defendants are producing a product that already competes with ThermoTek's products, it is not clear why defendants would need to fraudulently acquire any more of ThermoTek's confidential or proprietary information.

Moreover, cases where continuity has been found are inapposite. For example, in *Abraham v. Singh*, 480 F.3d 351, 355-56 (5th Cir. 2007), the Fifth Circuit court reversed a dismissal because the district court held that the allegations did not establish continuity of racketeering activity. The panel held that the plaintiff's allegations that the defendant "engaged in at least a two-year scheme involving repeated international travel to convince up to 200 or more Indian citizens to borrow thousands of dollars to travel to the United States only to find upon their arrival that things were not as they had been promised" demonstrated continuity. *Id.* at 356. The panel distinguished *Word of Faith* and *Burzynski*, noting that

rather than a single transaction, the alleged scheme in *Abraham* involved multiple victims "and there is no reason to suppose that this systematic victimization allegedly begun in November 2000 would not have continued indefinitely had the Plaintiffs not filed this lawsuit." *Id.* ThermoTek is the only alleged victim, and it is implausible that the fraudulent communications made in relation to the defendants' role of distributor under the distributor agreement would continue after the agreement was terminated.

Accordingly, the court dismisses ThermoTek's RICO claim because the allegations of the complaint do not allow the court to draw the reasonable inference that there has been a pattern of racketeering activity.[11]

IV

ThermoTek also alleges a RICO conspiracy claim under 18 U.S.C. § 1962(d). Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of [RICO]." "To prove a RICO conspiracy, the [plaintiff] must establish (1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense." *Trugreen Landcare*, 512 F.Supp.2d at 625 n.11 (quoting *United States v. Delgado*, 401 F.3d 290, 296 (5th Cir. 2005)). "A RICO conspiracy thus has RICO-specific requirements—such as an agreement by at least two conspirators to engage in a pattern of racketeering activity." *Id.* If ThemoTek's allegations

---

[11]Because ThermoTek's allegations fail to establish continuity between the predicate acts, the court need not reach defendants' argument that ThermoTek has failed to plead the predicate acts of fraud with particularity.

do not allow the court to draw the reasonable inference that there has been a pattern of racketeering activity, the same allegations cannot be the basis for a RICO conspiracy claim because there can be no agreement to engage in a substantive RICO offense that does not exist. The court therefore dismisses ThermoTek's RICO conspiracy claim. *See Paul v. Aviva Life & Annuity Co.*, 2010 WL 5105925, at *6 (N.D. Tex. Dec. 14, 2010) (Boyle, J.) ("Because all other RICO claims have been dismissed, the RICO conspiracy claim must also be dismissed.").[12]

V

ThermoTek also alleges a fraud claim. Wilford argues that the fraud claim against him must be dismissed because it is the same cause of action alleged against him in ThermoTek's third amended complaint. ThermoTek responds that its first amended third-party complaint and second amended counterclaims[13] is its only live pleading.

Due to the consolidation of these lawsuits and the resulting procedural posture of the litigation, ThermoTek has combined its claims into a single pleading, entitled a first amended third-party complaint and second amended counterclaims. ThermoTek asserts a single fraud

---

[12]Because the court is dismissing ThermoTek's RICO conspiracy claim, the court need not reach defendants' argument that even if there were an underlying RICO claim, ThermoTek did not adequately allege that each defendant agreed to commit at least two predicate acts. *See Tel-Phonic Servs., Inc. v. TBS Intern., Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992) ("The complaint does not allege facts implying any agreement involving each of the Defendants to commit at least two predicate acts.").

[13]The court refers to the complaint by its full title because the context so requires. *See supra* note 8.

claim against Wilford, in count five. It is not bringing duplicative fraud claims against Wilford, and his motion is denied.

