IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ORTHOFLEX, INC. d/b/a/ | § | |
| INTEGRATED ORTHOPEDICS, et al., | § | |
| | § | |
| Plaintiffs-Counterdefendants, | § | |
| | § | Civil Action No. 3:11-CV-0870-D |
| VS. | § | (Consolidated with |
| | § | Civil Action No. 3:10-CV-2618-D) |
| | § | |
| THERMOTEK, INC., | § | |
| | § | |
| Defendant-Counterplaintiff- | § | |
| Third-Party Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| MIKE WILFORD, | § | |
| | § | |
| Consolidated defendant, | § | |
| | § | |
| VS. | § | |
| | § | |
| WMI ENTERPRISES, LLC, et al., | § | |
| | § | |
| Third-Party Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant-counterplaintiff-third-party plaintiff ThermoTek, Inc. ("ThermoTek") moves for summary judgment dismissing claims for breach of express and implied warranties and breach of contract arising from its sale of medical products. For the reasons explained, the court grants the motion as to the breach of implied warranties and breach of contract claims and denies the motion as to the breach of express warranty claim.

I

Because this case is the subject of multiple prior opinions,[1] the court will primarily recount the background facts and procedural history necessary to understand the present decision.

ThermoTek designed and developed the VascuTherm System, which is a medical device designed to be used in conjunction with specially-designed wraps. Together, the VascuTherm System and wraps transfer pressure, heat, and cold to various body parts during medical therapy.

Third-party defendant Tri 3 Enterprises, LLC ("Tri 3") is a limited liability holding company for plaintiffs-counterdefendants Motion Medical Technologies, LLC ("Motion Medical") and Wabash Medical Company, LLC ("Wabash Medical"). Motion Medical and Wabash Medical are both durable medical equipment providers, meaning that they invest in and then lease capital medical equipment. Plaintiff-counterdefendant Orthoflex, Inc., d/b/a Integrated Orthopedics ("Orthoflex"), is also a durable medical equipment provider. For clarity, the court will refer to Motion Medical, Wabash Medical, and Orthoflex collectively as "plaintiffs," unless the context otherwise requires. Consolidated defendant Mike Wilford ("Wilford") serves as the corporate secretary, manager, and principal of Tri 3, and is also, in effect, the Chief Operating Officer of Wabash Medical and Motion Medical.

In early 2008 Wilford contacted ThermoTek about purchasing some of its products.

---

[1] *See, e.g., Orthoflex, Inc. v. ThermoTek, Inc.*, 2012 WL 2864510 (N.D. Tex. July 12, 2012) (Fitzwater, C.J.).

Following discussions with a ThermoTek sales representative, Wabash Medical and Motion Medical decided to purchase VascuTherm machines. Between the two, they purchased 385 machines between March 2008 and April 2009. When the machines were shipped, they included a manual with an express warranty and a disclaimer of all other warranties. When ThermoTek shipped wraps, the package included a brochure with a different express warranty but the same disclaimer of all other warranties.

In May 2009 Wilford entered into a distributor agreement (the "Agreement") with ThermoTek. The Agreement is between ThermoTek and "Distributor," which is defined as "Tri 3 Enterprises, LLC Dba/ Wabash Medical Company, Inc. Dba/ Motion Medical." Under the Agreement, ThermoTek "appoint[ed] Distributor (and its affiliated entities) as its distributor for the sale of the NanoTherm, VascuTherm, and associated wraps and accessories products[.]" Ps. App. 202.[2] The Agreement also incorporates an exhibit entitled "Manufacturer's Product Warranties." *Id.* at 208-09. Under this heading is an express warranty for "disposable wraps" and another for any ThermoTek "unit." Each warranty warrants that the product will be free from "defects in material and workmanship" and is

_____

[2]The parties dispute whether Orthoflex is a party to the Agreement as an "affiliated entity." The court need not decide this issue. Plaintiffs state that [Orthoflex's] "breach of express warranty claims are based on the warranties contained in ThermoTek's manual and wrap brochures," Ps. Resp. 24; that is, they are not based on the express warranty in the Agreement. Furthermore, the disclaimers in the wraps and brochures entitle ThermoTek to summary judgement on Orthoflex's implied warranty of merchantability and implied warranty of fitness for a particular purpose claims. *See infra* § III(B). Because it is unclear why resolving this issue is necessary to decide whether ThermoTek is entitled to summary judgment on the claims presented, the court will not do so.

otherwise similar, although each differs in some respects, such as the duration of the warranty. *Id.* As distributors under the Agreement, Wabash Medical and Motion Medical purchased an additional 240 VascuTherm machines and an unspecified number of wraps. When shipped, the VascuTherm machines included the same manual as was included before the Agreement was signed, and the wraps included a brochure.

Wilford purchased Orthoflex in July 2009. Orthoflex purchased 6 VascuTherm machines before this acquisition, and 100 after. The products shipped to Orthoflex also included, as applicable, the manual or brochure.

Throughout the relationship between plaintiffs and ThermoTek, many VascuTherm units and wraps failed. The reasons they failed included: having leaky reservoirs caused by the use of unsuitable plastic; a design that caused a leaky reservoir to drip onto the power source; excessively worn thermal electric chips; and defective connectors. Under one or more of the warranties, plaintiffs returned the defective products to ThermoTek for repair or replacement. But the repairs often did not fix the problem, and approximately half of the units that failed once were returned to ThermoTek a second time. And for some repairs, ThermoTek billed plaintiffs for return shipping or the cost of repairs, in violation of the applicable warranty.

Plaintiffs originally sued ThermoTek in the Northern District of Illinois, and the case was transferred to this court. In this court, plaintiffs filed a second amended complaint alleging claims for breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. Motion

Medical and Wabash Medical also bring a claim for breach of contract.[3]  ThermoTek moves

for summary judgment on each of these claims.  Plaintiffs oppose the motion.

## II

Because plaintiffs will bear the burden of proof on their breach of warranty and breach

of contract claims, ThermoTek can meet its summary judgment obligation by pointing the

court to the absence of admissible evidence to support the claim in question.  *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once ThermoTek does so, plaintiffs must go

beyond their pleadings and designate specific facts showing there is a genuine issue for trial.

*See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per

curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a

verdict in plaintiffs' favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Plaintiffs' failure to produce proof as to any essential element of a claim renders all other

facts immaterial.  *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D.

Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory if plaintiffs fail to meet this

---

[3]The second amended complaint asserts claims under the U.C.C. and Illinois law adopting the U.C.C.  Because both sides cite only Texas law in briefing ThermoTek's summary judgment motion, and because both Illinois and Texas have adopted the U.C.C., the court will assume that this suit is governed by Texas law.  *See, e.g., Phila. Indem. Ins. Co. v. Hallmark Claims Serv., Inc.*, 2008 WL 5191910, at *3 (N.D. Tex. Dec. 10, 2008) (O'Connor, J.) (applying Texas law to dispute where both parties agreed to application of Texas law); *see also Wynne v. Amex Assur. Co.*, 1998 WL 512943, at *2 (N.D. Tex. Aug. 12, 1998) (Sanderson, J.) ("While the [insurance policy] itself states that it 'is delivered in and governed by the laws of Missouri,' . . . the parties have briefed only Texas law and, therefore, the court will follow the lead of the parties by applying Texas law, presuming that Texas law is identical to Missouri law."), *aff'd*, 178 F.3d 1291 (5th Cir. 1999).

burden.  *See Little*, 37 F.3d at 1076.

Disclaimers of warranty and limitations of remedy in a warranty are not elements of plaintiffs' causes of action; they are affirmative defenses.  *See Thomas v. Omar Invs., Inc.*, 156 S.W.3d 681, 684 (Tex. App. 2005, no pet.); *Great Am. Prods. v. Permabond Int'l, A Div. of Nat'l Starch & Chem. Co.*, 94 S.W.3d 675, 683 (Tex. App. 2002, pet. denied).  Because they are affirmative defenses, to obtain summary judgment on such a defense, ThermoTek must establish "beyond peradventure all of the essential elements of the . . . defense."  *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).

III

The court first addresses plaintiffs' claims for implied warranty of merchantability and implied warranty of fitness for a particular purpose.

A

Under Texas law, the court's primary concern when interpreting a contract is to ascertain the parties' intentions as expressed objectively in the contract.  *Bank One, Tex., N.A. v. FDIC*, 16 F.Supp.2d 698, 707 (N.D. Tex. 1998) (Fitzwater, J.) (citation omitted).  In doing so, the court must examine and consider the entire writing in an effort to harmonize and give effect to all contractual provisions, so that none will be rendered meaningless.  Language should be given its plain and grammatical meaning unless it definitely appears that the parties' intention would thereby be defeated.  Where the contract can be given a definite legal meaning or interpretation, it is not ambiguous, and the court will construe it as a matter

of law.  A contractual provision is ambiguous when its meaning is uncertain and doubtful or if it is reasonably susceptible to more than one interpretation.  Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole, in light of the circumstances present when the contract was entered.  *Id.*  "[A] writing is generally construed most strictly against its author and in such a manner as to reach a reasonable result consistent with the apparent intent of the parties[.]"  *Austin Co. v. Vaughn Bldg. Corp.*, 643 S.W.2d 113, 115 (Tex. 1982) (interpreting express warranty provision of construction contract) (quoting *Republic Nat'l Bank of Dall. v. Nw. Nat'l Bank of Ft. Worth*, 578 S.W.2d 109, 115 (Tex. 1978)).

B

The Agreement, VascuTherm manuals, and the wrap brochures include this identical disclaimer below their express warranties:

> THE INFORMATION CONTAINED IN THIS DOCUMENT IS PROVIDED "AS IS", THERMOTEK EXPRESSLY DISCLAIMS ALL INFORMATION INCLUDING, BUT NOT LIMITED TO, EXPRESS AND IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR USE, OR NON-INFRINGEMENT.  IN NO EVENT WILL THERMOTEK BE LIABLE FOR ANY DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOST BUSINESS OR LOST DATA, RESULTING FROM THE USE OF OR RELIANCE UPON THE INFORMATION, WHETHER OR NOT THERMOTEK HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

Ps. App. 208-09 (Agreement) (upper case font in original); *id*. at 293 (manual sent with VascuTherm System) (upper case font in original); *id.* at 297 (brochure for wraps) (upper

case font in original).

ThermoTek argues that it is entitled to summary judgment dismissing plaintiffs' claims for breach of the implied warranties of merchantability and fitness for a particular purpose because this language disclaims these implied warranties. ThermoTek reasons that, by expressly referring to both warranties and using the term "AS IS," it disclaimed both warranties, in conformity with Tex. Bus. & Com. Code Ann. § 2.316 (West 2009) (setting forth requirements for disclaiming the warranties).

In response, plaintiffs do not argue that the disclaimer is not conspicuous or that the phrase "AS IS" is insufficient to disclaim warranties. Nor do they contend that ThermoTek failed, in particular, to disclaim the implied warranties of merchantability or fitness for a particular purpose. Instead, they posit that, because the disclaimer states that "*the information* contained in this document is provided 'as is'" (upper case font omitted; emphasis added), ThermoTek only disclaimed warranties that apply to the information contained in the Agreement, unit manuals, and wrap brochures. In other words, plaintiffs maintain that ThermoTek's warranty disclaimers do not pertain to the products themselves.

The court concludes that ThermoTek disclaimed both implied warranties with respect to its products. First, there can be no implied warranty of merchantability or fitness for a particular purpose that applies to the information contained in the Agreement, unit manuals, and wrap brochures. The warranties of merchantability and fitness for a particular purpose are implied in the sale of goods. *See* Tex. Bus. & Com. Code Ann. § 2.314(a) (West 2009); *see also Fieldtech Avionics & Instruments, Inc. v. Component Control.com, Inc.*, 262 S.W.3d

813, 828 (Tex. App. 2008, no pet.) ("Contracts for the sale of *goods* imply warranties of merchantability and fitness for a particular purpose.") (emphasis added).  "Goods" are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities . . . and things in action."  Tex. Bus. & Com. Code Ann. § 2.105(a).

Second, plaintiffs have failed to cite any authority that supports the premise that there can be an implied warranty of merchantability or fitness for a particular purpose in the "information."   Reading the disclaimers to disclaim only warranties pertaining to "information" would in context make the disclaimers meaningless.  By specifically mentioning certain warranties and using the term "AS IS"—which indicates the disclaimer of implied warranties[4]— it is unmistakable that ThermoTek intended to disclaim all implied warranties.  And the only such warranties that could be implied would apply to the products ThermoTek was selling.  Moreover, the disclaimers in the Agreement, unit manuals, and wrap brochures are located within parts of the documents that concern warranties for the products.  *See* Ps. App. 208-09 (Agreement); *id.* at 293 (manual for VascuTherm unit); and *id.* at 297 (brochure for wraps).

Thus even construing the disclaimer strictly, as is required for the disclaimers

---

[4]*See* Tex. Bus. & Com. Code Ann. § 2.316(c)(1) (West 2009) ("unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is'").

contained in the brochures and the manuals, the only reasonable interpretation consistent with the intent of the parties is that the Agreement, unit manuals, and wrap brochures disclaim all warranties except for the express warranty that is not disclaimed.  The court therefore holds that ThermoTek has established beyond peradventure that it disclaimed the implied warranties of merchantability and fitness for a particular purpose, and that it is entitled to summary judgment dismissing plaintiffs' claims for breach of these implied warranties.

IV

The court next considers plaintiffs' claim for breach of express warranty.  ThermoTek points to the absence of evidence that it breached the express warranties.  Plaintiffs respond that ThermoTek is not entitled to summary judgment because, although it states that it complied with the express warranties, there are fact issues concerning what the warranties mean and whether ThermoTek has complied with them.[5]

A

The court turns first to the parties' dispute over the express warranty itself.

1

Plaintiffs contend that Exhibit D is not incorporated in the Agreement because ¶ 9 of the Agreement, entitled "Limited Warranty," references Exhibit E, which does not exist, rather than Exhibit D, which is entitled "Manufacturer's Product Warranties."  It is clear

---

[5]Plaintiffs argue that ThermoTek's motion is unclear in stating that it complied with the express warranties because there are in fact multiple express warranties that differ slightly.  The court understands ThermoTek to assert that it complied with all express warranties in the Agreement, unit manuals, and wrap brochures.

from the text of the Agreement, however, that this is a typographical error and that the parties intended to incorporate Exhibit D. *See Falk & Fish, L.L.P. v. Pinkston's Lawnmower & Equip., Inc.*, 317 S.W.3d 523, 527-28 (Tex. App. 2010, no pet.) ("With respect to typographical errors, 'written contracts will be construed according to the intention of the parties, notwithstanding errors and omissions[.]'" (quoting *City of Galveston v. Galveston Mun. Police Ass'n*, 57 S.W.3d 532, 539 (Tex. App. 2001, pet. denied))).

2

Plaintiffs also maintain that one of the express warranties in the Agreement is ambiguous. Under the heading "Manufacturer's Product Warranties" is the following subheading in bold font: "Warranty Information: Disposable Wraps." Below follows an express warranty for "disposable wraps" and the disclaimer discussed *supra* in § III(B). Below the disclaimer, in indented paragraphs, is an express warranty for "any ThermoTek unit" and a second, identical disclaimer. The express warranty for "disposable wraps" is substantially similar to the express warranty for "any ThermoTek unit" and contains multiple identical provisions. Plaintiffs contend that, because this second warranty for a "unit" is under a broad heading of "Warranty Information: Disposable Wraps," and because "unit" is undefined in the Agreement, the term "unit" is best read to refer to a disposable wrap, and any contrary interpretation at least raises a fact issue regarding the parties' intent. ThermoTek replies by citing extrinsic evidence from its reply appendix[6] suggesting that,

---

[6]The court grants ThermoTek's motion for leave to file a supplemental appendix, but notes that the appendix does not affect the court's decision on the merits of ThermoTek's

- 11 -

despite plaintiffs' current position, Wilford testified that he knew that the term "unit" referred to a VascuTherm unit and not to a disposable wrap, and by asserting, without evidence, that plaintiffs showed they understood the warranty by making use of it.[7]

The court holds that the express warranty for units does not apply only to disposable wraps, but is ambiguous as to whether it refers to VascuTherm machines, NanoTherm machines, disposable wraps, accessories products, or a combination of these products.[8] When a contract uses two different words, they are presumed to have different meanings. *DaimlerChrysler Motors Co. v. Manuel*, 362 S.W.3d 160, 185 (Tex. App. 2012, no pet.) (citing *Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151, 1157 (10th Cir. 2007) ("When a contract uses different language in proximate and similar provisions, we commonly . . . assume that the parties' use of different language was intended to convey different meanings.")); *Cherokee Water Co. v. Freeman*, 33 S.W.3d 349, 354 (Tex. App. 2000, no pet.). The Agreement includes two, largely identical, express warranties: one pertains to disposable wraps and the other to units. The court thus presumes that the terms "disposable wraps" and "unit" have different meanings. This interpretation is confirmed by examining

_____

summary judgment motion.

[7]Although it is clear that plaintiffs invoked a warranty, there is no indication that they relied on a warranty in the Agreement rather than a warranty in the manual that shipped with the VascuTherm unit.

[8]Plaintiffs maintain that the term "unit" cannot refer to multiple different systems because in the warranty the term "unit" is used only in the singular. Read in context, however, the singular is used to signify that the warranty applies to an individual unit, not that only one *type* of unit is covered under the warranty.

the details of the warranties.  Reading "unit" to include only disposable wraps would render duplicative the vast majority of the warranty for units because the two warranties have overall substantially similar language and many identical provisions.  The reading would also render the "initial use" limited warranty practically irrelevant.  Yet there is nothing within the four corners of the Agreement to indicate that "unit" must refer to a VascuTherm machine as opposed to a NanoTherm machine or another product.  In fact, the warranty at times refers to a "product" instead of a unit.  Accordingly, the court concludes that the "unit" warranty in the Agreement is ambiguous, and that the only impermissible reading is that "unit" refers only to wraps.

3

The parties also disagree about the extent of the express warranty for VascuTherm units in the manual.  This provision states: "ThermoTek, Inc. warrants for twelve months from the date of shipment to the end user, any ThermoTek VascuTherm unit[.]"  Ps. App. 293.  Plaintiffs argue that the end user is the patient, and the warranty is therefore extended an additional 12 months every time the unit is shipped to a different patient.  ThermoTek does not dispute that the end user is the patient, but it maintains that the warranty lasts only for one course of treatment.

The court holds that this provision unambiguously means that the product is warranted for 12 months from the date of shipment to *the first* end user, not to each successive end user. Reading the warranty to continue in effect each time a unit is shipped to another end user would render the 12-month warranty period meaningless because the warranty period would

be revived with each such shipment.  This interpretation would therefore run counter to the principle that the court must "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Bank One*, 16 F.Supp.2d at 707.[9]

B

The court now considers ThermoTek's contention that plaintiffs have failed to show that ThermoTek did not comply with the express warranties.

ThermoTek contends there are no genuine issues of material fact because it is undisputed that it repaired or replaced all units that were under warranty and that it had reasonably determined were defective in material or workmanship.  Plaintiffs respond by adducing evidence that, for some ThermoTek machines and wraps under warranty, ThermoTek required them to pay for the repairs or for the return shipping, in violation of the express warranties.  Plaintiffs also cite myriad ways in which ThermoTek's products were defective.  In reply, ThermoTek does not argue that the defects on which plaintiffs rely did not occur.[10]  Instead, it maintains that it repaired the defects, and that, even if it did not, the defects were of design, not materials and workmanship, and it therefore could not have

---

[9]Moreover, the provision uses the definite article *the* when referring to end user, not the indefinite article *any* or *an* end user.  The use of the definite article suggests that, although there may be multiple end users over the course of a product's lifetime, the warranty runs only from shipment to the first end user.

[10]Although ThermoTek does assert in its summary judgment brief that its products were not defective and that plaintiffs' assertions to the contrary are made falsely and for improper purposes, ThermoTek does not move for summary judgment on this basis.

- 14 -

breached an express warranty.

Because the express warranties require ThermoTek to pay for the repairs and the return shipping, plaintiffs have raised a genuine issue of material fact as to the repairs and return shipping that they paid for the repairs themselves or for the return shipping.[11]  There is no other evidence, however, that ThermoTek failed to repair or replace defective VascuTherm units.

C

Repair and replacement is the only remedy available under the express warranties contained in the Agreement, manuals, and brochures.  *See, e.g.,* Ps. App. 293 (manual limiting remedies to repair and replacement and disclaiming direct, indirect, and consequential damages).  The parties dispute whether other remedies are available on the ground that the express warranties failed of their essential purpose.

1

"Where circumstances cause an exclusive or limited remedy to fail of its essential purpose," other remedies are available.  Tex. Bus. & Com. Code Ann. § 2.719 (West 2009). A limitation of remedies fails of its essential purpose when a warrantor fails to correct the defect within a reasonable time or after multiple attempts. *Mostek Corp. v. Chemetron Corp.*, 642 S.W.2d 20, 27 (Tex. App. 1982, writ dism'd by agr.) (applying Illinois law) (citing *Riley*

---

[11]When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact. *See, e.g., Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.).

*v. Ford Motor Co.*, 442 F.2d 670, 673 (5th Cir. 1971) (applying Alabama law); *Beal v. Gen.*

*Motors Corp.*, 354 F.Supp. 423, 426 (D. Del. 1973) (applying Delaware law)).[12]

Plaintiffs have raised a genuine fact issue in this respect because there is summary

judgment evidence that would permit a reasonable jury to find that the repairs ThermoTek

performed did not remedy many of the originally defective products.   There is evidence that

it was necessary for plaintiffs to return multiple units to be repaired multiple times.

According to plaintiffs' evidence, over 70% of their VascuTherm machines were returned

to ThermoTek at least once, approximately one-half of the returned units had to be repaired

at least a second time, and over 10% had to be returned three or more times.  Ps. App. 770.

There is proof that 166 of plaintiffs' 731 purchased machines were taken out of service

---

[12]For example, a limited car warranty failed of its essential purpose where the warrantor was unable to correct all of the car's defects even though the buyer had returned the car for repairs at least seven times over an eight-month period and the transmission had been replaced at least twice. *Mercedes-Benz of N. Am., Inc. v. Dickenson*, 720 S.W.2d 844, 854 (Tex. App. 1986, no pet.).  In another case, a Texas court of appeals held that there was an issue of fact as to whether a limited warranty failed of its essential purpose where the warrantor spent $7,000 on modifications but did not solve the problem of which the buyer complained, rendering the vehicle worthless to him. *Barber v. Grande Truck Ctr., Inc.*, 2002 WL 31253387, at *4 (Tex. App. Oct. 9, 2002, pet. denied) (mem. op.).  By contrast, in another case, a Texas court of appeals held that a limited car warranty did not fail its essential purpose where each defect was repaired, even though the car was in the repair shop for approximately 45 days for 50 different defects over the course of 18 months. *Lankford v. Rogers Ford Sales*, 478 S.W.2d 248, 249, 251 (Tex. App. 1972, writ ref'd n.r.e.).  The unifying principle from these cases is that a party is not limited to the remedy of replacement or repair when that remedy is so ineffective as to deprive the buyer of the "substantial value of the bargain." *Dickenson*, 720 S.W.2d at 854 (citing *Riley*, 442 F.2d at 673 (holding that jury was not unjustified in implicit finding that warranty deprived buyer of substantial value of bargain where buyer returned defective car once and warrantor was unable to correct the defects) (applying Alabama law)).

because of "problems associated with the design, materials and structure of ThermoTek's VascuTherm machine." Ps. App. 21. And the summary judgment record includes a list of Return Merchandise Authorizations ("RMAs"). Although ThermoTek was and is willing to continue to repair these units if they are under warranty, there is a fact question as to whether plaintiffs were deprived of the substantial value of the bargain as to the VascuTherm machines, and therefore whether the limitations provision failed of its essential purpose.[13]

2

There is also a genuine issue of material fact as to whether the express warranties failed of their essential purpose with respect to the wraps.

Plaintiffs cite evidence that the wraps were defective and how the wraps were defective, but, as with the VascuTherm machines, do not provide any evidence that ThermoTek failed to honor the warranty by either replacing or repairing the defective

---

[13]There is also summary judgment evidence that appears to support ThermoTek. For example, plaintiffs' chart depicting that one-half of the units that were returned once were returned twice is consistent with a finding that other units were properly repaired the first time, suggesting that the remedy limitation did not fail of its essential purpose. But a reasonable jury could also find that plaintiffs simply decommissioned some units rather than return them to ThermoTek, thereby making it appear (inaccurately) that the repair or replacement remedy was satisfactory. Also, plaintiffs' list of out-of-service units and RMAs does not indicate whether the products were under warranty when they failed, so it is possible that some failures are irrelevant to the essential purpose inquiry. In the list of out-of-service units, the earliest dates for units going out of service are in early 2011, two years after the first units were shipped. Plaintiffs purchased 385 machines before May 2009. Nevertheless, because Wilford's declaration suggests that many repairs were performed under warranty, and because the court must draw all reasonable inferences in favor of plaintiffs as the nonmovants, there is sufficient evidence for a reasonable jury to find that the limitations provision failed of its essential purpose as to the VascuTherm machines.

products.  To the contrary, plaintiffs' evidence suggests that ThermoTek was willing to replace the defective wraps.  The limitation on remedies fails if the remedy is so ineffective as to deprive the buyer of the substantial value of the bargain.  Taken as a whole, there is sufficient evidence in the summary judgment record for a reasonable jury to find in plaintiffs' favor.  The evidence would permit the jury to find that the same type leakage problems occurred over a period of approximately two years.  And assuming *arguendo* that there is no direct evidence that defective wraps were replaced with other defective wraps, this is sufficient circumstantial evidence based on plaintiffs' repeated problems with the wraps. Accordingly, viewing the evidence and all reasonable inferences in the light most favorable to plaintiffs as the nonmovants, the court declines to grant summary judgment holding that the express warranties are limited to repair and replacement with respect to the wraps.[14]

---

[14]The court is not holding that, if plaintiffs prove at trial that the express warranties fail of their essential purpose, plaintiffs can recover consequential damages.  "[T]he viability of a provision limiting liability for consequential damages is not dependent on the success of the remedy in the limited warranty clause." *Bray Int'l, Inc. v. Computer Assocs. Int'l, Inc.*, 2005 WL 3371875, at *3 (S.D. Tex. Dec. 12, 2005); *see also Eastman Chem. Co. v. Niro, Inc.*, 80 F.Supp.2d 712, 721 (S.D. Tex. 2000) ("[A] majority of jurisdictions to consider the question has concluded that a waiver of consequential damages can be valid notwithstanding the fact that a limitation of remedy has failed of its essential purpose.") (collecting cases and applying Tennessee law).  A provision excluding consequential damages is valid unless excluding such damages is unconscionable.  *See* Tex. Bus. & Com. Code Ann. § 2.719.  And consequential damages often include lost profits.  *See Powell Elec. Sys., Inc. v. Hewlett Packard Co.*, 356 S.W.3d 113, 121 (Tex. App. 2011, no pet.) ("[L]ost profits . . . are frequently, but not categorically, consequential in nature." (citation omitted)); *Superior Brod. Prods. v. Doud Media Grp., L.L.C.*, 392 S.W.3d 198, 210 (Tex. App. 2012, no pet.) (treating lost profits to radio station caused by defective transmitter in breach of warranty action as consequential damages).  *Cf. A-Delta Overnight Legal Reprod. Servs. Corp. v. David W. Elrod, PLLC*, 2012 WL 5351265, at *3 (Tex. App. Oct. 31, 2012, no pet.) (mem. op.) ("Lost profits [for breach of contract] may be in the form of direct damages, that is, profits lost on

D

Even if a jury finds that the limitations on remedies provisions fail of their essential purpose, plaintiffs cannot recover for defects not covered by the express warranties. Responding to plaintiffs' list of defective ThermoTek products, ThermoTek correctly argues that it warranted that its products would be free from defects in material and workmanship. This phrase does not cover design defects. *See Rice v. Sunbeam Prods., Inc.*, 2013 WL 146270, at *12 (C.D. Cal. Jan. 7, 2013) (holding, without finding any state cases on point, that phrase "free from defects in material and workmanship" in limited warranty referred only to manufacturing defects, not to design defects); *see also Bruce Martin Constr., Inc. v. CTB, Inc.*, 2012 WL 6203112, at *3-4 (E.D. Mo. Dec. 12, 2012) (where parties agreed that language covering defects in material and workmanship did not cover design defects).[15] Nevertheless, because the court cannot conclude from the summary judgment record that plaintiffs seek to recover for design defects, it declines to grant summary judgment on this

the contract itself, or in the form of consequential damages, such as profits lost on other contracts or relationships resulting from the breach.").

[15]Other courts have attempted to explain the distinction as it is used in private contracts. *See Cali v. Chrysler Grp. LLC*, 2011 WL 383952, at *2 (S.D.N.Y. Jan. 18, 2011) ("'Design' refers to 'the arrangement of elements that make up . . . a machine,' and 'the process of selecting the means and contriving the elements, steps, and procedures for producing what will adequately satisfy some need.' Webster's Third New International Dictionary (2002) . . . .  The terms 'material,' 'workmanship,' or 'factory preparation,' on the other hand, refer to the mechanical process of implementing that design."); *Bruce Martin*, 2012 WL 6203112, at *3-4 (holding that a "defect in material is a defect in quality," but "[d]esign . . . involves the overall plan of construction and operation.") (quoting *Lombard Corp. v. Quality Aluminum Prods. Co.*, 261 F.2d 336, 338-39 (6th Cir. 1958)).

- 19 -

basis.

## V

ThermoTek also moves for summary judgment on plaintiffs' breach of contract claim.

## A

ThermoTek argues that plaintiffs' breach of contract claim is simply a restatement of their claims for breach of warranty because they are complaining of non-conforming products, not the failure to deliver the products. Plaintiffs respond that their claim is broader; they posit that the Agreement requires ThermoTek to "exert reasonable commercial efforts to make Products ordered by Distributor available to Distributor during the term of this Agreement," Ps. App. 205, but that the defects and continual repairs, some of which they maintain have taken an unreasonable amount of time, prevented ThermoTek from fulfilling this separate contractual obligation.

"Texas law forbids conflating breach of warranty and breach of contract: 'Under the [U.C.C.], breach of contract damages are available for failure to perform, but not for delivery of nonconforming goods . . . . [There is] a definitive distinction between failure to conform and failure to deliver.'" *A.O. Smith Corp. v. Elbi S.p.A.*, 123 Fed. Appx. 617, 619 (5th Cir. 2005) (per curiam) (quoting *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 897 (Tex. App. 2002, no pet.)).

## B

The court holds that ThermoTek is entitled to summary judgment dismissing plaintiffs' breach of contract claim. "[T]he critical factor in whether the buyer has a breach

of contract or a breach of warranty claim is whether the buyer has finally accepted the goods." *Selectouch Corp. v. Perfect Starch, Inc.*, 111 S.W.3d 830, 834 (Tex. App. 2003, no pet.). "A buyer who rightfully rejects the goods or justifiably revokes his acceptance may recover breach of contract remedies for delivery of non-conforming goods under section 2.711." *Emerson Elec. Co. v. Am. Permanent Ware Co.*, 201 S.W.3d 301, 310 (Tex. App. 2006, no pet.). But a buyer's sole remedy after it has accepted the goods is for breach of warranty. *Materials Mktg. Corp. v. Spencer*, 40 S.W.3d 172, 174 (Tex. App. 2001, no pet.) (citing *Glenn Thurman, Inc. v. Moore Constr., Inc.*, 942 S.W.2d 768, 772 (Tex. App. 1997, no writ)). Conversely, remedies for a breach of warranty are available after the buyer has accepted the goods. *See Sw. Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576 (Tex. 1991). Plaintiffs neither argue nor cite evidence that would enable a reasonable jury to find that they rejected or revoked their acceptance of the various units and wraps. Nor do they contend, and there is no evidence to support, that any of their orders for products were unreasonably delayed. Rather, plaintiffs maintain that they found after limited use that the products they ordered and accepted were defective, and that ThermoTek did not exercise reasonable commercial efforts to provide repairs or replacements in accordance with the express warranties. It is apparent, therefore, that plaintiffs' claim, in essence, is not for failure to deliver goods in a commercially reasonable time, but for delivering *defective* goods in a commercially reasonable time. *See* 2d Am. Compl. ¶ 32 ("In providing to Wabash Medical and Motion Medical, VascuTherm Systems having the defects and/or deficiencies described [previously in the second amended complaint], ThermoTek has breached the terms of [the

- 21 -

Agreement].").  Because plaintiffs accepted the products, they cannot maintain a breach of contract action, and this claim is dismissed.

*   *   *

For the reasons explained, the court grants ThermoTek's motion for leave to file a reply appendix and its motion for summary judgment as to plaintiffs' breach of contract, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose claims, and denies the motion as to plaintiffs' breach of express warranty claim.

**SO ORDERED.**

August 9, 2013.

SIDNEY A. FITZWATER
CHIEF JUDGE