IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ORTHOFLEX, INC. d/b/a/ | § | |
| INTEGRATED ORTHOPEDICS, et al., | § | |
| | § | |
| Plaintiffs-Counterdefendants, | § | |
| | § | Civil Action No. 3:11-CV-0870-D |
| VS. | § | (Consolidated with |
| | § | Civil Action No. 3:10-CV-2618-D) |
| | § | |
| THERMOTEK, INC., | § | |
| | § | *This memorandum opinion and order was filed unsealed |
| Defendant-Counterplaintiff- | § | on November 18, 2013 after the parties agreed that no |
| Third-Party Plaintiff, | § | part needed to remain under seal. |
| | § | |
| VS. | § | |
| | § | |
| MIKE WILFORD, | § | |
| | § | |
| Consolidated Defendant, | § | |
| | § | |
| VS. | § | |
| | § | |
| WMI ENTERPRISES, LLC, et al., | § | |
| | § | |
| Third-Party Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Motion Medical Technologies, LLC ("Motion Medical"), Wabash Medical Company,

LLC ("Wabash Medical"), Mike Wilford ("Wilford"), Thermo Compression Solutions, LLC

("TCS, LLC"), and Tri 3 Enterprises, LLC ("Tri 3")[1] move for summary judgment

---

[1] The court will refer to these parties collectively as "defendants," unless the context otherwise requires.  It will refer to Motion Medical, Wabash Medical, Tri 3, and TCS, LLC collectively as "the Wilford entities," unless the context otherwise requires.

dismissing the claims of ThermoTek, Inc. ("ThermoTek") for breach of contract, fraud, and unfair competition. For the reasons that follow, the court grants the motion as to all except one ground of ThermoTek's breach of contract claim, and denies the motion as to the claims for fraud and unfair competition.

I

Because this case is the subject of multiple prior opinions,[2] the court will recount only the background facts and procedural history necessary to understand the present decision.

ThermoTek designed and developed the VascuTherm System, which is a medical device intended to be used in conjunction with specially-designed wraps. Together, the VascuTherm System and wraps transfer pressure, heat, and cold to various body parts during medical therapy. ThermoTek sells its products to a network of distributors and non-distributors who then sell or lease the equipment to hospitals and clinics. They in turn provide the products to patients—the end-users.

Wilford is an executive of several medical supply companies, including Orthoflex, Inc., d/b/a Integrated Orthopedics ("Orthoflex"), Motion Medical, and Wabash Medical. Orthoflex, Motion Medical, and Wabash Medical are durable medical equipment providers, meaning that they invest in and lease capital medical equipment. Tri 3 is a limited liability holding company for Motion Medical and Wabash Medical. Wilford serves as the corporate secretary, manager, and principal of Tri 3, and is also, in effect, the Chief Operating Officer

---

[2]*See, e.g., Orthoflex, Inc. v. ThermoTek, Inc.*, 2012 WL 2864510 (N.D. Tex. July 12, 2012) (Fitzwater, C.J.).

of Wabash Medical and Motion Medical.  TCS, LLC is a medical sales company that Wilford

also controls.

In 2008 Wilford contacted ThermoTek about purchasing some of its products.

ThermoTek put Wilford in touch with Melissa Wojcik ("Wojcik"),[3] a ThermoTek regional

sales manager, who made a sales presentation to Wilford about ThermoTek's VascuTherm

System.  Wojcik later provided Wilford information about the VascuTherm System,

including billing codes and sales brochures, and informed him by email that ThermoTek

"would be willing to sell [him] 20 units for [him] to run a sample with no distribution

agreement in place."  P. App. 27.  She stated in the email:

> We just ask that you keep the billing and coding information
> confidential, as well as our prices which are not published.  If
> you would like to move forward with the sample run of 20 units,
> please let me know and I will get you . . . prices and part
> numbers for the items you wish to purchase.  You will receive
> the entire price list once we have a distributorship agreement in
> place.

*Id.* (ellipsis added).  Later that day, Wojcik sent another email confirming the initial offer and

stating, "Thank you, 20 units for tria[l] with no agreemen[t].  1999 each which is our

distributor price."  P. App. 28 (bracketed material added).  Wilford responded by requesting

additional billing and coding information: "You were going to send through additional info

for billing and sadmerc.  I am willing to sign a non disclosure if your team would like.  I

promise it will not go beyond our internal group."  *Id.*  Wojcik replied, "I will send it when

---

[3]ThermoTek sues Wojcik as a third-party defendant.

I get back to my office," without mentioning a non-disclosure agreement. *Id.*

About one month later, Wojcik provided Wilford a copy of a distributor agreement naming Wabash Medical as a distributor. According to Wilford, the agreement was never executed.[4] Wilford began purchasing large quantities of ThermoTek's VascuTherm System units and wraps on behalf of several entities he represented.[5]

Wilford visited ThermoTek's facilities at least twice. The first time was on May 20, 2008.[6] ThermoTek maintains that, during this visit, Wilford expressed his intention to serve as a distributor while the parties finalized the distribution agreement. Wilford sent an email to Sam McSpadden ("McSpadden"), ThermoTek's Chief Executive Officer, and Tony Quisenberry, a ThermoTek product designer, thanking them for the visit and expressing his desire to purchase 35 VascuTherm units. A few days later, Wojcik provided Wilford a price list that reflected three pricing tiers: a "list price," a "volume price" for buyers purchasing five to nine units, and a "volume price" for those purchasing ten or more units. Wilford continued to purchase units and wraps from ThermoTek throughout 2008 and 2009 at

---

[4]As far as the court can determine from the summary judgment briefing and record, ThermoTek does not dispute that the 2008 distributor agreement that Wojcik provided Wilford was never executed.

[5]Initially, Wilford purchased VascuTherm units and wraps on behalf of Motion Medical and Wabash Medical. After Wilford purchased Orthoflex, he purchased VascuTherm units and wraps on Orthoflex's behalf. The parties dispute whether Orthoflex was an "affiliated entity" under the distributor agreement signed in 2009, an issue that the court need not resolve.

[6]ThermoTek asserts that this visit occurred in June 2008. The precise meeting date is immaterial for the purposes of deciding this motion.

"volume prices." According to ThermoTek, Wilford and his entities purchased 386 units and over 4,000 wraps during 2008 and 2009.

Beginning in June 2008 and continuing until 2010, Wilford reported various problems with the VascuTherm System and the wraps. ThermoTek maintains that Wilford fabricated all or substantially all of the reported problems by intentionally breaking or misusing the devices, and used the pretext of customer complaints to extract design and manufacturing information from ThermoTek. ThermoTek posits that Wilford used the information he acquired from ThermoTek to develop a competitor device, the "Recovery+ unit," and competitor wraps that are substantially similar to the VascuTherm System and wraps.[7]

Before ThermoTek concluded that Wilford was manipulating it, Wilford visited ThermoTek's facilities a second time on May 6, 2009. At that time, McSpadden signed a distributor agreement ("Distributor Agreement") on behalf of ThermoTek, and Wilford signed on behalf of Tri 3 d/b/a Motion Medical and Wabash Medical. The Distributor Agreement included, *inter alia*, the following confidentiality provision that states, in part:

---

[7]Although the parties dispute whether these problems were genuine, in deciding this motion the court will view the evidence in the light most favorable to ThermoTek as the summary judgment nonmovant and draw all reasonable inferences in its favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

> Each party agrees that the other has a proprietary interest in any information provided to it by the other, whether in connection with this Agreement or otherwise, whether in written, oral or visual form, which is (i) a trade secret, confidential or proprietary information, (ii) not publicly known, or (iii) annotated by a legend, stamp or other written identification as confidential or proprietary information, or if disclosed orally or visually, is followed by a written statement within thirty (30) days after its disclosure that it is confidential or proprietary (hereinafter referred to as "Proprietary Information").

P. App. 142.

After the Distributor Agreement was executed, Wilford continued to report problems with the VascuTherm System and wraps and continued to request information about product design, manufacturing processes, ThermoTek's business structure, and pricing. Defendants posit that, in January 2010, Wilford formed WMI Enterprises, LLC ("WMI") to develop a wrap design, manufacturing, and sales business to supply Wabash Medical, Motion Medical, and Orthoflex. According to ThermoTek, Wilford used WMI and other Wilford-controlled entities to market and sell competitor wraps that he designed based on information that ThermoTek provided.

In March 2010 various Wilford entities sued ThermoTek on claims for breaches of implied and express warranties and breach of contract. That same month, Wojcik stopped working for ThermoTek, and in April 2010 she began working for Wilford through an event planning company. In late April 2010 Wojcik helped set up a meeting between Wilford and representatives of Kinex Medical Co. ("Kinex"), another ThermoTek distributor. According to ThermoTek, Wilford wanted to meet with Kinex to discuss the problems he was allegedly

having with the ThermoTek products and to encourage Kinex to raise concerns about the products directly to ThermoTek.  After discussions with Kinex, Wilford sent a Kinex employee an email that stated, in pertinent part:

> We just need to clarify to the group that these ideas did not come from me but are simple straight forward questions and issues.
>
> We just need to keep my name out of the Thermotek call but you can easily ask what other customers are having large failure percentages and what has Thermotek determined to be the root cause.

P. App. 114.  Kinex then asked ThermoTek to pay for an assessment by an independent company, Ingenium Technologies ("Ingenium").  In June 2010 Ingenium produced a report that contained confidential information about manufacturing and design features of ThermoTek's products.

On July 20, 2010 ThermoTek sent Wilford's counsel a letter terminating the Distributor Agreement effective August 19, 2010.  By that time, Wilford had purchased 732 units, which utilized approximately 24,000 wraps.  At some point in 2010, Wilford submitted a 510(k) application to the Food and Drug Administration ("FDA") for the Recovery+ unit[8] and received FDA approval in November 2011.  According to ThermoTek, Wilford and his affiliates showed the competitor product at trade shows as early as April 2012.

---

[8]According to ThermoTek, Wilford and Fernando Ubidia ("Ubidia") primarily developed the Recovery + unit, which was manufactured by Pulsar Scientific, LLC, an entity formed by Wilford and Ubidia.

II

Because ThermoTek will bear the burden of proof on its claims for breach of contract, fraud, and unfair competition, defendants can meet their summary judgment obligation by pointing the court to the absence of admissible evidence to support the claim in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once defendants do so, ThermoTek must go beyond its pleadings and designate specific facts showing that there is a genuine issue for trial.  *Id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable trier of fact could return a verdict in ThermoTek's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  ThermoTek's failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citation omitted).  Summary judgment is mandatory if ThermoTek fails to meet this burden.  *Little*, 37 F.3d at 1076.

III

Defendants move for summary judgment on ThermoTek's breach of contract claim against Motion Medical, Wabash Medical, and Tri 3, arguing that ThermoTek has failed to produce evidence that defendants breached any contract.

A

"A breach of contract claim under Texas law requires proof of four elements: (1) the existence of a valid contract, (2) plaintiff's performance of duties under the contract, (3) defendants' breach of the contract, and (4) damages to plaintiff resulting from the breach."

- 8 -

*DT Apartment Grp., LP v. CWCapital, LLC*, 2013 WL 2317061, at *5 (N.D. Tex. May 28, 2013) (Fitzwater, C.J.) ("*DT Apartment II*") (quoting *Mesa v. Verizon Bus. Network Servs., Inc.*, 2012 WL 3452696, at *12 (N.D. Tex. Aug. 14, 2012) (Fitzwater, C.J.)). "[T]he court's primary concern when interpreting a contract is to ascertain the parties' intentions as expressed objectively in the contract." *Orthoflex, Inc. v. ThermoTek, Inc.*, 2013 WL 4045206, at *3 (N.D. Tex. Aug. 9, 2013) (Fitzwater, C.J.) (citation omitted). "Where the contract can be given a definite legal meaning or interpretation, it is not ambiguous, and the court will construe it as a matter of law." *Id.* "A contractual provision is ambiguous when its meaning is uncertain and doubtful or if it is reasonably susceptible to more than one interpretation." *Hoffman v. L&M Arts*, 774 F.Supp.2d 826, 833 (N.D. Tex. 2011) (Fitzwater, C.J.). "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole, in light of the circumstances present when the contract was entered." *Orthoflex*, 2013 WL 4045206, at *3. Accordingly, "[i]n the context of contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) (per curiam) (citation and internal quotation marks omitted) (Texas law). For a contract involving the sale of goods, such as medical devices, the court may consider the parties' course of performance in deciding the parties' intent. *See* Tex. Bus. & Com. Code Ann. § 1.303 (West 2009); *see also Anadarko Petroleum Corp. v. Williams Alaska Petroleum, Inc.*, ___ F.3d ___, 2013 WL 4001507, at *2 & n.3 (5th Cir. Aug. 6, 2013).

B

Because the briefing is somewhat unclear, the court begins by clarifying which breach of contract grounds are at issue.  In its complaint,[9] ThermoTek appears to allege that Motion Medical, Wabash Medical, and Tri 3 breached the Distributor Agreement on four distinct grounds: (1) they misused the ThermoTek products they purchased; (2) they failed to return confidential and proprietary information; (3) they failed to meet minimum-purchase requirements; and (4) they disclosed confidential and proprietary information to non-distributor third parties.  In its response brief, however, ThermoTek states that "the [Distributor] Agreement's confidentiality provision is not implicated in ThermoTek's breach of contract claim," P. Br. 46, and only addresses the misuse and minimum-purchase grounds. So far as the court can determine, ThermoTek is no longer asserting that defendants breached the Distributor Agreement by failing to return confidential and proprietary information or by disclosing confidential and proprietary information to non-distributors.  Accordingly, the court grants summary judgment dismissing these two grounds of ThermoTek's breach of contract claim.

ThermoTek raises in its summary judgment response two new grounds for its breach of contract claim: first, that "the Wilford Entities . . . breached the [Distributor] [A]greement by buying wraps other than ThermoTek wraps for use on their VascuTherm units," *id.* at 43;

---

[9]By "complaint" the court means ThermoTek's first amended third-party complaint and second amended counterclaims filed under seal on January 26, 2012.

and, second, that "[t]he Wilford Entities breached the contract by hiring Melissa Wojcik," *id.* at 45.  ThermoTek does not allege either ground in its complaint.  In fact, it does not mention the wraps or Wojcik in count III, which sets out its breach of contract claim against Motion Medical, Wabash Medical, and Tri 3.  It is well established that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Bennett v. Dall. Ind. Sch. Dist.*, ___ F.Supp.2d ___, 2013 WL 1295338, at *7 (N.D. Tex. Mar. 29, 2013) (Fitzwater, C.J.) (quoting *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)) (internal quotation marks omitted).  "A properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests.'" *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed. Appx. 200, 204 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698-99 (2009)).  "Accordingly, district courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment." *Id.*  The court therefore concludes that ThermoTek's new grounds for alleging a breach of contract claim against Motion Medical, Wabash Medical, and Tri 3 should be disregarded.[10]

Finally, ThermoTek appears at times to suggest that there was a binding contract even before Wilford executed the Distributor Agreement. *See, e.g.,* P. Br. 41 ("Wilford argues that

---

[10]In its complaint, ThermoTek also includes a separate count (count IV) alleging a breach of contract claim against Wojcik individually.  Because Wojcik is not moving for summary judgment, this claim is not affected by today's decision.

the distributor agreements from 2008 and 2009 differed in several respects; however, a close examination of the two documents demonstrates that there were no material differences." (emphasis omitted)).  But ThermoTek did not allege in its complaint that there was a binding contract before the parties entered into the Distributor Agreement in 2009,[11] and it does not explicitly take this position in its summary judgment response brief.  ThermoTek also appears not to dispute defendants' contention that the parties were merely in the process of negotiating from the time the first copy of a distributor agreement was presented to Wilford in 2008 and the time he actually signed the Distributor Agreement in 2009.  Accordingly, in deciding defendants' summary judgment motion, the court assumes there was no contract between ThermoTek and Wilford or the Wilford entities before Wilford signed the Distributor Agreement on May 6, 2009.

In sum, ThermoTek has preserved two grounds for its claim that defendants breached the Distributor Agreement: (1) they misused the ThermoTek products they purchased under the agreement, and (2) they failed to meet minimum-purchase requirements.

## C

The court now considers whether defendants are entitled to summary judgment dismissing either grounds of ThermoTek's breach of contract claim.

---

[11]ThermoTek alleges in its complaint that "ThermoTek and Tri 3, on behalf of Motion Medical and Wabash Medical, entered into a Distributor Agreement on May 6, 2009.  At all times material to this action, ThermoTek performed under the Distributor Agreement until it was terminated in July 2010."  Compl. ¶ 62.  Notably, ThermoTek does *not* allege that it performed under any contract that predates the Distributor Agreement entered into in 2009.

1

The court turns first to the misuse ground.  Defendants maintain that they are entitled to summary judgment because ThermoTek cannot identify any contractual provision that creates an obligation not to misuse any product purchased under the Distributor Agreement. Defendants also posit that ThermoTek cannot point to any evidence to substantiate its claim that Wilford or the Wilford entities misused any product.

In its response, ThermoTek relies on one sentence in the Distributor Agreement: "Once Distributor has bought any product from Manufacturer ('Purchased Product'), Distributor may resell, rent, or otherwise retain and use Purchased Product at its discretion." P. App. 139.  But that sentence is part of a longer provision:

> Manufacturer hereby appoints Distributor (and its affiliated entities) as its distributor for the sale of the NanoTherm, VascuTherm, and associated wraps and accessories products ("Products") during the term of this Agreement in the territory provided in Exhibit B ("Territory").   Once Distributor has bought any product from Manufacturer ("Purchased Product"), Distributor may resell, rent, or otherwise retain and use Purchased Product at its discretion within the territory. Distributor may not alter the appearance or function of any Product without the express written consent of Manufacturer.

*Id*.  ThermoTek maintains that it was not a "permissible use" for Wilford or his entities "to send the products to third parties that [Wilford] hired to test and evaluate them so the third parties could instruct Wilford on how to copy ThermoTek's products."  P. Br. 41.

The court concludes that defendants are entitled to summary judgment dismissing this ground of ThermoTek's breach of contract claim.  Neither the provision cited by ThermoTek

nor any other provision in the Distributor Agreement contains the word "misuse" or its equivalent or otherwise defines "permissible" and "impermissible uses" of a purchased product. ThermoTek relies exclusively on the word "use," which is not defined in the Distributor Agreement, and it ignores other language in the cited provision that cuts against its interpretation. The provision on which it relies also gives the distributor the right to "otherwise retain and use [a] Purchased Product *at its discretion*." P. App. 139 (emphasis added). This language clearly indicates that the parties intended to confer the distributor with a broad grant of discretionary power: after purchasing a product, a distributor could retain and use the purchased product as the distributor chose, according to its discretion. The *only* express limitation on a distributor's discretion is the restriction that the distributor "not alter the appearance or function of any Product without the express written consent of Manufacturer." *Id.* This clause does not by its express terms prohibit testing or restrict what third parties can do with a purchased product. That there is but one stated exception to the general grant of discretion to a distributor who has purchased a product reinforces the conclusion that the parties intended a broad grant of discretion by their inclusion of the phrase "otherwise retain and use . . . at [Distributor's] discretion." *Id.*

Additionally, the provision on which ThermoTek relies states that a distributor who purchases products has the right to resell the products within its territory. If the parties had intended by this provision to preclude third parties from testing ThermoTek products, they presumably would not have conferred on distributors an unqualified right to resell the products within the territory. And even if a distributor gave, rather than resold, a product to

- 14 -

a third party for testing, the Distributor Agreement does not restrict what *the third party* can

do with the product.  It merely restricts what the *distributor* can do within its territory, and

only then in a specific way: it cannot alter the appearance or function of the product without

ThermoTek's express written consent.

In its response, ThermoTek only cites two pieces of summary judgment evidence to

support its interpretation of the Distributor Agreement.  The first is to a different contractual

provision that specifies the relationship of the parties.  This provision reads:

> The relationship of Manufacturer and Distributor shall be of an
> independent contractor engaged in purchasing Products from
> Manufacturer for rental or resale to Distributor's customers.
> Nothing in this Agreement shall be deemed to create a
> partnership or joint venture between the parties.  Neither party
> shall hold itself out as the agent of the other, nor shall it incur
> any indebtedness or obligations which shall be binding on the
> other without prior written consent of the other.  Each party
> assumes full responsibility for its own personnel under laws and
> regulations of the governmental authorities of the competent
> jurisdiction.

*Id*. at142-43.  Contrary to ThermoTek's suggestion, this provision does not demonstrate the

parties' intention with respect to the provision at issue here.  It merely clarifies that the two

parties retain separate corporate identities and that the Distributor Agreement does not create

any type of agency relationship between them.

ThermoTek's second citation is to the deposition transcript of Niran Balachandran

("Balachandran"), a ThermoTek product designer, who testified that "modifying the unit .

. . [is] not allowed by the distributor agreement."  *Id.* at 440.  This citation does not support

the argument that ThermoTek makes in its response because Balachandran's testimony

relates to modifying the device, not sending the device to third parties for testing.[12]

Furthermore, there is no evidence suggesting that Balachandran was present for the

negotiations leading up to the formation of the contract and no argument that he had personal

knowledge of ThermoTek's intention when it signed the Distributor Agreement.[13]  It is, at

most, conclusory testimony about the meaning of the provision, which is not enough to

preclude summary judgment.  *See, e.g., Olabisiomotosho v. City of Houston*, 185 F.3d 521,

525 (5th Cir. 1999) (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th

Cir. 1996)).  The provision on which ThermoTek relies is insufficient to support its misuse

theory.

The court therefore holds that defendants are entitled to summary judgment dismissing

this ground of ThermoTek's breach of contract claim.

2

The court turns next to the minimum-purchase requirement ground of ThermoTek's

---

[12]In its response, ThermoTek does not raise the argument that Wilford or his entities breached the Distributor Agreement by intentionally breaking or modifying the products. Instead, ThermoTek argues only that "there is a fact question for the jury on whether or not 'using' ThermoTek's product to create an identical, competing product was a breach of the agreement[.]" P. Br. 42.  ThermoTek does not mention the clause prohibiting Wilford or his entities from "alter[ing] the appearance or function of any Product without the express written consent of Manufacturer." P. App. 139.  A party cannot defeat summary judgment by relying on claims that have not been asserted as of the time the opposing party has filed a summary judgment motion, and that principle applies here, where ThermoTek has not raised the claim in its complaint or the argument in its response. *Cf. Siddiqui v. AutoZone W., Inc.*, 731 F.Supp.2d 639, 644-45 (N.D. Tex. 2010) (Fitzwater, C.J.).

[13]McSpadden, ThermoTek's Chief Executive Officer, signed the Distributor Agreement on behalf of ThermoTek, not Balachandran.

breach of contract claim.  Defendants maintain that they are entitled to summary judgment for the reasons that ThermoTek's interpretation of the minimum-purchase provision (1) violates "the basic rules of grammar" and thus is unreasonable, and (2) ignores the parties' course of performance.

The Distributor Agreement provides, in pertinent part: "Distributor agrees to purchase a minimum of ten (10) units per month."  P. App. 140.  Defendants interpret this provision to mean that Wilford and the Wilford entities were required to purchase an *average* of ten units per month over the life of the contract.  ThermoTek maintains that this provision requires Wilford and his entities to purchase *at least* ten units *each* month.

The court disagrees with defendants' interpretation of the provision.  Contrary to defendants' conclusory assertion, ThermoTek's interpretation is grammatical.  In the context pertinent here, "per" means "with respect to every member of a specified group: for each." *Merriam-Webster's Collegiate Dictionary* 918 (11th ed. 2007).

Nor does the Distributor Agreement, taken as a whole, support defendants' interpretation.  The provision in question does not include the word "average" or specify a period that would serve as the denominator for calculating the average.  A separate provision states that the Distributor Agreement continues for a term of one year, but it does not mention an "average."  If anything, the fact that neither provision includes the word "average" and that the minimum-purchase provision explicitly includes the word "minimum" strongly supports ThermoTek's position.

Defendants also challenge ThermoTek's interpretation on the basis that it ignores the

- 17 -

parties' course of performance.   They maintain that, during the time the Distributor Agreement was in effect, Wilford and the Wilford entities purchased fewer than ten units during several months and ThermoTek accepted this as adequate performance, suggesting that the parties intended an average minimum-purchase term.

But as ThermoTek correctly argues, even if the court concludes that there is evidence of a course of performance[14] that casts doubt on ThermoTek's interpretation, such evidence merely raises a genuine issue of material fact that requires resolution by the trier of fact; it does not entitle defendants to summary judgment. *See, e.g., Childers v. Pumping Sys., Inc.*, 968 F.2d 565, 569 (5th Cir. 1992); *see also APS Capital Corp. v. Mesa Air Grp., Inc.*, 580 F.3d 265, 272 (5th Cir. 2009) (holding that district court erred when it resolved case at summary judgment where contract was ambiguous on its face).

Accordingly, the court holds that defendants are not entitled to summary judgment on ThermoTek's breach of contract claim as to the minimum-purchase provision.

---

[14]Although the court agrees with ThermoTek's ultimate conclusion, it notes that ThermoTek appears to conflate course of performance with course of dealing. *See* P. Br. 43. "Course of performance" refers to a sequence of conduct between the parties to a particular transaction that takes place during the performance of the contract at issue, meaning that a course of performance occurs *after* contract formation. *See* Tex. Bus. & Com. Code Ann. § 1.303(a) (West 2009).  "Course of dealing," in contrast, refers to a sequence of conduct between the parties concerning previous transactions, meaning that a course of dealing occurs *prior* to contract formation. *See id.* § 1.303(b).  Defendants have not raised an argument concerning any course of dealing between ThermoTek and Wilford or his entities.

IV

Defendants move for summary judgment on ThermoTek's fraud claim against Wilford, contending that ThermoTek cannot raise a genuine issue of material fact on any of the elements of the claim.

A

To recover against Wilford for fraud under Texas law, ThermoTek must establish that Wilford (1) made a material representation; (2) it was false when made; (3) Wilford knew the representation was false, or he made it recklessly without knowledge of its truth and as a positive assertion; (4) Wilford made the representation with the intent that ThermoTek should act upon it; and (5) ThermoTek acted in reliance upon it and suffered injury as a result.  *Hoffman v. L&M Arts*, 2013 WL 4511473, at *1 (N.D. Tex. Aug. 26, 2013) (Fitzwater, C.J.) (citing *Beijing Metals & Minerals Import/Export Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1185 (5th Cir. 1993) (Texas law)).

B

1

Defendants contend that ThermoTek's allegations of fraud are too general and conclusory because they fail to identify "specific communications[,] . . . time frames[,] . . . participants or documents."  Ds. Br. 22.  So far as the court can determine, defendants are arguing that, because ThermoTek has not identified a specific document (e.g., an email or letter), it has failed to produce sufficient evidence on the material misrepresentation and

- 19 -

falsity elements.[15]  The court disagrees.

ThermoTek has produced, *inter alia*, the testimony of Balachandran, a ThermoTek employee, stating that Wilford repeatedly approached ThermoTek representing that ThermoTek's products were failing in the field and causing customer complaints.  *See, e.g.,* P. App. 426-27, 432-36.[16]  Balachandran testified that ThermoTek provided details to Wilford about its designs and manufacturing processes because Wilford represented that he was a concerned distributor trying to correct the problems for the mutual benefit of both sides to the transaction: Wilford, as distributor for ThermoTek and a salesman to his customers, and ThermoTek, as a seller to Wilford.  Balachandran testified, for example, that Wilford informed ThermoTek that one of the units had a faulty reservoir; that this representation about an allegedly faulty reservoir did not make sense because Wilford was reporting a failure rate approximately ten times higher than the general population of customers; and that, on examining the problem, ThermoTek concluded that the design was not defective and that someone must have overtightened the cap on the reservoir (or otherwise misused it) to cause the problem.  A reasonable trier of fact could find based on this evidence that Wilford

----

[15]For example, defendants state in their brief: "ThermoTek never identifies specific communications in support of its claims."  Ds. Br. 22.

[16]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact."  *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).  The court therefore summarizes or provides examples of evidence that presents genuine and material fact issues that require a trial.

made material misrepresentations about whether ThermoTek's devices were failing in the field due to design defects and that such misrepresentations were false when made.

2

Defendants maintain that ThermoTek has failed to raise a genuine issue of material fact as to the communications that took place prior to May 6, 2009 because Wilford had no legal duty to respect ThermoTek's confidential information before signing the Distributor Agreement. The court disagrees.

ThermoTek's fraud claim is based on common law fraud and alleges affirmative misrepresentations.[17] ThermoTek is not relying on failures to disclose that, to be fraudulent, require that it establish a duty to disclose. *See, e.g., Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008) (noting distinction between fraud claim based on affirmative false representations and fraud based on nondisclosure, which requires duty to disclose)

---

[17]In its response brief, ThermoTek states:

> Wilford's argument . . . fails because the Distributor Agreement does not define the elements of ThermoTek's fraud claim. Whether or not the formal Distributor Agreement was effective on any particular date would only be relevant if that Agreement defines an element of the fraud claim by creating the duty not to make misrepresentations to ThermoTek. But ThermoTek's fraud claim does not contain a "duty" requirement—ThermoTek has alleged a claim of fraud by affirmative misrepresentation, not a fraudulent failure to disclose information which Wilford had a duty to disclose. Only if ThermoTek had alleged a nondisclosure claim would a "duty" element be added to the elements of ThermoTek's claim.

P. Br. 34.

- 21 -

Accordingly, defendants are not entitled to summary judgment on this ground.[18]

3

Defendants posit that ThermoTek has failed to adduce evidence of intent. They maintain that ThermoTek cannot identify any facts showing that, at the time of Wilford's alleged misrepresentations, he intended that ThermoTek disclose any information to him or that Wilford intended to use ThermoTek's information to compete with ThermoTek.[19] The court disagrees.

Although ThermoTek has not produced *direct* evidence of Wilford's intention, intent can be proved circumstantially. "While a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made. . . . Since intent to defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence." *L&C Consultants, LLC v. ASH*

---

[18]For the same reason, the court declines to accept defendants' contention that ThermoTek cannot raise a genuine issue of material fact as to communications that took place after May 6, 2009 because Wilford never violated the confidentiality provision set out in the Distributor Agreement. ThermoTek's fraud claim does not depend on duties imposed by the Distributor Agreement because the claim is not based on a failure to disclose. Nor does the claim depend on whether the information was, as a matter of law, "confidential," "proprietary," or "valuable."

[19]Defendants cite *Ernst & Young, L.L.P. v. Pacific Mutual Life Insurance Co.*, 51 S.W.3d 573 (Tex. 2001), and *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913 (Tex. 2010), but those cases are inapposite. In both cases the plaintiff was a third party, not the immediate target of the defendant's misrepresentations. *See Ernst & Young*, 51 S.W.3d at 574-75; *Grant Thornton*, 314 S.W.3d at 921-22; *see also* Restatement (Second) of Torts § 531 (1977). ThermoTek, by contrast, is not merely a third party; it is the immediate target of Wilford's alleged misrepresentations.

*Petroleum, Inc.*, 2009 WL 3110200, at *7 (N.D. Tex. Sept. 29, 2009) (Fitzwater, C.J.) (quoting *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434-35 (Tex. 1986) (citations omitted and internal quotation marks omitted) (Texas law)), *aff'd*, 464 Fed. Appx. 199 (5th Cir. 2010). "Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Spoljaric*, 708 S.W.2d at 434.

ThermoTek has produced sufficient evidence on this element here. It has adduced evidence that would enable a reasonable trier of fact to find that Wilford repeatedly asked for information about ThermoTek's product designs, manufacturing processes, business structure, and pricing over more than a one-year period; Wilford continued to purchase bulk quantities of the VascuTherm System and wraps despite complaining of problems with the products; and Wilford and his entities began marketing at trade shows competitor products that were substantially the same. A reasonable trier of fact could find that Wilford intended to defraud ThermoTek by using customer complaints as a ruse to extract information that allowed him and his entities to copy a competitor's product, thereby avoiding substantial research and development costs.

4

Defendants argue for two reasons that ThermoTek has failed to produce evidence of reliance. They contend, first, that ThermoTek has failed to adduce evidence that ThermoTek actually relied on Wilford's representations. They posit, second, that even if ThermoTek relied on Wilford's representations, such reliance was not justifiable because Wilford did not

sign the 2008 distributor agreement, and, after signing the Distributor Agreement, he never violated the agreement's confidentiality provision because the information he obtained was neither confidential nor proprietary.  The court disagrees.

ThermoTek has produced evidence that its employees provided Wilford information about product designs, manufacturing processes, business structure, and pricing only because they were under the mistaken impression that Wilford was a concerned distributor hoping to work cooperatively with ThermoTek to address the underlying cause of the customer complaints Wilford had been reporting.  ThermoTek has also adduced evidence that Wilford took steps to convince ThermoTek to make these disclosures.  For example, ThermoTek presented an email from Wilford advising ThermoTek that he was willing to sign a non-disclosure agreement and promising that he would not share information he received beyond his "internal group."  P. App. 28.

To prevail on its common law fraud claim, ThermoTek is not required to prove that the proposed 2008 distributor agreement was legally enforceable or that Wilford breached the Distributor Agreement[20] by violating a duty of confidentiality.[21]  Instead, ThermoTek

---

[20]Because the court can decide the summary judgment motion without interpreting the confidentiality provision in the Distributor Agreement, it does not reach that issue.

[21]Both parties rely on *DT Apartment Group, LP v. CWCapital, LLC*, 2012 WL 6693192, at *6-9 (N.D. Tex. Dec. 26, 2012) (Fitzwater, C.J.) ("*DT Apartment I*"), and *DT Apartment II*, 2013 WL 2317061, at *9, to support their position.  The plaintiffs in *DT Apartment I* and *II* borrowed funds to purchase apartment properties from the defendant. When the promissory note became due, the plaintiffs sought to sell the properties and allegedly received a letter of interest from a third party.  On learning about the interested third party, the defendant requested the identity of the prospective purchaser for the stated

must show that it actually and justifiably relied on the misrepresentation. *See Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 406 (5th Cir. 2007). Nothing in the summary judgment record suggests that ThermoTek knew the misrepresentations were false or that ThermoTek ignored "red flags" that would have made its reliance unjustifiable. And there

---

purpose of doing due diligence to facilitate the transaction. The plaintiffs alleged that the defendant did not perform due diligence, but instead notified the prospective purchaser that it intended to foreclose on the properties. The plaintiffs alleged that the defendant committed fraud by misleading the plaintiffs into disclosing confidential information (the identity of the third party) that the defendant used to injure the plaintiffs (by deterring the potential purchaser with news of the impending foreclosure).

In *DT Apartment I* the court applied Texas law and held that the plaintiffs could not state a claim for misuse of confidential information or for trade secret misappropriation, *DT Apartment I*, 2012 WL 6693192, at *12-13, but could state a claim for fraud—on the theory that the defendant had misrepresented its intentions in obtaining information and harmed the plaintiffs, *id.* at *7. In *DT Apartment II* the court dismissed a fraud claim based on a new theory that the defendant had created a scheme or artifice to defraud the plaintiffs of their investment in the properties, but sustained a fraud claim based on the original theory that the defendant misled the plaintiffs into disclosing the name of the potential buyer. *DT Apartment II*, 2013 WL 2317061, at *8-9.

ThermoTek cites *DT Apartment I* and *II* for the proposition that fraud does not depend on the type of information provided to the defendant. Defendants argue that *DT Apartment I* and *II* show that whether the information is confidential is dispositive when determining the viability of ThermoTek's fraud claim.

While the court does not agree completely with ThermoTek's interpretation of *DT Apartment I* and *II*, it agrees that these decisions support ThermoTek's position. Although the court described the identity of the prospective purchaser as "confidential," the question whether the information was confidential was not essential to the court's reasoning. What mattered was that the plaintiffs alleged that the defendant falsely represented its intentions, leading the plaintiffs to provide information that the defendant used to harm the plaintiffs' economic interests. *See DT Apartment I*, 2012 WL 6693192, at *7 (concluding that fraud claim was viable where plaintiffs alleged that defendant "misrepresented its intentions in obtaining information in order to harm plaintiffs," without mentioning whether information was confidential). If ThermoTek can prove that it provided Wilford information about product designs, manufacturing processes, business structure, and pricing only because Wilford misled ThermoTek, it does not matter whether the information was "confidential" or "proprietary."

is sufficient evidence supporting ThermoTek's position that Wilford took steps to conceal his true intentions.

The court therefore concludes that ThermoTek has raised a genuine issue of material fact on the element of reliance.

5

Finally, defendants posit that ThermoTek has failed to produce evidence that ThermoTek was injured as a result of Wilford's alleged misrepresentations. Defendants appear to argue that the information ThermoTek provided Wilford throughout their relationship was publicly accessible, so ThermoTek could not have been injured by Wilford's alleged misrepresentations because he did not gain any competitive advantage by ThermoTek's disclosures. The court disagrees.

ThermoTek has adduced evidence from which a reasonable trier of fact could find that the information Wilford received from ThermoTek appreciably increased the speed by which he was able to manufacture competing products, apply for and receive FDA approval, and begin selling his products. A reasonable trier of fact could also find from this evidence that Wilford was able to copy the competitor product without having to pay substantial research and development costs. ThermoTek has introduced evidence that would enable a reasonable trier of fact to find that at least some of the information provided to Wilford was confidential or proprietary. Accordingly, the court holds that ThermoTek has produced sufficient evidence to raise a genuine issue of material fact as to injury.

6

Because ThermoTek has produced evidence sufficient to create a genuine issue on each challenged element, the court holds that defendants are not entitled to summary judgment dismissing ThermoTek's fraud claim against Wilford.

V

Defendants move for summary judgment on ThermoTek's unfair competition claim against Wilford and TCS, LLC, maintaining that ThermoTek's claim fails as a matter of law because ThermoTek cannot establish each of the elements of the claim for unfair competition, particularly the requirement that any accused party is guilty of an underlying tort.

A

"Unfair competition under Texas law is 'the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters.'" *Conceal City, L.L.C. v. Looper Law Enforcement, LLC*, 917 F.Supp.2d 611, 618 (N.D. Tex. 2013) (Fitzwater, C.J.) (quoting *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974) (citation and internal quotation marks omitted)).  "Unfair competition includes three causes of action: passing off or palming off, trade secret misappropriation, and common law misappropriation." *Id.* (citing *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App. 1993, writ denied)); *see also Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (Texas law).

ThermoTek alleges unfair competition by common law misappropriation.  To prevail on its claim, ThermoTek must prove three elements: (1) the creation of ThermoTek's product through extensive time, labor, skill, and money; (2) defendants' use of that product in competition with ThermoTek, thereby gaining a special advantage in that competition because defendants were burdened with little or none of the expense incurred by ThermoTek; and (3) commercial damage to ThermoTek.  *See Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 839 (5th Cir. 2004) (Texas law).

B

Defendants appear to misunderstand the Texas-law doctrine of unfair competition. They correctly note that "[i]t is well established that a claim for unfair competition is not a separate tort," Ds. Br. 43, but they argue that the unfair competition claim must fail because the only other tort that ThermoTek alleges is fraud, and fraud cannot support an unfair competition claim.  But ThermoTek relies upon misappropriation to support its unfair competition claim.  Although ThermoTek relies on several common facts to support its fraud and unfair competition claims, this does not make the unfair competition claim *dependent* on the fraud claim.  And there is no requirement that ThermoTek allege a separate common law misappropriation claim as a predicate for asserting an unfair competition claim.

C

1

Defendants challenge ThermoTek's showing on each element of its claims of unfair competition by misappropriation.  They first contend that ThermoTek has failed to produce

- 28 -

evidence showing that ThermoTek expended extensive time, labor, skill, and money to create the products at issue.  The court disagrees.

ThermoTek has produced, *inter alia*, testimony of several current and former ThermoTek employees who described the research and development involved in creating the VascuTherm System and wraps.  And although ThermoTek has not introduced evidence of the total number of hours expended creating the products or the total monetary costs incurred, a specific number is not required to preclude summary judgment, provided that there is sufficient evidence for a reasonable trier of fact to find that ThermoTek created the VascuTherm system and the wraps through extensive time, labor, skill, and money.  *Cf. Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 788 (5th Cir. 1999) ("In contrast to federal copyright law, which focuses on the value of creativity, state misappropriation law is specifically designed to protect the *labor*—the so-called 'sweat equity'—that goes into creating a work.") (emphasis in original).  The court concludes that ThermoTek has adduced sufficient evidence to create a genuine issue of material fact on this element.

2

Defendants maintain that ThermoTek has failed to raise a genuine issue of material fact as to the use element.  They contend that ThermoTek has not articulated "the precise manner in which any particular evidence shows what . . . Wilford allegedly used."  Ds. Reply 17.  The court disagrees.

This degree of precision is not required to preclude summary judgment.  ThermoTek need not show, for example, how Wilford applied what he learned from an email to a

particular manufacturing process, or how his competitor product incorporated specific information he received on one of his visits to ThermoTek's facilities.  Instead, ThermoTek must produce evidence that would enable a reasonable trier of fact to find that Wilford and his entities must have used the information to their special advantage.  And ThermoTek has done that here because it has produced evidence that would enable a reasonable trier of fact to find that Wilford systematically requested design information about ThermoTek's products, feature by feature, in order to save on the research and development costs necessary to develop and test each feature; that he and his entities manufactured competitor wraps and a competitor device known as the Recovery+ unit in an unusually short period of time (suggesting that he was able to substitute information he received from ThermoTek for time-consuming original research and development); and that the Recovery+ unit and the WMI wraps are substantially equivalent to the VascuTherm System and its wraps.  Thus the summary judgment evidence is sufficient for a reasonable trier of fact to find in ThermoTek's favor on the use element.  *See Dresser-Rand*, 361 F.3d at 839-40 (holding that it was reasonable for jury to find that use element was satisfied where defendant planned to create competitor product and differences between competitor product and plaintiff's product were only superficial).

3

Finally, defendants contend that ThermoTek has failed to produce sufficient evidence on the element of commercial damage.  Defendants contend that ThermoTek has done nothing more than offer "conclusory testimony" from ThermoTek employees about commercial damage.  The court disagrees.

For example, ThermoTek's chief executive officer and one of its product designers

each testified that ThermoTek lost sales as a result of the competitor product's entry into the market.  Defendants attempt to diminish the force of this testimony by pointing out that neither witness quantified the number of lost sales or the total amount of money lost.  But these arguments relate to the *amount* of damages, not to the *fact* of whether ThermoTek suffered commercial damage.  ThermoTek's failure to specify a precise damage figure is insufficient to warrant the entry of summary judgment.[22]  *See, e.g., Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 263-66 (1946) (holding that jury may award damages on lost profits theory even where precise figure of lost profits cannot be proved); *see also Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 20 (5th Cir. 1974) ("There is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage and the measure of proof necessary to enable the jury to fix the amount.  The rule which precludes recovery to uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount.") (footnote omitted).

　　The court therefore denies defendants' motion for summary judgment addressed to ThermoTek's unfair competition claim.

---

[22]Defendants maintain that ThermoTek has failed to adequately cite the summary judgment evidence.  The court disagrees.  ThermoTek cites specific pages in its appendix and explains how that evidence creates a genuine issue of material fact.  On the argument about commercial damage, for example, it cites excerpts of deposition transcripts of two ThermoTek employees who testified that ThermoTek had lost sales.

\*    \*    \*

For the reasons explained, the court grants in part and denies in part defendants'

motion for summary judgment.

**SO ORDERED.**

October 31, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE