IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ORTHOFLEX, INC. d/b/a/ | § | |
| INTEGRATED ORTHOPEDICS, et al., | § | |
| | § | |
| Plaintiffs-Counterdefendants, | § | |
| | § | Civil Action No. 3:11-CV-0870-D |
| VS. | § | (Consolidated with |
| | § | Civil Action No. 3:10-CV-2618-D) |
| | § | |
| THERMOTEK, INC., | § | |
| | § | |
| Defendant-Counterplaintiff- | § | |
| Third-Party Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| MIKE WILFORD, | § | |
| | § | |
| Consolidated Defendant, | § | |
| | § | |
| VS. | § | * This memorandum opinion and order was filed |
| | § | unsealed on January 7, 2014 after the parties |
| WMI ENTERPRISES, LLC, et al., | § | agreed that no part needed to remain sealed. |
| | § | |
| Third-Party Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant-counterplaintiff-third-party plaintiff ThermoTek, Inc. ("ThermoTek"),

objects to the magistrate judge's September 23, 2013 order (1) denying ThermoTek's motion

for ruling on "trade secrets privilege" and to compel plaintiffs-counterdefendants Motion

Medical Technologies, LLC ("Motion Medical"), Wabash Medical Company, LLC

("Wabash Medical"), Mike Wilford ("Wilford"), Tri 3 Enterprises, LLC ("Tri 3"), and

Orthoflex, Inc., d/b/a Integrated Orthopedics ("Orthoflex") (collectively, "plaintiffs")[1] to produce certain discovery, (2) denying ThermoTek's motion for contempt and sanctions, and (3) granting WMI Enterprises, LLC's ("WMI's") motion to enforce the court's July 12, 2012 order and issue a protective order and also issue an order quashing and/or modifying ThermoTek's subpoena to WMI.[2]  For the reasons that follow, the court vacates the order and re-refers the matter for further proceedings.

## I

Because this case is the subject of multiple prior opinions, the court will recount only the background facts and procedural history necessary to understand the present decision.[3]

## A

ThermoTek designed and developed the VascuTherm System, which is a medical device intended to be used in conjunction with specially-designed wraps.  Together, the VascuTherm machine and wraps transfer pressure, heat, and cold to various body parts during medical therapy.  ThermoTek sells its products to a network of distributors and non-distributors who then sell or lease the equipment to hospitals and clinics.  They in turn

---

[1]As in prior memorandum opinions and orders in this case, the court refers to these parties collectively as "plaintiffs."  *See, e.g., Orthoflex, Inc. v. ThermoTek, Inc.*, 2013 WL 3213311, at *1 (N.D. Tex. June 26, 2013) (Fitzwater, C.J.).  Plaintiffs' filings are cited as "Ps." filings, and ThermoTek's filings are cited as "D." filings.

[2]Although WMI's motion is not mentioned in the title of ThermoTek's objection, it is discussed at length in the objection.

[3]*See, e.g., Orthoflex, Inc. v. ThermoTek, Inc.*, 2012 WL 2864510 (N.D. Tex. July 12, 2012) (Fitzwater, C.J.).

provide the products to patients—the end-users.

Wilford is an executive of several medical supply companies, including Orthoflex, Motion Medical, and Wabash Medical. Orthoflex, Motion Medical, and Wabash Medical are durable medical equipment providers, meaning that they invest in and lease capital medical equipment. Tri 3 is a limited liability holding company for Motion Medical and Wabash Medical. Wilford serves as the corporate secretary, manager, and principal of Tri 3, and, in effect, is also the Chief Operating Officer of Wabash Medical and Motion Medical. Thermo Compression Solutions, LLC ("TCS, LLC") is a medical sales company that Wilford also controls.

In 2008 Wilford contacted ThermoTek about purchasing some of its products. ThermoTek put Wilford in touch with Melissa Wojcik ("Wojcik"),[4] a ThermoTek regional sales manager, who made a sales presentation to Wilford about ThermoTek's VascuTherm System. Wojcik later provided Wilford information about the VascuTherm System, including billing codes and sales brochures. About a month later, Wojcik provided Wilford a copy of a distributor agreement naming Wabash Medical as a distributor. Wilford did not sign that agreement, but he nevertheless began purchasing large quantities of ThermoTek VascuTherm units and wraps on behalf of several entities he represented, including Motion Medical, Wabash Medical, and Orthoflex. On a visit to ThermoTek's facilities in May 2009, Wilford signed a distributor agreement ("Distributor Agreement") on behalf of Tri 3 d/b/a

---

[4]ThermoTek sues Wojcik as a third-party defendant.

Motion Medical and Wabash Medical.

Beginning in June 2008 and continuing until 2010, Wilford reported various problems with the VascuTherm machine and the wraps. The parties dispute whether these problems were genuine product failures or Wilford's ruse to elicit design information from ThermoTek. The picture that plaintiffs paint is that ThermoTek sold Wilford and his entities defective VascuTherm machines and wraps, and Wilford—motivated by his interest in selling working products to his customers—repeatedly reached out to ThermoTek in good faith to offer information and suggest ways to fix the alleged design defects. ThermoTek, on the other hand, alleges that Wilford fabricated all or substantially all of the reported problems by intentionally breaking or misusing the devices, and then used the pretext of customer complaints as a way to extract design and manufacturing information from ThermoTek. According to ThermoTek, Wilford used the information he acquired from ThermoTek to develop a competitor device, the "Recovery+ unit," and competitor wraps that were substantially similar to the VascuTherm machine and wraps.

After the Distributor Agreement was executed in 2009, Wilford continued to report problems with the VascuTherm System and continued to request information about product design, manufacturing processes, ThermoTek's business structure, and pricing. In January 2010 Wilford formed WMI for the purpose of developing a wrap design and a manufacturing and sales business to supply his entities. According to ThermoTek, Wilford used WMI and TCS, LLC to market and sell competitor wraps that he designed on the basis of information provided to him by ThermoTek.

- 4 -

In March 2010 Wilford and his entities sued ThermoTek for breach of implied warranty, breach of express warranty, and breach of contract.[5]  On July 20, 2010 ThermoTek sent Wilford's counsel a letter terminating the Distributor Agreement effective as of August 19, 2010.  By that time, Wilford had purchased 732 units that utilized approximately 24,000 wraps.  At some point in 2010, Wilford submitted a 510(k) application to the Food and Drug Administration ("FDA") for the Recovery+ unit and received FDA approval in November 2011.  According to ThermoTek, the Recovery+ unit was primarily developed by Wilford and Fernando Ubidia ("Ubidia"), and manufactured by Pulsar Scientific, LLC ("Pulsar"), an entity formed by Wilford and Ubidia.  ThermoTek alleges that Wilford and his affiliates were showing the competitor product at trade shows as early as April 2012.

ThermoTek initially sued Wilford and WMI in November 2010.  After a series of amendments and other proceedings in this case, ThermoTek filed its first amended third-party complaint and second amended counterclaims under seal ("complaint") in January 2012.  The complaint alleged, *inter alia*, fraud against Wilford; breach of contract against Motion Medical, Wabash Medical, and Tri 3; breach of contract against Wojcik; and unfair competition against Wilford, Wojcik, and TCS, LLC.[6]

---

[5]In *Orthoflex, Inc. v. ThermoTek, Inc.*, 2013 WL 4045206 (N.D. Tex. Aug. 9, 2013) (Fitzwater, C.J.), the court granted partial summary judgment in favor of ThermoTek, dismissing plaintiffs' claims for breach of implied warranty and limiting the claim for breach of express warranty to defects in materials and workmanship.  *See id.* at *4-5.

[6]These four claims remain for trial.  *See Orthoflex, Inc. v. ThermoTek, Inc.*, ___ F.Supp.2d ___, 2013 WL 6061346, at *14 (N.D. Tex. Oct. 31, 2013) (Fitzwater, C.J.).

B

Discovery in this case has been an involved and contentious process.  In August 2011 ThermoTek filed a motion to compel and for sanctions ("first motion to compel").  In support of the motion, ThermoTek alleged that plaintiffs and Wilford had failed to conduct a proper document collection and production.  ThermoTek adduced evidence that Wilford had personally collected all or substantially all of the documents that plaintiffs had produced to that point.  ThermoTek also presented evidence received from third-party productions that suggested that plaintiffs had not produced responsive documents.  Some of the evidence indicated that plaintiffs had selectively produced only a portion of a chain of responsive email messages.  According to ThermoTek, the portion that Wilford had apparently redacted showed that he had been interfering with ThermoTek's relationship with Kinex Medical Co. ("Kinex"), another ThermoTek distributor.[7]  ThermoTek also presented an email, obtained via a production from Wojcik, in which Wilford told Wojcik, "Melissa just remember to delete messages . . . lol[.]"  D. 8/31/2011 App. 4.  This email was dated January 30, 2011—approximately two months after ThermoTek filed its first lawsuit against Wilford, among others.  ThermoTek argued that these documents, which it received from third parties but not from Wilford, suggested that plaintiffs had failed to comply with their discovery

_____

[7]ThermoTek also presented evidence that plaintiffs failed to produce a chain of emails between Wilford and a representative from Kinex.  In one, Wilford told the Kinex representative: "per our conversation, please keep these internal to your organization.  I do not want these to end up with Thermotek."  D. 10/5/2011 App. 34.  ThermoTek received these emails via a third-party production from Kinex.

obligations.

The motion was referred to the magistrate judge.  On July 11, 2012 Judge Stickney granted in part and denied in part ThermoTek's first motion to compel.  He concluded that plaintiffs and Wilford had "not conducted a thorough search for documents and electronically stored information responsive to ThermoTek's discovery requests," *Orthoflex, Inc. v. ThermoTek, Inc.*, No. 3:11-CV-0870-D, order at 1 (N.D. Tex. July 11, 2012) (Stickney, J.) ("July 11, 2012 Order"), and that they had "failed to produce a log of responsive documents withheld on the basis of privilege or trade secret protection, thus hindering Therm[o]Tek from specifically contesting privilege or trade secret protection," *id.* at 2.  Judge Stickney denied ThermoTek's motion for sanctions without prejudice "to the extent that no sanctions, attorneys' fees, or costs are imposed at this time."  *Id.*

In February 2012, before a ruling was made on ThermoTek's first motion to compel, ThermoTek filed a motion to compel and for costs related to third-party discovery ("second motion to compel").  ThermoTek alleged that, after it served third-party subpoenas on several non-parties, including DragonSlayer Strategies ("DragonSlayer"), WMI, Tandem Technologies ("Tandem"), and Materials Engineering, Inc. ("MEi"), plaintiffs' counsel began representing these entities and filed objections—similar in nature to those filed by plaintiffs to the subpoenas issued against *them*—that prevented ThermoTek from obtaining the discovery it sought from the third parties.  In essence, ThermoTek argued that plaintiffs' counsel interfered with ThermoTek's attempts to gather discovery from third parties and that Wilford exercised such a level of control over the third parties that plaintiffs should be

required to produce the discovery sought from the third parties.

The motion was referred to the magistrate judge.  Following a hearing, ThermoTek filed a supplement to its first and second motions to compel, in which it alleged that it had recently learned that, contrary to plaintiffs' suggestion at the hearing, Wilford and Ubidia were already showing the Recovery+ unit in the marketplace and that the FDA had approved Pulsar's 510(k) filing for the device on November 23, 2011—more than two months before the hearing.  ThermoTek also noted that plaintiffs had failed to identify Ubidia or Pulsar as parties likely to have discoverable information, in violation of Fed. R. Civ. P. 26(a)(1)(A).

In a July 12, 2012 order, Judge Stickney denied in part and granted in part ThermoTek's second motion to compel.  *Orthoflex, Inc. v. ThermoTek, Inc.*, No. 3:11-CV-0870-D, order at 2 (N.D. Tex. July 12, 2012) (Stickney, J.) ("July 12, 2012 Order") .  He observed that ThermoTek's initial motion and its supplement to the motion "d[id] not specify the documents whose production ha[d] allegedly been improperly withheld nor the discovery requests that ha[d] not been answered." *Id.*  He reasoned that ThermoTek "ha[d] brought [a] global motion based on the speculation that Orthoflex and Wilford conspired with third party defendants in raising the objections" and "ha[d] failed to show that the objections [were] the result of a conspiracy initiated by Orthoflex and Wilford." *Id.*  He denied the motion "to the extent that the Court will not [o]rder Orthoflex and Wilford to produce documents subpoenaed from third parties or order them to pay the costs of ThermoTek's third party discovery." *Id.*  He granted the motion "to the extent that with respect to production being withheld, . . . within thirty days, any party withholding documents or electronically stored

data on the basis of objections to discovery requests or subpoenas shall produce to ThermoTek a privilege log of the withheld materials identifying them and stating the basis for withholding production." *Id.*  Judge Stickney's order did not address ThermoTek's argument about the Recovery+ unit.

In October 2012 ThermoTek filed two more motions: a motion to compel and for ruling on "trade secrets privilege" ("third motion to compel") and a motion for contempt and sanctions.  In its third motion to compel, ThermoTek asked the court to overrule the "trade secrets privilege" asserted by plaintiffs to prevent ThermoTek from obtaining numerous categories of documents that it had requested.  In its motion for contempt and sanctions, ThermoTek argued that plaintiffs' *supplemental* document production failed to comply with the July 11, 2012 Order because it still did not include many of the documents that ThermoTek had obtained through third-party productions.

The court referred both motions to the magistrate judge.  Following a hearing, Judge Stickney ruled on both of ThermoTek's motions and on WMI's motion to enforce the July 12, 2012 Order and issue a protective order and an order quashing and/or modifying ThermoTek's subpoena to WMI. *See Orthoflex, Inc. v. ThermoTek, Inc.*, No. 3:11-CV-0870-D, order at 1 (N.D. Tex. Sept. 23, 2013) (Stickney, J.) ("Sept. 23, 2013 Order").  Judge Stickney reasoned:

> Having reviewed the Orthoflex Plaintiffs' *in camera* submission, the Court concludes that the withheld materials contain confidential commercial information and trade secrets. The documents at issue relate to the design and development of the Orthoflex Plaintiffs' competing products, including the

"Recovery+" and "DVTherapy" systems, which are not at issue in this litigation. The materials also include sales contracts, purchase orders, financial information, and documents pertaining to customer relations and patient billing. These are the types of materials that private companies, like the Orthoflex Plaintiffs, would typically keep secret. Indeed, these are the same types of materials that ThermoTek has successfully protected from disclosure as trade secrets during the course of this litigation. Disclosure of these materials to a direct competitor would be harmful to the Orthoflex Plaintiffs.

*Id.* at 3. He also held:

Even assuming that the withheld documents are relevant and necessary, ThermoTek has failed to show that its need for the documents outweighs the potential harm to the Orthoflex Plaintiffs. ThermoTek's general assertions that the requested discovery is necessary because it would constitute evidence that would help establish its claims are simply insufficient to justify a broad intrusion into its competitors' confidential commercial information.

*Id.* at 4. And he found:

The Court further finds that the Orthoflex Plaintiffs have complied with the Court's prior orders and have conducted an adequate search for information and documents responsive to ThermoTek's discovery requests. The Court will not require the Orthoflex Plaintiffs to retain an independent third-party to conduct additional discovery.

*Id.* Judge Stickney denied ThermoTek's third motion to compel and its motion for contempt and sanctions in their entirety. He granted WMI's motion to enforce the July 12, 2012 Order and issue a protective order and an order quashing and/or modifying ThermoTek's subpoena to WMI "to the extent ThermoTek seeks to discover information and documents protected by the trade secrets privilege." *Id.*

- 10 -

ThermoTek objects to the September 23, 2013 order. It asks the court to overrule the order, either compel production of WMI's and Pulsar's "trade secret" documents or strike Wilford's affirmative defense of reverse engineering, order the deposition of WMI, and impose appropriate sanctions against Wilford.[8] Concerning sanctions, it asks the court to tax all costs and fees associated with third-party discovery against Wilford and tax all costs and fees associated with drafting and pursuing ThermoTek's motion to compel and for sanctions and motion for contempt and sanctions.[9]

II

A

This appeal is governed by Rule 72(a), which provides, in pertinent part, that "[t]he district judge . . . must . . . modify or set aside any part of the [magistrate judge's] order that

_____

[8]In its motion, ThermoTek specifically states that, because the trial is approaching, it no longer seeks any third-party production because this would likely delay the trial.

[9]The court notes that both sides have consistently failed to comply with N.D. Tex. Civ. R. 72.1, which cross-references N.D. Tex. Civ. R. 7.1 and 7.2. Specifically, both sides have relied on citations to docket numbers and previously-filed appendixes to support assertions made in their briefs. *See, e.g.,* D. Obj. 10; Ps. Resp. 17 n.19. After reviewing the parties' submissions to Judge Stickney, the court notes that both sides have consistently failed to comply with N.D. Tex. Civ. R. 7.1 and 7.2 in their briefing before the magistrate judge, as well. The parties are instructed to comply with the local civil rules. In particular, they should not rely on docket numbers or citations to previously-filed appendixes; instead, if a party desires to cite material contained in a document that has previously been submitted to the court, the party should attach it as part of the appendix filed in connection with the *instant* motion, in compliance with N.D. Tex. Civ. R. 7.2(e) and 7.1(i). Hereafter, the court will only consider material contained in a correctly-paginated appendix that is filed in connection with the motion under consideration; it will not refer back to previously-filed appendixes or docket entries.

is clearly erroneous or is contrary to law." "When a party appeals a magistrate judge's order, [it] must demonstrate how the order is reversible under the applicable standard of review—*de novo* for error of law, clear error for fact findings, or abuse of discretion for discretionary matters." *Jefferson-Pilot Life Ins. Co. v. Bellows*, 2003 WL 21501904, at *1 (N.D. Tex. June 24, 2003) (Fitzwater, J.). "The clearly erroneous standard applies to the factual components of the magistrate judge's decision." *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 204, 208 (N.D. Tex. 1996) (Fitzwater, J.) (quoting *Smith v. Smith*, 154 F.R.D. 661, 665 (N.D. Tex. 1994) (Fitzwater, J.)) (internal quotation marks omitted). "The district court may not disturb a factual finding of the magistrate judge unless, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Smith*, 154 F.R.D. at 665) (internal quotation marks and brackets omitted). "If a magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, a district judge may not reverse it." *Id.* (quoting *Smith*, 154 F.R.D. at 665) (internal quotation marks omitted). The legal conclusions of the magistrate judge are reviewed *de novo*, and the district judge "reverses if the magistrate judge erred in some respect in her legal conclusions." *Id.* (citing *Smith*, 154 F.R.D. at 665). "[T]he abuse of discretion standard governs review of that vast area of . . . choice that remains to the [magistrate judge] who has properly applied the law to fact findings that are not clearly erroneous." *Id.* (quoting *Smith*, 154 F.R.D. at 665) (alteration and ellipsis in original; internal quotation marks omitted).

- 12 -

B

The parties dispute the applicable standard of review.  ThermoTek argues that the magistrate judge's decision should be reviewed under a *de novo* standard as to the existence of a trade secret and under an abuse of discretion standard as to the ultimate decision to decline to compel, find plaintiffs in contempt, and impose sanctions.  Plaintiffs maintain that the abuse of discretion standard applies to the entirety of the magistrate judge's decision.  Both sides agree that the magistrate judge's decision declining to compel production and to sanction plaintiffs is a traditional discovery matter and that these aspects of the decision should be reviewed under the abuse of discretion standard.  The only dispute, then, concerns what standard of review governs when analyzing the magistrate judge's decision not to overrule the assertion of the trade secret privilege.

According to ThermoTek, the magistrate judge's ultimate decision in the order included a subsidiary ruling that plaintiffs, WMI, and Wilford "met their burden to demonstrate that they were withholding information that constitutes a trade secret, and that this information is not discoverable on the record before it."  D. Obj. 6.  Relying on *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459 (5th Cir. 2003), ThermoTek argues that this subsidiary ruling must be reviewed *de novo* because whether something constitutes a trade secret is a question of law.  Plaintiffs maintain that *Guy Carpenter* is inapposite because the magistrate judge was not deciding whether something is, as a matter of law, a trade secret.  They argue that the abuse of discretion standard applies because the magistrate judge's decision as to the existence of a trade secret was merely a decision as to a discovery matter.

The court agrees with plaintiffs that *Guy Carpenter* is inapposite.  In that case the plaintiff sought a preliminary injunction based on a common law tort claim for misappropriation of trade secrets.  *Guy Carpenter*, 334 F.3d at 464.  The district court concluded that the plaintiff was not entitled to a preliminary injunction because it was not likely to succeed on the merits of its misappropriation of trade secrets claim because the basis for its claim—a customer list—was not a trade secret under Texas law.  *Id.* at 468.  The Fifth Circuit upheld the district court's determination, reasoning that the customer list was readily ascertainable and therefore not a trade secret.  *Id.*; *see also Gaal v. BASF Wyandotte Corp.*, 533 S.W.2d 152, 155 (Tex. App. 1976, no writ) (holding that customer list of readily ascertainable names and addresses was not trade secret).  ThermoTek's reliance on *Guy Carpenter* is misplaced because, in this case, Judge Stickney was not deciding as a matter of law whether the information plaintiffs withheld *could ever qualify* as a trade secret. Instead, he was deciding whether the information plaintiffs withheld was, as a matter of fact, a trade secret or confidential commercial information within the meaning of Rule 26(c)(1)(G).  *Cf. Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013) ("The existence of a trade secret is properly considered a question of fact to be decided by the judge or jury as fact-finder." (citation and internal quotation marks omitted)).  This ruling—that the information withheld contains confidential commercial information and trade secrets—was a factual finding that supported Judge Stickney's ultimate decision to deny ThermoTek's third motion to compel.  Thus the court reviews this aspect, as well as the other underlying factual components, of the magistrate judge's decision under the clearly

- 14 -

erroneous standard.  *See Smith*, 154 F.R.D. at 665; *see also* Rule 72(a); 28 U.S.C. § 636(b)(1)(A).[10]  The court reviews the balance of his decision under the abuse of discretion standard.  *See Nunn v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 2044477, at *4 (N.D. Tex. May 24, 2010) (Fitzwater, C.J.) ("And in matters of discretion—and discovery decisions are usually quintessential examples of the exercise of discretion—district judges do not substitute their own judgment for that of the magistrate judge."); *see also Hoffman v. L&M Arts*, 2013 WL 655014, at *2 (N.D. Tex. Feb. 21, 2013) (Fitzwater, C.J.) (reviewing discovery decision for abuse of discretion); *Snowden v. Connaught Labs., Inc.*, 136 F.R.D. 694, 698-700 (D. Kan. 1991) (reviewing for abuse of discretion assertion of trade secret privilege, where existence of trade secret was undisputed).

---

[10]ThermoTek attempts to justify *de novo* review by arguing that the magistrate judge erred as a matter of law when he failed to apply the "offensive use doctrine."  Under Texas law, offensive use is a waiver doctrine that applies to certain privileges.  *See Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993).  Assuming *arguendo* that this doctrine applies to the assertion of a trade secret privilege, the requirements are not satisfied here.  To find a waiver of the privilege through offensive use, the court must conclude, *inter alia*, that the party asserting the privilege is seeking affirmative relief and that the privileged information, if believed by the fact finder, would probably be outcome determinative.  *See Marathon Oil Co. v. Moyé*, 893 S.W.2d 585, 590 (Tex. App. 1994, no pet.); *see also Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 478 (N.D. Tex. 2004) (Kaplan, J.).  Although plaintiffs are asserting the privilege, the information sought is only relevant to ThermoTek's counterclaims and third-party claims; for those claims, plaintiffs are not seeking affirmative relief.  In addition, ThermoTek does not attempt to demonstrate that the privileged information probably would be outcome determinative, and, on this record, the court is unable to conclude that it would be.

- 15 -

III

The court turns first to the magistrate judge's decision denying ThermoTek's third

motion to compel.

A

Because the court is exercising diversity jurisdiction, Texas law governs plaintiffs'

assertion of a trade secret privilege. *See* Fed. R. Evid. 501. Although Texas law protects the

discovery of trade secrets, the trade secret privilege is not absolute. Tex. R. Evid. 507

provides:

> A person has a privilege, which may be claimed by the person
> or the person's agent or employee, to refuse to disclose and to
> prevent other persons from disclosing a trade secret owned by
> the person, if the allowance of the privilege will not tend to
> conceal fraud or otherwise work injustice. When disclosure is
> directed, the judge shall take such protective measure as the
> interests of the holder of the privilege and of the parties and the
> furtherance of justice may require.

Tex. R. Evid. 507. The Supreme Court of Texas has established a burden-shifting framework

for analyzing claims of trade secret privilege under Rule 507:

> First, the party resisting discovery must establish that the
> information is a trade secret. The burden then shifts to the
> requesting party to establish that the information is necessary for
> a fair adjudication of its claims. If the requesting party meets
> this burden, the trial court should ordinarily compel disclosure
> of the information, subject to an appropriate protective order. In
> each circumstance, the trial court must weigh the degree of the
> requesting party's need for the information with the potential
> harm of disclosure to the resisting party.

*In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d 609, 613 (Tex. 1998) (footnote omitted); *see also*

*M-I LLC v. Stelly*, 733 F.Supp.2d 759, 800-05 (S.D. Tex. 2010) (discussing state and federal laws of trade secret privilege and applying Tex. R. Evid. 507).

B

After reviewing the magistrate judge's order, the briefing, and the record before the magistrate judge, the court is left with the definite and firm conviction that a mistake has been committed.

In justifying the decision to deny ThermoTek's third motion to compel, the magistrate judge stated, "The documents at issue relate to the design and development of the Orthoflex Plaintiffs' competing products, including the 'Recovery+' and 'DVTherapy' systems, which are not at issue in this litigation." Sept. 23, 2013 Order, at 3. This reasoning is predicated on a clearly erroneous factual finding. The magistrate judge recognized that the documents at issue relate to the competitor products, but then concluded that the products are not at issue. These products *are* at issue because ThermoTek's position is that, by fraud and common law misappropriation, Wilford acquired information from ThermoTek that he used to create competitor wraps and machines.

Plaintiffs respond that the Recovery+ and DVTherapy machines are not at issue because they are not mentioned in the complaint. While it is true that these specific products are not mentioned in the complaint, ThermoTek's failure to include them does not preclude it from obtaining the discovery it seeks. ThermoTek's allegations are sufficient to put Wilford on notice that he is being accused of (1) illegally acquiring information concerning ThermoTek's wraps *and* its VascuTherm machine and (2) using that information to produce

- 17 -

"competitor products." Although it appears that the complaint was drafted with the competitor *wraps* in mind, *see, e.g.,* Compl. ¶ 20 ("TCS and Thermo sell wraps manufactured and marketed by WMI."), this does not prevent ThermoTek from pursuing its theory that, in addition to creating competitor *wraps*, Wilford also created competitor *machines* that are used with the wraps. It would be different if the complaint did not allege that Wilford had acquired information about the VascuTherm machine, or if the complaint alleged that ThermoTek was pursuing a claim only as to the competitor wraps. But ThermoTek has not limited its complaint in either way. Rather, the complaint alleges that ThermoTek's wraps and its VascuTherm machine work together as part of the "VascuTherm system," *id.* at ¶ 14, Wilford "obtain[ed] detailed information about ThermoTek's VascuTherm system and therapy wraps," *id.* at ¶ 15, and used that information "in the manufacture of competing products," *id.* at ¶ 29. These allegations demonstrate the relevance of the competitor products at issue.

Moreover, it is clear that ThermoTek's request for information about the competitor products is more than a mere fishing expedition. Since the pleadings stage of this lawsuit, evidence has come to light that supports this theory and demonstrates that information concerning both the wraps and the machines are relevant to ThermoTek's claims for fraud and unfair competition. In fact, plaintiffs' counsel at one point represented to the magistrate judge that plaintiffs recognized the relevance of the competitor machine and that they would produce the information once the machine was released to the public. During the February 29, 2012 hearing, the following colloquy occurred:

- 18 -

Counsel:     The 510(k) on the machine has not been produced
             because it is still subject to trade secret
             protection. . . .   As I think I mentioned to you
             earlier, it's not yet a commercial machine, it's
             maintained in secrecy.  The FDA maintains it in
             secrecy, so it clearly is not subject to discovery at
             this point.

                         *     *     *

The Court:   Didn't you say the 510(k) and the wrap has
             already been approved so it's in the public
             domain?

Counsel:     Yeah.  Well, no, it's not; I'm sorry.  It's not in the
             public domain.

The Court:   But it has been approved?

Counsel:     It has been approved but it has been produced in
             the lawsuit under the protective order.  What has
             not been produced—

The Court:   Is the machine.

Counsel:     Is the machine, that's correct, Your Honor. . . .
             Once the machine gets out there in the public
             domain, just like the ThermoTek machine is now,
             *we'll have no choice but to produce it*, but not yet.

D. 4/17/12 App. 46-48 (emphasis added).  According to ThermoTek, plaintiffs have failed

to produce discovery related to the machine, even though there is no dispute that the machine

is now publicly available.[11]   Plaintiffs reply in a footnote that they made good on their

---

[11]ThermoTek argues that plaintiffs' counsel misrepresented whether the FDA had
approved the 510(k) application for the machine before the date of the hearing.  The court,
however, declines to accept this argument because the transcript is ambiguous.  ThermoTek
argues that plaintiffs' counsel represented to the court that the 510(k) application for the

representation to the court because they offered the Recovery+ unit[12] to ThermoTek for an inspection and ThermoTek declined.  Even if that is the case, plaintiffs have still failed to produce documents concerning the development, manufacture, and sale of the Recovery+ unit—information at least some of which was included in plaintiffs' submission for *in camera* review and is clearly relevant to ThermoTek's claims.  The magistrate judge's factual finding that the Recovery+ and DVTherapy machines "are not at issue in this litigation" is clearly erroneous.

## C

In its third motion to compel, ThermoTek asked the court to overrule plaintiffs' objections to the production of numerous categories of documents.  *See* D. 10/19/2012 Mot. 5; 10/19/2012 App. 1-58.  In his order, Judge Stickney only addressed what appears to be a subset of these documents.  He explained:

> Having reviewed the Orthoflex Plaintiffs' *in camera*

---

machine had not yet been approved.  According to ThermoTek, when plaintiffs' counsel stated, "It has been approved but it has been produced in the lawsuit under the protective order," counsel was referring to the 510(k) application for *the wrap*—not the 510(k) application for *the machine*.  The court concludes, however, that this part of the colloquy is ambiguous.  Although ThermoTek's interpretation is reasonable when viewed in context, *see* D. 4/17/12 App. 45-48, it also appears that plaintiffs' counsel could have meant that the 510(k) application for *the machine* had been approved but that plaintiffs would not produce the machine until the device itself, as opposed to the 510(k) application, was available in the public domain.

[12]Plaintiffs state that the "DVTherapy and Recovery+ are two separate machines that may be used separately or connected together.  The term Recovery+ is generally used to refer to both machines for simplicity."  Ps. Resp. 4 n.6.  The court concludes that both machines are relevant to ThermoTek's claims for fraud and unfair competition.

> submission, the Court concludes that the withheld materials
> contain confidential commercial information and trade secrets.
> The documents at issue relate to the design and development of
> the Orthoflex Plaintiffs' competing products, including the
> "Recovery+" and "DVTherapy" systems, which are not at issue
> in this litigation.  The materials also include sales contracts,
> purchase orders, financial information, and documents
> pertaining to customer relations and patient billing.

Sept. 23, 2013 Order, at 3.  As far as the court can determine, the *in camera* submission does not contain all of the documents requested by ThermoTek in its motion to compel and for which plaintiffs asserted a trade secret privilege.  *See* D. 10/7/2013 App. 47-65.  In particular, the withholding logs that plaintiffs provided to Judge Stickney refer to numerous categories of documents concerning sales and financial information from Pulsar and more engineering and development documents pertaining to the Recovery+ and DVTherapy machines.  *See* D. 10/7/2013 App. 55-61.  On this record, it appears that Judge Stickney did not consider these documents, which were requested by ThermoTek and to which plaintiffs had objected on the basis, *inter alia*, of a trade secret privilege.  Judge Stickney clearly erred when he denied ThermoTek's motion in its entirety without analyzing this information, because the factual basis on which he relied (the documents provided for *in camera* review) did not represent the full range of discovery ThermoTek sought in its third motion to compel.  In other words, ThermoTek requested that Judge Stickney overrule plaintiffs' assertion of a trade privilege with respect to documents that he did not even consider.  Denying the motion to compel in its entirety, on this limited basis without further explanation, was clear error.

D

ThermoTek also objects to the magistrate judge's decision on the ground that some of the information that has been withheld on the basis of trade secret privilege cannot possibly be a trade secret.

1

The court first considers the timeliness of ThermoTek's objection.  Plaintiffs argue that ThermoTek's objection concerning the information withheld by WMI on the basis of trade secret privilege is untimely.  They maintain that it was necessary for ThermoTek to object to Judge Stickney's July 12, 2012 ruling rather than await his September 23, 2013 order before objecting.  This argument misunderstands ThermoTek's objection.  In the July 12, 2012 Order, Judge Stickney ruled that plaintiffs were not required to produce, on behalf of third parties, documents subpoenaed from the third parties.  July 12, 2012 Order, at 2. That ruling, however, did not mean that WMI, as a non-party, was free to ignore its discovery obligations.  It simply meant that *plaintiffs* were not responsible for producing discovery requested from WMI.  In the September 23, 2013 order, the magistrate judge granted WMI's motion to enforce the July 12, 2012 Order and issue a protective order and also issue an order quashing and/or modifying ThermoTek's subpoena to WMI.  ThermoTek objects to this ruling.  The court therefore concludes that ThermoTek's objection is timely.

2

The court now turns to the merits of ThermoTek's objection.  According to ThermoTek, WMI has refused to present a witness to testify in any respect on the topics

related to WMI's sales of competing products, profits on the competing products, income generated from the sale of competing products, and WMI's financial statements.  In his order, the magistrate judge declined to compel the production not only of documents related to the development and manufacture of the Recovery+ and DVTherapy machines but also "sales contracts, purchase orders, financial information, and documents pertaining to customer relations and patient billing."  Sept. 23, 2013 Order, at 3.  He stated, "[t]hese are the types of materials that private companies, like the Orthoflex Plaintiffs, would typically keep secret."  *Id.*

It is not clear from the order whether Judge Stickney considered this information to be a trade secret, merely "confidential commercial information," within the meaning of Rule 26(a)(1)(A), or a combination of both.  *See id.* ("[T]he Court concludes that the withheld materials contain confidential commercial information and trade secrets.").  What is clear, however, is that plaintiffs' and WMI's assertions of trade secret privilege are overbroad.  For example, in their withholding logs, plaintiffs assert that the *identity* of third parties with discoverable information is a trade secret.  *See, e.g.,* D. 10/7/2013 App. 55 ("Third Parties the identities of which are Trade Secrets.").  WMI posits that information about its sales, its profit margins, its financial statements from 2010 and 2011, and even information about its business relationships with other entities associated with Wilford is "confidential and trade secret information maintained by WMI."  Ps. 10/9/2012 Mot. 8-9.  The court cannot find any basis in the record to conclude that the trade secret privilege extends to all such information.  Even if some of the withheld information constitutes a trade secret, the showing made to

- 23 -

Judge Stickney could not have satisfied the burden of establishing that all of the information withheld constitutes a trade secret.  As to the financial information withheld by WMI, the only factual basis for establishing the existence of a trade secret is a declaration by Wilford.  *See id.* at 10 ("Similarly, WMI maintains all of its financial information in confidence.  As Mr. Wilford explains in his accompanying declaration, WMI has instituted measures to maintain its financial information as highly confidential and trade secret information [.]").  The declaration is conclusory and not sufficiently corroborated by other evidence to serve as the exclusive basis for withholding all of the information that ThermoTek requests.

Judge Stickney also concluded that, "[e]ven assuming that the withheld documents are relevant and necessary, ThermoTek has failed to show that its need for the documents outweighs the potential harm to the Orthoflex Plaintiffs."  Sept. 23, 2013 Order, at 4.  He reasoned that "ThermoTek's general assertions that the requested discovery is necessary because it would constitute evidence that would help establish its claims are simply insufficient to justify a broad intrusion into its competitors' confidential commercial information."  *Id.*  He noted that "these are the same types of materials that ThermoTek has successfully protected from disclosure as trade secrets during the course of this litigation," and that "[d]isclosure of these materials to a direct competitor would be harmful to the Orthoflex Plaintiffs."  *Id.* at 3.

This alternative ground is not sufficient to support the magistrate judge's conclusion.  The fact that ThermoTek has asserted a trade secret privilege to protect information that is *unrelated* to any of the remaining claims or defenses does not justify plaintiffs' and WMI's

assertions of trade secret privilege when that information is related to claims and defenses that remain for trial.[13]   Moreover, even if the law recognizes the competitive harm of disclosure to a direct competitor, this does not mean that plaintiffs or WMI satisfied its burden to establish that harm here.   The magistrate judge apparently relied on the presumption that this type of competitive harm exists when the parties are competitors.   *Cf.* Sept. 23, 2013 Order, at 3 (noting that disclosure "would be harmful" and citing *Education Logistics, Inc. v. Laidlaw Transit, Inc.*, 2011 WL 1348401, at *2 (N.D. Tex. Apr. 8, 2011) (Kaplan, J.), with the parenthetical explanation that "disclosure to a competitor is presumptively more harmful than disclosure to a non-competitor").   But given the relevance of the information, it was necessary for the magistrate judge to weigh the specific, particularized injury that disclosure would cause the resisting party against ThermoTek's need for the information.   Even if plaintiffs and WMI were (or are) able to establish some degree of harm, ThermoTek has produced substantial evidence that its need for the information, which is material to both its theories of liability and damages, outweighs that harm.

---

[13]In addition, it appears that plaintiffs and WMI are attempting to withhold more information than ThermoTek withheld.  Earlier in the litigation, plaintiffs moved to compel not only customer repair data but also specific information about each ThermoTek customer that had returned a ThermoTek product.  Judge Stickney denied plaintiffs' motion to compel, noting that ThermoTek had agreed to produce the relevant repair data and that ThermoTek was not obligated to disclose its confidential customer information.  *See Orthoflex, Inc. v. ThermoTek, Inc.*, No. 3:11-CV-0870-D, order at 1 (N.D. Tex. Nov. 15, 2011) (Stickney, J.). The court is not suggesting that plaintiffs should be required to disclose information about the identity of individual customers.

At trial, ThermoTek must prove, *inter alia*, that Wilford used information disclosed by ThermoTek in the creation of a competitor product and that ThermoTek was damaged by the disclosure of its information to Wilford.   Design and manufacturing information concerning the development of the competitor products and financial information about sales of the competitor products are relevant and necessary to a fair adjudication of these issues. ThermoTek explained its need for this information before Judge Stickney, and its showing was more than a "general assertion" that it needed the discovery to "help establish its claims."  It is possible that Judge Stickney will conclude that ThermoTek is not entitled to all of the information it has requested.  But it was clearly erroneous for the magistrate judge to ignore the relevance of the information ThermoTek seeks in his analysis of whether plaintiffs' and WMI's assertion of the trade secret privilege should be overruled.

IV

The court turns next to the magistrate judge's decision to deny ThermoTek's motion for contempt and sanctions.

A

ThermoTek argues that it was an abuse of discretion for the magistrate judge to deny its motion for contempt and sanctions in its entirety.  The court has reviewed the magistrate judge's order, the briefing, and the record before the magistrate judge and concludes that ThermoTek has raised colorable arguments in support of its motion for contempt and sanctions.  The magistrate judge's order, which denies ThermoTek's motion for contempt and sanctions in its entirety, does not provide a sufficient explanation for why ThermoTek

is not entitled to the relief it seeks.  In his order, the magistrate judge states:

> The Court further finds that the Orthoflex Plaintiffs have
> complied with the Court's prior orders and have conducted an
> adequate search for information and documents responsive to
> ThermoTek's discovery requests.  The Court will not require the
> Orthoflex Plaintiffs to retain an independent third-party to
> conduct additional discovery.   Accordingly, ThermoTek's
> sealed Motion for Contempt and Sanctions is denied in its
> entirety.

Sept. 23, 2013 Order, at 4.  There are at least two reasons why ThermoTek may be entitled

to the relief it seeks.  The court now examines both.

B

1

In its motion for contempt and sanctions, ThermoTek argued, *inter alia*, that plaintiffs'

supplemental document production failed to comply with the July 11, 2012 Order because

the production still did not include many of the documents ThermoTek had obtained through

third-party productions.  For example, ThermoTek cited to three copies of a WMI invoice

concerning WMI wraps that Wilford had sold to third-party NuLife Medical, LLC ("NuLife

Medical").  According to ThermoTek, it obtained these invoices from NuLife Medical but

never from plaintiffs—not even in the supplemental production that Judge Stickney ordered.

In their response, plaintiffs argued that they had produced these WMI invoices.  In support

of this assertion, plaintiffs cited to three pages of their appendix.

But the three pages plaintiffs cited in their brief are copies of materially different

WMI invoices.  *Compare* Ps. 11/9/2012 App. 270, 292, 295 *with* D. 10/19/2012 App.

- 27 -

Contempt & Sanctions 88-90. The invoice that ThermoTek cited is Invoice No. 3695, with a total amount due of $267.00, dated September 13, 2010 ("ThermoTek's invoice"). *See* D. 10/19/2012 App. Contempt & Sanctions 88-90 (three copies of same invoice). The first document plaintiffs cited is Invoice No. 1512, with a total amount due of $1,772.00, dated September 15, 2010. *See* Ps. 11/9/2012 App. 270. The third document plaintiffs cited appears to be a list of five different invoices described in summary fashion rather than an individual invoice. *See* Ps. 11/9/2012 App. 295. The second document is the most similar to ThermoTek's invoice, because it appears to relate to the same transaction. The document is listed as Invoice No. 3695, with a total amount due of $267.00, dated September 13, 2010 ("plaintiffs' invoice"). *See* Ps. 11/9/2012 App. 292. In these respects, plaintiffs' invoice is similar to ThermoTek's invoice.

But notwithstanding these similarities, plaintiffs' invoice is clearly different both in format and content. Plaintiffs' invoice has a "PAID 02/28/2011" stamp near the top, different spacing, and a different size table. Most important, plaintiffs' invoice does not have a detachable payment stub at the bottom of the document, whereas ThermoTek's invoice does. This last difference is particularly important because, in the detachable payment stub at the bottom of ThermoTek's invoice, it states:

**Please send payment to:**
Integrated Orthopedics
7750 Zionsville Rd Ste 850
Indianapolis, IN 46268

**Checks and Money Orders made payable to:**
Integrated Orthopedics

D. 10/19/2012 App. Contempt & Sanctions 88.  The top of that same document states:

WMI Enterprises, LLC
7750 Zionsville Rd Ste 850
Indianapolis, IN 46268
(317) 704-3300

*Id*.   Integrated Orthopedics is the alternative business name for Orthoflex (one of the

plaintiffs), and it is clear from the face of ThermoTek's invoice that Integrated Orthopedics

shares the same address as WMI.   Plaintiffs' invoice does not mention Integrated

Orthopedics, does not show that Integrated Orthopedics and WMI share the same address,

and does not request payment be made to Integrated Orthopedics.  This difference, by itself,

is enough to negate plaintiffs' representation that they had already produced the information

that, according to ThermoTek, had not been produced, but it is particularly striking given the

argument that plaintiffs advance in their response.   In addressing this issue, plaintiffs state

that the "information *was* indeed produced along with other invoices for WMI sales,"  Ps.

11/9/2012 Resp. 12, and then in a footnote after "sales," plaintiffs argue:

> While ThermoTek's motion refers to the Orthoflex Plaintiffs
> and Wilford, not WMI, this Court will note that the information
> relating to the NuLife Medical invoices all pertains to WMI.
> ThermoTek once again ignores corporate form, apparently
> arguing that Orthoflex Plaintiffs or Wilford should produce
> material maintained by WMI.  WMI, both as a party and after

- 29 -

this Court dismissed it, produced that material.

*Id.* at 12 n.16.  During the January 30, 2013 hearing, plaintiffs' counsel reiterated this

position:

| | |
|---|---|
| Counsel: | Mr. Wilford did collect documents from individuals, particularly collected documents from Trish Rose, and in fact, some of the documents he collected from Trish Rose are the very documents that ThermoTek is saying weren't produced in [the] lawsuit[], such [as] invoices for WMI. |

*   *   *

| | |
|---|---|
| Counsel: | [This] kind of brings to the forefront one of the problems that we've run into in this case, which is ignoring the corporate form.  ThermoTek continues to assert, you know, Mr. Wilford is at the center of this case and certainly he is a party to the lawsuit.  A lot of these other companies are not and they are separate corporate entities [that] maintain, you know, the state that they are incorporated, licensed in, and just because Mr. Wilford may be associated with them there's no reason to sweep aside the corporate form and just say, well, they're all just, quote "Wilford," and— |
| The Court: | Well, I think their concern is they're receiving discovery from these third parties that Wilford is not producing, and certainly he has the same documents. |
| Counsel: | Well, a lot of these documents, like I said, have been produced, you know.  I can go back to the WMI documents that we just showed you.  They attached a couple of documents to their briefing and said, "Look at all these invoices."  A lot of those invoices were actually the same documents three or four times, *and those invoices have been produced*[.] |

D. 10/7/2013 App. 25-27 (emphasis added).

Plaintiffs' position is troubling in two respects. First, plaintiffs' counsel represented to Judge Stickney during the hearing that the actual *invoices* had been produced. This was an even stronger claim than the one made in plaintiffs' response brief that the *information* was produced. Second, plaintiffs maintain that ThermoTek has ignored the corporate form, as if it is undisputed that WMI is a completely separate and distinct corporate entity that has nothing to do with this lawsuit. Indeed, this is a position that plaintiffs have taken throughout this discovery dispute, at times in support of their position that certain information is not relevant.[14] This position is problematic if plaintiffs have in fact withheld information, such as the detachable payment stub discussed above. The information contained in the payment stub appears to support ThermoTek's theory that Wilford has abused the corporate form in an effort to hide information that would be relevant to ThermoTek's allegations of fraud. *See* Compl. ¶¶ 16-24, 28-42; Ps. 10/28/2013 App. 302 (ThermoTek's counsel noting that ThermoTek had pleaded "a single business enterprise theory and an alter ego theory" during hearing). Indeed, evidence that WMI and Integrated Orthopedics share a common office and use centralized accounting would be relevant under several Texas-law doctrines that apply

---

[14]For example, plaintiffs have repeatedly taken the position that because WMI is no longer a party to the lawsuit, information related to WMI is no longer relevant. *See, e.g.,* Ps. Resp. 6; Ps. 10/28/2013 App. 226-55. This argument lacks force. The fact that WMI is not a party does not of itself establish that WMI does not have relevant, discoverable information. If, as ThermoTek alleges, Wilford has used WMI to manufacture competitor wraps based on information Wilford obtained from ThermoTek, discovery related to WMI and the wraps it manufactures is relevant to ThermoTek's claims.

to situations where the corporate form has been used as part of an unfair device to achieve an inequitable result. *See, e.g., De La Hoya v. Coldwell Banker Mex., Inc.*, 125 Fed. Appx. 533, 536-41 (5th Cir. 2005) (discussing equitable veil-piercing doctrines under Texas law and noting that common offices and centralized accounting are relevant factors for single business enterprise liability).

2

ThermoTek also objects to the magistrate judge's order on the ground that he did not address any of its arguments concerning evidence that plaintiffs allegedly destroyed. ThermoTek had argued before Judge Stickney that new evidence had come to light since it submitted its initial briefing in support of its first motion to compel that indicated that Wilford had instructed multiple employees to delete responsive emails. For example, in its August 2011 motion, ThermoTek highlighted the email from Wilford to Wojcik in which he told her to delete messages. After filing that motion, ThermoTek adduced evidence suggesting that this was not an isolated occurrence. Wojcik was initially represented by plaintiffs' counsel, but she eventually retained different, independent counsel. ThermoTek presented an email from Wojcik's new counsel suggesting that Wilford had instructed Wojcik to delete many of the emails that she had sent and received during the time she worked for Wilford. Wojcik's counsel stated in an email dated April 23, 2012:

> The fact is that Melissa [Wojcik] has no other emails between she and the Wilford companies for the subject time period other than those produced by Melissa to TTek on April 13, 2012. When she consulted for the Wilford companies, she used their email account to communicate with them. They asked her to

delete all emails when her consultancy ended, and she did.

D. 10/19/2012 App. 107.

According to ThermoTek, another example of plaintiffs' failure to preserve and produce relevant documents involves John Crane ("Crane"), Orthoflex's President.  During a September 20, 2012 deposition, Crane testified that the last time someone had examined his computer for document collection purposes was "quite a long time ago," implying that no one had undertaken any kind of document collection effort in the time since the July 11, 2012 Order.  D. 10/19/2012 App. 113.  Crane testified that he did some work for WMI "trying to generate sales," *see id.* at 111, but did not retain the WMI promotional materials that had been on his laptop, *see id.* at 112-13.  He testified that he exchanged emails with Wilford and another representative of Pulsar about a compression therapy unit, but according to ThermoTek, none of these emails was ever produced, either in the original production or the supplemental production.  Crane also testified that his computer hard drive, which he admitted could have contained emails and documents about the development of the WMI wraps, failed in May 2012 and that it was destroyed thereafter.  Crane testified that he did not maintain a backup of the hard drive and did not attempt to retain the failed hard drive after removing it from his computer.  This incident occurred approximately two years after plaintiffs sued ThermoTek, and a little more than three months after ThermoTek filed its first amended third-party complaint and second amended counterclaims.

ThermoTek argues that the third example of plaintiffs' noncompliance involves Trish Rose ("Rose"), who, according to testimony from Wilford, was responsible for the

- 33 -

administrative functions of Tri 3, Integrated Orthopedics, Motion Medical, and Wabash Medical.[15]  *See* D. 10/19/2012 App. 104.  ThermoTek maintains that after Judge Stickney's July 11, 2012 order, plaintiffs did not conduct an adequate collection effort for documents saved on several of their employees' computers.  In support of its argument, it cites the following deposition testimony from Rose,[16] which was taken on September 19, 2012:

> Q:    Are documents housed on the individual employee computers?
> A:    Yes.
> Q:    Do you have your own individual desktop computer?
> A:    Yes.
> Q:    Did you gather documents off of your individual desktop computer for production in the case?
> A:    Production in?
> Q:    This lawsuit.
> A:    No, sir.
> Q:    Did anybody ask you to do so?
> A:    No, sir.
> Q:    Did anybody come in and tell you that they were collecting documents off of your computer?
> A:    No, sir.

*Id.* at 132-33.

---

[15]Wilford further testified that Rose "runs the administrative functions of the Indianapolis facility."  D. 10/19/2012 App. 101.  As far as the court can determine, the Indianapolis facility is where several of the servers used by various Wilford entities are located.

[16]ThermoTek also quotes what appears to be another excerpt from Rose's deposition transcript, but the passage quoted does not appear in the appendix filed with the motion and there is no pinpoint citation for the passage.  As such, the court does not consider the quotation in its decision.

C

ThermoTek argues that these examples of plaintiffs' failure to preserve responsive documents, along with the examples of plaintiffs' failure to produce documents that had been produced by third parties, justify its motion for contempt and sanctions.  Judge Stickney denied ThermoTek's motion without explanation.  It is possible that Judge Stickney's ultimate conclusion is correct, but the court cannot make that determination without a more complete explanation.  The court recognizes that Rule 72(a) "does not require that . . . a written order . . . specify the legal arguments and documents on which the magistrate judge relied in reaching his decision."  *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 2008 WL 80760, at *2 (N.D. Tex. Jan. 8, 2008) (Fitzwater, C.J.).  Indeed, the brevity of the order alone is not a sufficient basis for disturbing the magistrate judge's decision.  *Cf. id.*  But here, ThermoTek has raised colorable arguments for the relief it seeks, and without any explanation addressing these grounds, the court cannot review the magistrate judge's decision under the abuse of discretion standard.  *See Hoffman*, 2013 WL 655014, at *2 (noting that court could not conduct adequate review under abuse of discretion standard without first re-referring motion for further proceedings).

V

The court turns next to ThermoTek's request for relief in its objection to the magistrate judge's order.  ThermoTek asks the court to overrule the September 23, 2013 order, either compel production of WMI's and Pulsar's "trade secret" documents or strike Wilford's affirmative defense of reverse engineering, order the deposition of WMI, and

impose appropriate sanctions against Wilford.  This request for relief misunderstands the court's role in the procedural posture here.  The court referred ThermoTek's third motion to compel and motion for contempt and sanctions to the magistrate judge under 28 U.S.C. § 636(b)(1).  Accordingly, the court cannot address arguments that were not raised before the magistrate judge or issue relief that was not requested in the motions.  The court therefore denies as premature ThermoTek's requests that Wilford's affirmative defenses be stricken and that the court give the jury a spoliation instruction.

The court also recognizes that ThermoTek is reluctant to request any form of relief that could result in delaying the upcoming trial.  Given the breadth of the discovery at issue, the need for the magistrate judge to carefully consider and rule on the re-referred motions, and the intervening holiday period, a trial continuance may be unavoidable. Although the court is not continuing the trial at this time, if such a continuance is granted, the court will endeavor to bring the case to trial as promptly as possible after any additional discovery has been obtained.

*   *   *

For the reasons explained, the court vacates the September 23, 2013 order and re-refers ThermoTek's October 19, 2012 motion for ruling on "trade secrets privilege" and motion to compel, ThermoTek's October 19, 2012 sealed motion for contempt and sanctions, and WMI's October 9, 2012 sealed motion to enforce this court's July 12, 2012 order and issue a protective order and also issue an order quashing and/or modifying ThermoTek's subpoena to WMI for further proceedings.  If the magistrate judge reaches the same result

as he did in the September 23, 2013 order, he should provide an explanation on the hearing record or in a written order for why ThermoTek is not entitled to the discovery and relief it seeks in light of the issues discussed in this memorandum opinion and order.  If he reaches a different result, he should provide a sufficient explanation on the hearing record or in a written order to permit the court to review the decision, if it is challenged.

     **SO ORDERED.**

     December 10, 2013.


SIDNEY A. FITZWATER
CHIEF JUDGE