VI

Defendants move to dismiss ThermoTek's Texas-law claim of tortious interference with contractual relations.[14]

A

To plead a claim for tortious interference with contractual relations, a plaintiff must allege that "(1) there was a contract subject to interference, (2) the act of interference was willful and intentional, (3) such intentional act was a proximate cause of plaintiff's damage, and (4) actual damage or loss occurred." *Juliette Fowler Homes, Inc. v. Welch Assocs.*, 793 S.W.2d 660, 664 (Tex. 1990). "[C]ovenants not to compete which are unreasonable restraints of trade and unenforceable on grounds of public policy cannot form the basis of an action for tortious interference." *Id.* at 665. A covenant not to compete is only enforceable "to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary[.]" Tex. Bus. & Com. Code Ann. § 15.50(a) (West 2011). Although Texas law allows for the reformation of unenforceable noncompete clauses, it does not permit damages to be recovered for actions that occur before reformation. *See Juliette Fowler Homes*, 793 S.W.2d

---

[14]Wilford contends that this claim is duplicative of the claim contained in ThermoTek's third amended complaint. The court rejects this argument for the reasons stated *supra* in § V regarding ThermoTek's fraud claim.

at 663 ("For purposes of an action for damages, the enforceability of the covenant not to compete will be determined as written and may not be modified to render it reasonable and enforceable.").

B

Defendants argue that the covenant not to compete in the distributor agreement on which ThermoTek bases its claim for tortious interference is unenforceable and therefore cannot be the basis of its tortious interference claim. ThermoTek responds that defendants have not established that the distributor agreement contains a covenant not to compete, and therefore it is not subject to § 15.50(a)'s requirement that it contain a reasonable geographical limitation.

The distributor agreement states that the "Distributor agrees . . . to not purchase, sell, rent, or distribute any products that provide cold and/or compression therapy that compete with [ThermoTek's] Products." 2d Am. Compl., Ex. A at 1.[15] This clearly constitutes a covenant not to compete that is subject to the requirements of § 15.50(a). ThermoTek's reliance on *York Group, Inc. v. Horizon Casket Group, Inc.*, 459 F.Supp.2d 567, 573 (S.D. Tex. 2006), is misplaced. In *York Group* the clause at issue forbad the distributor from acting

---

[15]The court is citing the record in this manner because defendants did not file an appendix in support of their motion to dismiss, as N.D. Tex. Civ. R. 7.1(i)(1) requires. Rule 7.1(i)(1) provides that "[a] party who relies on materials—including depositions, documents, electronically stored information, affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials—to support or oppose a motion must include the materials in an appendix." Because this deficiency has not interfered with the decisional process of the court, the court has considered the document in deciding this motion.

"in any manner detrimental to the sale and distribution of the Products or to the reputation or goodwill of York or the Products." *Id.* at 573. The court rejected the argument that competing with York could be construed as "detrimental to the sale and distribution of York's products" because it did "not stretch to diminution of market share or sale of third-party goods." *Id. York Group* is inapposite because, unlike in the clause at issue in *York Group*, ThermoTek's noncompete clause explicitly states that distributors cannot "sell, rent or distribute any products . . . that *compete* with [ThermoTek's] Products." 2d Am. Compl., Ex. A at 1 (emphasis added).

The court therefore concludes on the present record that the covenant not to compete is unenforceable under Texas law and therefore "cannot form the basis of an action for tortious interference." *Juliette Fowler Homes*, 793 S.W.2d at 665. Because ThermoTek seeks damages only for actions that would have occurred before reformation, its tortious interference with contractual relations claim must be dismissed.[16]

---

[16] The court's November 23, 2011 memorandum opinion and order is not inconsistent with this ruling. In *Orthoflex, Inc. v. ThermoTek, Inc.*, 2011 WL 5879330 (N.D. Tex. Nov. 23, 2011) (Fitzwater, C.J.), the court denied Wilford's motion to dismiss ThermoTek's claim that Wilford had tortiously interfered with ThermoTek's distributor agreements. *Id.* at *2. Wilford maintained, as do defendants here, that because the noncompete covenant in ThermoTek's distributor agreements did not contain a geographical limitation, it was unenforceable as a matter of Texas law, and ThermoTek had failed to state a claim on which relief could be granted. The court held that, assuming *arguendo* that the noncompete covenant was unenforceable on this basis, it did not follow that the noncompete covenant was entirely unenforceable. *Id.* at *1. This was because "[u]nder Texas law, when a court determines that a noncompete covenant is unenforceable as written, the court is required to reform it to the extent necessary to be reasonable. Therefore, if Wilford [was] correct and the noncompete covenant [was] unenforceable as written, the court must reform the covenant." *Id.* "For that reason, the court [could not] conclude . . . that the basis for Thermo[T]ek's

VII

ThermoTek also alleges a claim under Texas law for civil conspiracy.

A

To plead a civil conspiracy claim under Texas law, a plaintiff must allege the following: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). "[A] defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).

B

Defendants maintains that ThermoTek has not adequately alleged that two or more persons were involved in the conspiracy.

---

tortious interference with contracts claim [was] unenforceable as a matter of Texas law." *Id.* The noncompete covenant might be unenforceable as written, but once reformed, it could still serve as the basis for ThermoTek's tortious interference with contracts claim. *Id.* In other words, the court in *Orthoflex* was rejecting the premise that ThermoTek could not recover under any circumstances for tortious interference with ThermoTek's distributor agreements because the noncompete covenant was unenforceable. The possibility of reforming the covenant meant that such a claim was still available. But in deciding defendants' present motion, the court is relying on the fact that the complaint, as pleaded, only seeks damages for actions that would have occurred before reformation. And although Texas law allows for reformation of unenforceable noncompete clauses, it does not permit damages to be recovered for actions that occurred before reformation. Therefore, today's decision is based, not on a rejection of the premise that recovery is unavailable under any circumstances, but on the conclusion that ThermoTek is seeking only damages for past, pre-reformation conduct.

The "general rule" is that "the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts." *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995). In the context of civil conspiracy, Texas courts have held that "a corporate agent can conspire with its corporation if the agent is not acting in his corporate capacity." *Tex.-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 138 (Tex. App. 2000, no pet.); *see also Christopher v. Gen. Computer Sys., Inc.*, 560 S.W.2d 698, 705 (Tex. Civ. App. 1977, writ ref'd n.r.e.) (holding that individual can form conspiracy with corporation controlled entirely by that individual if he took actions in an individual capacity); *Crouch v. Trinque*, 262 S.W.3d 417, 427 (Tex. App. 2008, no pet.) (holding that individual was not acting in individual capacity because there was no evidence "that she was off on some personal purpose outside the scope of her duties").

Defendants argue that ThermoTek has not alleged that two or more persons were involved in the conspiracy because Wilford acted as the corporate agent for the Wilford entities, who allegedly were the other persons who formed the conspiracy, and the law is clear that "the acts of a corporate agent are the acts of the corporation, and a corporation cannot conspire with itself." *Elliott v. Tilton*, 89 F.3d 260, 265 (5th Cir. 1996). ThermoTek responds that, even if the law views Wilford's actions as those of a particular corporation, there were multiple corporations that conspired together, and Wilford took actions in his individual capacity on behalf of the conspiracy that meet the "two or more persons" requirement. Defendants reply that Wilford and each corporate entity are treated as one person, prohibiting him from forming a conspiracy with any of the entities and prohibiting

the entities from forming a conspiracy with each other.

The court concludes that ThemoTek's allegations do not allow the court to draw the reasonable inference that Wilford was involved in the conspiracy in his individual capacity.[17] Instead, ThemoTek's pleading suggests that Wilford acted in his role as an agent of each of the various corporations. For example, ThemoTek does not adequately plead that obtaining ThermoTek's confidential and proprietary information would have personally benefited Wilford apart from benefiting the corporations for whom he was acting.

C

Defendants contend that ThermoTek has not alleged the objective that the conspiracy was to accomplish, and, alternatively, if the objective was to defraud ThermoTek, the allegations do not meet the particularity requirements of Rule 9(b). The court disagrees.

The allegations specify the object of the conspiracy, i.e., that defendants, "under the guise of being a concerned distributor . . . formed the specific intent" to "obtain ThermoTek's confidential and proprietary information . . . so that Wilford's Entities could unfairly compete with ThermoTek in the marketing and sale of the VascuTherm System." Am. Third-Party Compl. & 2d Am. Countercls. ¶¶ 91-92. The complaint complies with Rule 9(b).

---

[17]Unlike for the other counts, ThermoTek's civil conspiracy claim does not incorporate by reference other allegations in the complaint. *See* Am. Third-Party Compl. & 2d Am. Countercls. ¶¶ 91-96. The court therefore cannot consider allegations relied on by ThermoTek to demonstrate the existence of a conspiracy that were not incorporated into the civil conspiracy count.

D

Defendants maintain that ThermoTek has not adequately pleaded a meeting of the minds.

To satisfy this requirement, a plaintiff must allege that there was a "preconceived plan and unity of design and purpose." *Goldstein v. Mortenson*, 113 S.W.3d 769, 779 (Tex. App. 2003, no pet.). "For a civil conspiracy to arise, the parties must be aware of the harm or wrongful conduct at the inception of the combination or agreement." *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995). ThermoTek has failed to allege a preconceived plan or a time and place in which defendants had a meeting of the minds regarding the object of the conspiracy.[18] *See Berry v. Indianapolis Life Ins. Co.*, 608 F.Supp.2d 785, 794 (N.D. Tex. 2009) (Boyle, J.) (dismissing civil conspiracy claim because, *inter alia*, "it fail[ed] to specify who was involved, precisely what the interaction was or what actions were decided upon, or when any meeting of the minds occurred between those parties"); *Patel v. Pac. Life Ins. Co.*, 2009 WL 1456526, at *16 (N.D. Tex. May 22, 2009) (Boyle, J.) (dismissing civil conspiracy claim because, *inter alia*, "[t]he conspiracy claim identifie[d] no specific time or place in which any meeting of the minds took place"). ThermoTek alleges that "[b]etween 2008 and present, [defendants] became aware that the other [defendants] desired to obtain

---

[18]Although these allegations are not incorporated into ThermoTek's civil conspiracy count, some of the entities that are allegedly involved in the conspiracy were not formed until *after* the conspiracy purportedly began in 2008. Orthoflex was formed in 2009, and WMI was formed in January 2010. Thus, as the complaint is now framed, at least Orthoflex and WMI could not possibly have been aware of the wrongful conduct at the inception of the agreement.

ThermoTek's confidential and proprietary information," and that "each formed the specific intent to assist the other in obtaining the . . . information." Am. Third-Party Compl. & 2d Am. Countercls. ¶ 91. These allegations are insufficient. *See, e.g., Berry*, 608 F.Supp.2d at 795 ("A period of years is not definitive enough in the context of the conspiracy claim as alleged to put any defendant on sufficient notice to be able to defend."). Moreover, the assertion that at some point during a period of more than one year defendants became aware that they all desired to obtain ThermoTek's confidential and proprietary information demonstrates that there was no *preconceived* plan, as required by Texas law. *See Goldstein*, 113 S.W.3d at 779.

Accordingly, the court dismisses ThermoTek's civil conspiracy claim.[19]

## VIII

Although the court is granting defendants' motion to dismiss, it will permit ThermoTek to replead. *See, e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal). Because there is no indication that ThermoTek cannot, or is unwilling to, cure the pleading defects the court has identified, the court grants

---

[19]Because the court is dismissing ThermoTek's civil conspiracy claim, it need not reach defendants' argument that ThermoTek failed to allege an unlawful overt act or an underlying tort.

it 30 days from the date this memorandum opinion and order is filed to file a second amended third-party complaint and third amended counterclaims.

* * *

Accordingly, the court grants in part and denies in part defendants' February 9, 2012 motion to dismiss, and it grants ThermoTek leave to replead.

**SO ORDERED.**

July 12, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE