UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THERMOTEK, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:11-cv-870-D (BF) |
| | § | |
| ORTHOFLEX, INC. d/b/a | § | |
| INTEGRATED ORTHOPEDICS, | § | |
| MOTION MEDICAL TECHNOLOGIES, | § | |
| LLC, and WABASH MEDICAL | § | |
| COMPANY LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff ThermoTek, Inc. ("ThermoTek") has filed a motion for sanctions in this case involving claims for breach of contract, breach of warranty, unfair competition, and fraud. The District Court referred the motion to the United States Magistrate Judge for determination and/or recommendation. *See* Order of Reference (Doc. 503). After carefully reviewing the briefs and the evidence submitted by the parties, as well as the arguments made at a hearing held on November 3, 2014, the court determines that ThermoTek's motion should be GRANTED, in part, and awards to ThermoTek the reasonable expenses and attorneys' fees it incurred from February 19, 2014 through November 3, 2014 that are attributable to discovery misconduct by Defendants Mike Wilford ("Wilford"), Orthoflex, Inc., d/b/a Integrated Orthopedics, Motion Medical Technologies, LLC, Wabash Medical, LLC, Thermo Compression Solutions, LLC, and Tri-3 Enterprises, LLC (collectively, "Defendants"), including the fees incurred in bringing the instant motion for sanctions.

1

## Background

The instant motion is at least the third request for sanctions by ThermoTek in a case where, as the District Court has aptly noted before, discovery has been "an involved and contentious process."1 Mem. Op. (Doc. 451) at 6. ThermoTek filed its first motion for sanctions more than three and a half years ago. *See* Mot. to Compel and for Sanctions (Doc. 110). At that time, ThermoTek complained that Wilford and Defendants Orthoflex, Inc., Motion Medical Technologies, LLC, and Wabash Medical, LLC (the "Orthoflex parties") had failed to conduct a proper document collection as required by the Federal Rules of Civil Procedure. ThermoTek asserted that Wilford had failed to institute proper document collection procedures or make basic efforts to preserve documents. *Id.* at 2-7. It argued that Wilford, himself, collected all of the documents that had been produced to that point solely from his own laptop and files and failed to collect documents from any other person or sources. ThermoTek additionally attempted to show that Wilford failed to take reasonable steps to preserve documents and even instructed a former employee, Melissa Wojcik, to delete documents. *Id.* at 7, 11. Following a hearing on ThermoTek's motion, the court agreed that Wilford and the Orthoflex parties had not conducted a proper document collection and granted ThermoTek's request to compel production. *See* Order (Doc. 227). The court denied ThermoTek's request for sanctions without prejudice. *Id.*

Three months later, ThermoTek filed its second motion for sanctions. *See* Mot. for

---

1

   The parties' discovery disputes continue and threaten to become the tail that wags the dog in this litigation. Even now, as the case is ready to be called for trial, Defendants have filed a new motion seeking to allow limited discovery to determine whether ThermoTek engaged in misconduct and violated discovery orders entered in this case. *See* Mot. (Doc. 529).

Contempt and Sanctions (Doc. 271). This time, ThermoTek argued that Wilford had failed to comply with the court's instruction to conduct a thorough search for documents and had engaged in deliberate destruction and withholding of evidence. *See id.* ThermoTek asserted, among other things, that Wilford failed to direct key employees -- like Trish Rose, the administrative professional for the Indianapolis facilities of Tri-3 Enterprises, LLC and the Orthoflex parties -- to collect or produce responsive documents. *Id.* at 8. It argued that John Crane, President of Orthoflex, Inc., destroyed the contents of his entire hard drive, and it repeated its allegation that Wilford told Wojcik to destroy documents. *Id.* at 13-14. ThermoTek sought harsh sanctions in the form of a spoliation instruction and an order striking Wilford's defenses to liability. *Id.* at 23. The court considered ThermoTek's arguments, but ultimately determined that sanctions were not appropriate. *See* Order (Doc. 411). Upon ThermoTek's objection, the District Court observed that ThermoTek had raised colorable arguments in support of the sanctions request that had not been particularly addressed on the record. *See* Mem. Op. (Doc. 451) at 26-37. Accordingly, the District Court vacated the prior order and re-referred ThermoTek's second motion for sanctions to the magistrate judge, with instructions to "provide a sufficient explanation on the hearing record or in a written order to permit the court to review the decision, if it is challenged." *Id.* at 36-37. The District Court also re-referred two discovery motions, including a motion to compel in which ThermoTek asked the court to overrule Defendants' objections to the production of numerous categories of documents. *Id.*

Thereafter, the court conducted a discovery conference at which the parties resolved several disputed matters by agreement and then held a hearing at which it ruled on the disputed matters to which no agreement could be reached. *See* Order (Doc. 445); *see also* Def. Resp. App. (Doc. 506) at DA00827-50. On February 19, 2014, the court entered an order

3

memorializing the parties' agreements and the court's rulings.  Among other things, the parties agreed, and the court ordered, that Defendants would produce documents that had been submitted for *in camera* review by February 19 and would produce other documents regarding development expenses by March 6, 2014.  *See* Order (Doc. 467).  The parties likewise agreed, and the court ordered, that Defendants would produce several additional categories of documents on a rolling basis.  *See id* at 2.  The court established a schedule of discovery conferences that extended through May of 2014 to provide continuous supervision of the rolling productions, *see id.* at 4, and later set June 18, 2014 as the hard deadline for Defendants to complete their document production.  *See* Order (Doc. 476).  Regarding sanctions, ThermoTek agreed to withdraw its request for attorney's fees without prejudice to reasserting its request at a later time, and the court deferred the request for a spoliation instruction to the District Court.  *See* Order (Doc. 467) at 3, ¶ 5; *see also* Def. Resp. App. at DA00844-45.

ThermoTek has now filed a third motion in which its argues that sanctions are warranted because the documents produced pursuant to the court's February 19, 2014 order provide evidence of egregious discovery misconduct, including: (1) destroying or deleting documents; (2) manufacturing and/or tampering with evidence before it was produced; (3) failing to disclose massive changes in Defendants' corporate structures; and (4) intentionally misleading the court by giving false deposition testimony.  *See* Def. Br. (Doc. 500) at 1.  ThermoTek also argues that it has been forced to expend a substantial amount of time and money to secure multiple orders from this court to obtain documents that Defendants were obligated to produce under the Federal Rules and that, despite its efforts, Defendants still have not produced all the documents requested or maintained an adequate privilege log identifying the documents withheld from

production. *Id.* By its motion, ThermoTek seeks harsh sanctions in the form of (1) a conclusive finding that Wilford, the Defendant entities, and non-party Wilford-related entities, including WMI Enterprises LLC ("WMI"), Hoosier Medical LLC, CMW Partners, LLC, CMW Medical LLC, and Compression Therapy LLC, are all alter egos and a ruling that adds the non-party entities as defendants in this action; (2) a default judgment against all Defendants and the non-party Wilford-related entities; (3) a spoliation instruction; and (4) an award of attorney's fees associated with ThermoTek's efforts to compel production or for sanctions and for reviewing documents produced pursuant to the court's February 19, 2014 order. Defendants deny ThermoTek's allegations of wrongdoing and argue that the sanctions motion is nothing more than ThermoTek's improper attempt to avoid the burden of proving its case. The motion has been fully briefed and argued at a hearing held on November 3, 2014, and the issues are ripe for determination.

## Preliminary Matters

Magistrate judges have general authority to issue orders disposing of sanctions requests arising from the discovery process. *See, e.g., Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-17 (5th Cir. 1981) (magistrate judge has power to impose sanctions for discovery abuse under Rule 37 because it involves non-dispositive pretrial matter). Notwithstanding this authority, a magistrate judge cannot issue sanctions which fall within one of the eight dispositive motions excepted in 28 U.S.C. 636(b)(1)(A),2 including a motion to involuntarily dismiss an

---

2

A magistrate judge is without authority to enter an order involving the following enumerated motions: (1) a motion for injunctive relief; (2) a motion for judgment on the pleadings; (3) a summary judgment motion; (4) a motion to dismiss or quash an indictment or information made by the defendant; (5) a motion to suppress evidence in a criminal case; (6) a motion to dismiss or to permit maintenance of a class action; (7) a motion to dismiss for failure to state a claim upon which relief can be granted; and (8) a motion to involuntarily dismiss an action. 28 U.S.C. § 636(b)(1)(A).

action. It is the nature of the sanction imposed, rather than the sanction requested, that controls the distinction between dispositive and non-dispositive matters. *Brown v. Bridges*, No. 3:12-CV-4947-P, 2015 WL 410062, at \*3 (N.D. Tex. Jan. 30, 2015) (issue of sanctions is a non-dispositive matter unless the nature of the sanction imposed is itself dispositive of a party's claim or defense). In this case, ThermoTek's motion seeks "death penalty" sanctions, *see* Mot. (Doc. 500) at 1, but the court determines the sanctionable conduct is adequately addressed by an award of fees. Accordingly, the court issues this determination of, rather than a recommendation on, ThermoTek's motion for sanctions.

## Legal Standards

ThermoTek seeks sanctions under Federal Rule of Civil Procedure 37 and the court's inherent authority. Rule 37(b)(2)(A) provides "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." FED. R. CIV. P. 37(b)(2)(A). A district court has broad discretion to determine an appropriate sanction under Rule 37(b), *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990), which may include an order directing that certain designated facts be taken as true, prohibiting the disobedient party from supporting or opposing designated claims or defenses, striking pleadings in whole or in part, dismissing the action in whole or in part, rendering a default judgment against the disobedient party, or treating the failure to obey the order as contempt of court. *See* FED. R. CIV. P. 37(b)(2)(A)(i)-(iii) & (iv)-(vii). The court must impose the least severe sanction that will achieve the deterrent value of Rule 37. *See United States v. Garrett*, 238 F.3d 293, 298 (5th Cir. 2000). In the Fifth Circuit, dismissal is considered a "remedy of last resort" and a "draconian" measure. *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985). Additionally, a finding of bad faith or willful misconduct is required to support severe sanctions

6

such as an order striking pleadings or dismissing a case. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488-89 (5th Cir. 2012) (citing *Pressey*, 898 F.2d at 1021). Lesser sanctions do not require a finding of willfulness. *Id.* Instead of, or in addition to any sanction permitted by Rule 37(b), "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C).

In order to exercise its inherent authority, the court must find the accused party engaged in bad faith conduct that resulted in prejudice to the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). "The threshold for the use of the inherent power sanction is high." *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996). A court's inherent power to sanction "may be exercised only if essential to preserve the authority of the court," *id.*, and only when the court "finds that 'fraud has been practiced upon it, or that the very temple of justice has been defiled,'" *Boland Marine & Mfg. Co. v. Rihner*, 41 F.3d 997, 1005 (5th Cir. 1995) (quoting *Chambers*, 501 U.S. at 46). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44.

## Analysis

### I.

Judged against the relevant standards, the court concludes that Defendants have engaged in discovery misconduct that warrants the imposition of sanctions under Rule 37. In particular, the February 19, 2014 order required Defendants to produce development and financial documents related to the Recovery+ and DVTherapy machines and to log all documents

7

withheld from production, regardless of the basis on which they were withheld.  Order (Doc.

467) at 2-4.   At the November 3, 2014 hearing, defense counsel candidly admitted that

documents which should have been produced pursuant to the court's order were not produced.

*See, e.g.*, Hrg. Tr. (Doc. 522) at 53, 54, 55, 123; *see also* Def. Resp. (Doc. 504) at 25, n.39 &

Def. Resp. App. at DA2563-64, ¶ 9 (describing how Wilford conducted an additional search for

documents *after* ThermoTek filed the instant motion for sanctions).  Defendants characterize this

failure as an innocent "mistake" pursuant to which some documents just "fell through the

cracks" because Wilford was distracted by other obligations.  *See* Hrg. Tr. at 54, 56, 123.

According to counsel:

> Mr. Wilford has got a number of categories to gather.  He is
> pulling together things.  And what he did, he created a folder
> where he would pull things into.  He is pulling development
> documents, and that sort of thing. He starts filling it up. Okay?
> Trying to get documents out to the lawyers to produce, he puts
> those documents on a flash drive and sends them to Mr. DePreter
> and Ms. Lyons. That set of documents was produced that he
> pulled.
>
> But then he was also being tasked to go find sort of different
> categories; not just emails, but invoices or balance sheets or profit
> and loss.  And he goes and directs his attention to that.  What
> happens is he continued after those things gathering stuff in the
> electronic folder, emails, continuing to produce things, but he
> never provided it to counsel.  That was a mistake.
>
> So what happens is the lawyers think they have everything, Mr.
> Wilford didn't know -- had forgotten that he had not -- he stopped
> this process, filled it up, given it, then continued to fill it up at a
> later date, so it has been collecting.  He is producing other things,
> and he forgets about it.
>
> So when this happens, this motion is filed, oh, my goodness.  What
> happened?  Yep, we have them.  Let's get them.  Long story short,
> provided to counsel, and they are provided.   That is what
> happened. It was not an intent to hide anything. It was not an intent

8

> to bury anything. Mistakes happen, that is just the facts, and we
> are here to say so.

*Id.* at 53-54. This explanation does not excuse Defendants' failure to comply with this court's

discovery orders. Rather, it reveals that Wilford made only a haphazard effort at document

collection in response to the court's February 19, 2014 order and plainly failed to give his

discovery obligations the attention they required. He attempted to collect all the responsive

documents himself without assistance from his lawyers or any of his employees and failed to

utilize any system to keep track of what had been produced. He predictably lost track of whether

responsive documents were delivered to his lawyers or produced to ThermoTek. Nor is this the

first time that Wilford has failed to conduct a proper document collection. Earlier in this

litigation, Wilford tried to manage the task of responding to ThermoTek's discovery requests by

himself. He failed and was admonished for not conducting a thorough search for documents.

*See, e.g.,* Order (Doc. 227) at 1 (granting motion to compel after finding that Defendants had not

conducted a thorough search for documents and electronically stored information responsive to

ThermoTek's discovery requests). Given this previous warning, Wilford's latest failure to make

a proper document collection constitutes gross negligence, at least, and warrants the imposition

of sanctions. *Roy v. ADM Grow Mark*, 211 F.3d 593, 211 F.3d 593 (Table), 2000 WL 329273,

at \*4 (5th Cir. 2000) (affirming imposition of sanctions where evidence established that party's

failure to comply with the court's discovery order was due to negligence and gross indifference).

The court next considers whether Defendants engaged in more egregious misconduct

which further warrants the imposition of sanctions.3 For example, ThermoTek alleges that

---

3

ThermoTek asserts a litany of transgressions against Defendants. Some of its specific allegations are
buried in one of the more than 100 footnotes appearing in its briefs, and the evidence on which it relies comprises a
1,300-plus page appendix. ThermoTek also relies on the arguments made in its second motion to compel, which it

Defendants manufactured and/or tampered with evidence before it was produced. Mot. at 3-4. Specifically, ThermoTek contends that Defendants manufactured invoice transmittals for the sale or rental of its equipment, which the court required to be produced. *Id.* As part of its latest production, WMI produced approximately 25 email communications with attached invoices sent from Wilford's email account at mwilford@wabashmed.com to his account at mike.wilford@yahoo.com. *See* Mot. App. (Doc. 501) at 89-140. The emails, which are all dated February 20, 2014, are not addressed to any particular customer and state simply "[y]our invoice is attached. Please remit payment at your earliest convenience." *See, e.g., id.* at 89. However, the attached invoices are all dated 2012 and are stamped "PAID." *See id.* at 90-140. ThermoTek challenges the authenticity of the February 2014 emails and argues that Defendants manufactured the communications to conceal an illegitimate transfer of funds. Defendants deny that they "manufactured" evidence, but admit that the February 2014 emails were not the actual transmittal communications that accompanied the invoices. *See* Def. Resp. App. at DA02562-63.

In a declaration filed in response to the sanctions motion, Wilford attempts to explain how these invoice transmittal emails were generated:

> WMI sells wraps to a number of different customers who in turn provide those wraps to doctors, hospitals and patients for their consumption. WMI records and maintains information relating to such sales in a computer database utilizing QuickBooks software. Using that software, invoices can be generated and transmitted to customers either electronically or by mail. If an invoice is transmitted electronically to a customer, a transmittal to that customer is automatically generated. . . .
>
> Many of the WMI invoices that have been produced have "PAID"

---

attempts to incorporate by reference into its brief on the instant motion. *See* Mot. at 11. The court has done its best to address all of the allegations that could support the imposition of sanctions.

> stamped on them, indicating that the invoices were paid. The electronic stamp is automatically generated by the QuickBooks program whenever the payment of a particular invoice is inputted into QuickBooks. It was and is my understanding that QuickBooks is designed to ensure compliance with GAAP principles and, as a result, prohibits modifying posted and completed transactions. Once payment has been inputted and applied, the QuickBooks program prevents WMI from generating an "unpaid" version of that invoice. Thus, as WMI engages in its routine business, the QuickBooks software continually updates the QuickBooks database to provide the current state of the company and its accounting records. I was not and still am not aware of any way to generate invoices as they may have stood at some previous date, nor am I aware of any way to operate a business utilizing QuickBooks in a way that would prevent QuickBooks from continually updating its database.

> When I attempted to email invoices . . . to myself for production in February of 2014, a transmittal . . . was generated. . . . [W]hen I recognized that was happening, I stopped emailing the invoices to myself and had them gathered and provided to counsel with other invoices. When it came time to produce WMI invoices for 2014, some of the previously produced invoices were reproduced because the transmittals had a 2014 date on them. To ensure a complete production, I gathered invoices spanning into a time frame in which I had previously collected invoices. That way I was sure that there were no gaps between the collection periods.

Def. Resp. App. DA02562-63; *see also* Hrg. Tr. at 64-70 (characterizing the transmittal emails as an unintentional byproduct or "artifact" of Wilford's attempt to produce the WMI invoices from QuickBooks). Defendants do not explain why they failed to mention that the February 2014 emails were not the actual transmittal communications that accompanied the invoices until after ThermoTek filed its motion for sanctions.

This is not the first time Wilford has encountered problems producing financial records from QuickBooks. In its second motion for sanctions, ThermoTek argued that Defendants' production was deficient because it did not include many of the documents ThermoTek had obtained from third parties, including copies of a WMI invoice concerning wraps that Wilford

11

had sold to NuLife Medical, LLC ("NuLife"), Invoice No. 3695. *See* Mem. Op. (Doc. 451) at 27-32. Although Defendants argued that they had produced third-party invoices, the District Court identified discrepancies between the copies of Invoice No. 3695 included in Defendants' production and the invoice produced by NuLife and questioned whether Defendants had complied with their discovery obligations. *Id.* In a declaration dated January 30, 2014, Wilford explained that Invoice No. 3695 was the first invoice for wraps generated by WMI. *See* Mot. App. at 170-72, ¶¶ 3-6. The original invoice was printed on paper and mailed to NuLife; accordingly, WMI did not have a copy that could be produced in this litigation. *Id.* WMI subsequently produced copies of invoices printed from its QuickBooks program, but printed Invoice No. 3695 using the wrong QuickBooks template. *Id.* Wilford explained this "inadvertent" error, but not until after the District Court highlighted the problem as one that raised "colorable arguments" in support of ThermoTek's second request for sanctions. ThermoTek has not challenged Wilford's explanation and no longer seeks sanctions based on the discrepancies related to Invoice No. 3695. Notwithstanding ThermoTek's apparent acceptance of Wilford's explanation, Defendants' previous experience with confusion created by invoices printed from QuickBooks should have encouraged greater care in producing invoices through QuickBooks in February 2014.

On the record before it, the court finds that Defendants' explanation for the transmittal emails is reasonably plausible and that Defendants did not manufacture the February 2014 emails for an illegitimate purpose. Defendants' explanation does not excuse Wilford's repeated failure to conduct a proper document collection. It shows instead that Wilford once again attempted to collect responsive documents without assistance from his lawyers or his employees

12

and did so in a haphazard and unconventional manner. He was not forthcoming about the problems he encountered in collecting the invoices, and his silence rendered his production unnecessarily confusing. Wilford's cavalier attitude towards his discovery obligations and this court's orders combined with the Defendants' lack of candor regarding their production supports the imposition of sanctions.

Another example of alleged egregious discovery misconduct is Defendants' failure to disclose changes in their corporate structures and false statements regarding those structures and the corporate structures of related third-party entities. *See* Mot. at 6-8. More specifically, ThermoTek complains that Defendants only recently revealed the existence of three additional Wilford-related entities that have interests in and do business with Defendants:  Hoosier Medical, LLC, CMW Medical LLC, and Compression Therapy LLC. *See id.* According to ThermoTek, these entities were formed during the discovery period and should have been disclosed by Defendants in their Rule 26 disclosures, their supplemental responses to ThermoTek's discovery requests, and during Wilford's deposition in November 2012. *Id.* For their part, Defendants admit that the three entities were formed in August 2012 and that they were not disclosed to ThermoTek until 2014. *See* Def. Resp. at 16. They dispute, however, that Wilford made any false representations when he failed to specifically identify these entities during his 2012 deposition. Defendants contend that Wilford genuinely forgot about these entities and suggest that ThermoTek's counsel failed to ask appropriate follow up questions to demonstrate that he was lying or giving intentionally misleading testimony. The court did not have an opportunity to observe Wilford's demeanor, as neither party provided a copy of his video testimony and he did not take the stand at the November 3, 2014 hearing. Therefore, the court declines to make any credibility determinations on the basis of the record as it stands. But

13

even without a finding that Wilford's deposition testimony was false and misleading, the fact that Defendants failed to timely disclose the existence of Hoosier Medical, LLC, CMW Medical LLC, and Compression Therapy LLC is another example of Defendants' neglectful attitude toward their discovery obligations that warrants the imposition of sanctions.

ThermoTek further identifies at least three instances of allegedly false or misleading testimony by Wilford as examples of egregious discovery misconduct: (1) Wilford testified in July 2011 that Thermo Compression Systems, Inc. never conducted any business, but later produced documents that revealed that it owned an interest in a company that Wilford used to manufacture the Recovery+ machines; (2) Wilford testified in November 2012 that he was not aware of who had paid development costs incurred by Pulsar Scientific and had never received any accounting or financial documents for those expenses, but testified in 2014 that WMI paid some of those costs; and (3) Wilford testified in August 2014 that Cadence Advisory Partners ("Cadence") provided management consulting services but failed to disclose the full scope of the relationship and falsely stated that Cadence never generated any written documents or communications when in fact it had. Mot. at 9-10. Defendants dispute that any of Wilford's testimony was actually false. They contend that Wilford truthfully answered the questions posed to him and that ThermoTek's counsel failed to ask appropriate follow up questions to demonstrate that he was lying.

Wilford's 2014 deposition testimony that Cadence never generated any written documents was unequivocal:

> Q:   Who did outside consulting work for WMI in 2012?
>
> A:   I believe WMI used a company called Cadence Partners.
>
> Q:   What did Cadence Partners do?

14

A:     They provided, you know, ongoing support in regards to financial and other administrative consulting.

Q:     For WMI?

A:     For WMI, yes.

Q:     Did -- did you gather documents from Cadence Partners and produce them in connection with this lawsuit?

A:     The only thing we would have done is reviewed financial statements.

Q:     They would have reviewed WMI's financial statements?

A:     Or WMI and Integrated Orthopedics financial statements. So they would have been the same financial statements that we've provided on here.

Q:     But Cadence Partners conducted a review of the financial statements.

A:     Cadence Partners, we met and had discussions about financial statements, yes.

Q:     *Did they provide any emails or written feedback?*

A:     *No, it was done face to face, verbally.*

Q:     Was there a written agreement?

A:     There was not.

Q:     *Was there any emails between WMI and Cadence Partners?*

A:     *No, there is not.*

Mot. App. at 1303 (emphasis added).   Wilford's testimony was clearly false. After the deposition, Defendants produced more than 500 pages of documents generated by Cadence, including emails between Wilford and Cadence that evince a relationship that involved more than mere "consulting." *See id.* at 485-503.

15

By contrast, Wilford's July 2011 testimony was not clearly false:

> Q:   Now, Thermal Compression Systems, Inc., is that an entity
>      that you or any of your companies have any ownership
>      interest in?
>
> A:   It's a company that I had set up and is in my son's name,
>      but it's – that's it.
>
> Q:   But it's never done anything.
>
> A:   Correct.

Mot. App. at 1284. ThermoTek contends that this testimony was false or misleading because later-discovered evidence reveals Wilford was describing a similarly-named company -- Thermo Compression Systems Inc. -- that in fact owned an interest in Pulsar Scientific and later transferred that interest to CMW Partners, LLC. Defendants insist that Wilford's testimony was true based on his understanding that "transacting business" related to sales. *See* Def. Resp. at 16, n.30. In the absence of additional evidence, such as evidence of Wilford's demeanor, Defendants' explanation is reasonably plausible. Accordingly, the court finds that the record does not establish that Wilford provided false testimony regarding Thermo Compression Systems. The court similarly finds that the record is not sufficient to make any credibility determinations with respect to Wilford's November 2012 deposition testimony. Therefore, with the exception of his 2014 testimony regarding documents generated by Cadence, the court does not find that Wilford gave false or misleading deposition testimony and does not rely on any alleged false deposition testimony from 2011 or 2014 to support its award of sanctions.

ThermoTek further alleges that Defendants improperly withheld or destroyed responsive documents in their possession and instructed others to do the same. In support of this charge, ThermoTek specifically points to two emails it only recently obtained from a vendor for

16

Wojcik's former counsel. The first email is dated January 15, 2011 and is part of a longer

exchange regarding deposition scheduling, in which Wilford asks his attorney:

> Also I have held most of the discovery docs waiting on the
> outcome or motion to dismiss? Do we need to produce these now
> or can we hold additional discovery since it will be very
> confidential material?

Reply App. (Doc. 515) at 010; ThermoTek Hrg. Ex. 11. ThermoTek contends that this email is

proof that Wilford withheld documents and intentionally deprived it of evidence that would have

demonstrated interaction between Wilford and his companies in support of its tortious

interference claims. The second email was authored by Crane on April 11, 2011 and addresses

mobile phone security. ThermoTek Hrg. Ex. 11. The email reads, in its entirety:

> The need for the protection of privacy has never been greater.
> Mobile phone data is no exception. Being mindful and diligent
> dictate that your mobile phones have password protection in order
> to access them. In order to protect from theft or misplacement of
> the devices, please ensure your mobile phone has password
> protection established on it. *Also whenever possible fully delete
> any unneeded data or communications at regular intervals.* This
> will limit the amount of exposure if a breach occurs.

*Id.* (emphasis added). ThermoTek contends that the fact that this email, which alludes to

destroying data and communications, was never produced by Defendants, supports the inference

that Defendants actually destroyed responsive documents during the course of this litigation.

ThermoTek urges the court to view both of these emails in the context of other evidence

that has been previously identified in support of other sanctions motions and allegedly indicates

responsive documents were destroyed during the course of this litigation. This evidence

includes Wojcik's deposition testimony that Wilford sometimes instructed her to delete emails,

*see* ThermoTek Hrg. Ex. 15, and the January 30, 2011 email in which Wilford told Wojcik,

"Melissa just remember to delete messages ... lol[.]" *See* Mot. App. at 508-09. It includes a

17

declaration by Integrated Orthopedics' Regional Sales Manager Stephen Kilander describing Wojcik's September 2011 exit interview in which Kilander states that he asked Wojcik "to delete all electronic records relating to her work as a sales representative for Integrated Orthopedics, including physician call lists and target lists," and that she later informed him that she complied with his request. ThermoTek Hrg. Ex. 14. It also includes Crane's deposition testimony that when his hard drive suddenly failed in May 2012, he permitted a commercial vendor to simply dispose of it, without making any effort to safeguard or preserve the hard drive or any of the information on it. *See* ThermoTek Hrg. Ex. 12. ThermoTek additionally relies on testimony by Joy Long, an employee who worked for Defendants during the pendency of this lawsuit, that Wilford did not implement a document retention policy and never asked her to save documents. *See* ThermoTek App. at 1274.

Defendants deny any destruction of evidence and offer innocuous explanations for most of the statements identified by ThermoTek. Defendants point to other communications which provide clear instructions to preserve evidence. One of these communications is an email dated April 13, 2010 from Wilford to Rose, Crane, and other of Defendants' employees pertaining to "Recent Litigation," which states:

> I just needed to reiterate that we are in litigation with ThermoTek. Please do not destroy or dispose of any documents that refer to ThermoTek or any issues relating to their equipment, failures of equipment, ect. [sic].

Def. Hr. Ex. 5. Defendants point out that the entire exchange between Wilford and his counsel, of which the January 15, 2011 communication is a part, reflects that Wilford's counsel responded to his suggestion that he not produce documents by instructing him to deliver the documents to her:

18

> As to documents, can you download them on a flash drive and
> either drop it off or send it to us? We will need to review them
> before any depositions are taken.

Reply App. at 010. Wilford later replied that he would comply and "try to get them to
[counsel's] office by the end of the week." *Id.* at 009. Other communications in the email chain
indicate that, at the time the email was sent, the parties had not yet conducted a Rule 26(f)
conference. As such, Defendants may not have been under any obligation to immediately
produce "discovery docs." *See* FED. R. CIV. P. 26(d)(1) ("A party may not seek discovery from
any source before the parties have conferred as required by Rule 26(f)[.]"). Defendants deny
that the January 15, 2011 communication was improperly withheld and submitted evidence at
the November 3, 2014 hearing that they gave the email to their counsel and she listed it on a
privilege log that was produced to ThermoTek in May 2011. *See* Hrg. Tr. at 89; Def. Hrg. Ex. 2.
Regarding the January 30, 2011 communication to Wojcik to "delete messages ... lol,"
Defendants' similarly emphasize the fact that both Wojcik and Wilford produced copies of it
establishes that there had been no deletion or destruction of evidence. As to Crane's laptop,
Crane testified that he produced all the relevant documents from his computer before the hard
drive crashed. *See* Def. Hrg. Ex. 12. This evidence highlights that material fact issues exist as to
whether Defendants' improperly withheld or destroyed responsive documents in their
possession. Even if no documents were withheld or destroyed, the court is deeply troubled by
the cavalier attitude demonstrated by Wilford's suggestion, even in jest, to Wojcik to delete
messages and by Crane's careless disposal of his laptop. This evidence underscores a pattern of
neglect on Wilford's part with regard to his discovery obligations. Wilford's persistent
negligence supports the imposition of sanctions.

ThermoTek also alleges that Defendants made false representations to the court. By way

19

of example, ThermoTek points to statements regarding the public availability of the Recovery+ machines made by defense counsel in February 2012 and again in February 2014. *See* Mot. at 5-6. ThermoTek claims that defense counsel falsely represented the machines were not publicly available and improperly designated the machines as "Attorneys Eyes Only," in order to prevent ThermoTek's engineers from inspecting the machine. *Id.* According to ThermoTek, defense counsel's representations were false because it obtained a Recovery+ machine in the public domain in 2013 that was not subject to any confidentiality agreement. *Id.* Defendants dispute that ThermoTek obtained a Recovery+ machine in the public domain and assert that the machines are still subject to confidentiality agreements. Def. Resp. at 13-14. The only evidence before the court pertaining to the availability of the Recovery+ at any time is a receipt which shows that Compression Therapy Services sold one "PNEUM COMP DEVICE, HIGH PRESSURE RAPID INFLAT" to ThermoTek on July 15, 2013. Mot. App. at 1337. However, this evidence fails to establish that the unit ThermoTek purchased in 2013 was in fact a Recovery+ machine. Accordingly, the court does not find that defense counsel made knowingly false representations to the court regarding the public availability of the Recovery+ machines in 2012 or 2014 that warrant the imposition of sanctions.

II.

Having determined that an award of sanctions is appropriate, the court turns to the nature of the sanction to be imposed. ThermoTek contends that the combined effect of Defendants' violations is a "complete perversion" of the discovery process envisioned by the Federal Rules that warrants the harshest sanctions under the court's inherent powers. The court disagrees. Defendants' conduct does not rise to the level that warrants the invocation of the court's inherent powers because it may be effectively addressed by Rule 37. *Toon v. Wackenhut Corr. Corp.*,

20

250 F.3d 950, 952 (5th Cir. 2001) (it is appropriate for a district court to rely on its inherent power to impose sanctions when a party's conduct is not effectively sanctionable pursuant to an existing rule or statute); *see also Natural Gas Pipeline Co.*, 86 F.3d at 467 ("If there is a reasonable probability that a lesser sanction will have the desired effect, the court must try the less restrictive measure first.").

Under Rule 37, the court has a broad choice of remedies and penalties available to address Defendants' discovery misconduct. *Batson*, 765 F.2d at 514. The following non-exclusive factors inform the court's choice of sanction: (1) whether the failure to comply with the court's order results from willfulness or bad faith; (2) whether the other party's preparation for trial was substantially prejudiced; (3) whether the improper behavior is attributable to the attorney rather than the client; and (4) whether a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders. *Id.* As discussed herein, Defendants engaged in sanctionable discovery misconduct that constitutes at least gross negligence. This misconduct is directly attributable to the Defendants, not their attorneys, and does not arise out of confusion or sincere misunderstanding regarding the court's orders. ThermoTek's preparation for trial was prejudiced in the form of significant delay and substantial additional costs due to Defendants' delayed and confusing productions. This litigation has been pending for more than four years. ThermoTek needlessly incurred substantial fees bringing various motions to compel the production of documents that should have been produced under the Federal Rules. Additionally, at least some of ThermoTek's efforts could have been avoided if Defendants had taken due care with their document production and been forthcoming in their explanations about their production. The court does not find that ThermoTek has been denied of its opportunity to pursue a tortious interference claim. The record fails to establish that Wilford

21

withheld documents and intentionally deprived ThermoTek of evidence that would have demonstrated interaction between Wilford and his companies in support of its tortious interference claims.

Based on the relevant standards and all the facts and circumstances presented by the record, the court finds that an appropriate sanction is to award ThermoTek the reasonable expenses and attorneys' fees it incurred from February 19, 2014 through November 3, 2014 that are attributable to discovery misconduct by Defendants, including the fees incurred in bringing the instant motion for sanctions. ThermoTek has represented that these fees are substantial and may exceed $100,000. Such an award is appropriate given Defendants' pattern of neglect and nonchalance with respect to important discovery issues and the prejudice ThermoTek has suffered in the form of delay and attorneys' fees. More severe sanctions are not appropriate under the circumstances because an award of fees will substantially address the prejudice suffered by ThermoTek and achieve the desired deterrent effect of Rule 37.

ThermoTek renews its request for a spoliation instruction. Mot. at 11 (incorporating arguments set forth in its second motion to compel). Spoliation is the "destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *See, e.g., Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 800 (N.D. Tex. 2011). As a sanction for spoliation, the court may instruct the jury to draw the adverse inference "'that a party who intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party.'" *Whitt v. Stephens Cnty.*, 529 F.3d 278, 284 (5th Cir. 2008) (quoting *Russell v. Univ. of Tex.*, 234 F. App'x 195, 207 (5th Cir. 2007)). To obtain an such an instruction, the party seeking the sanction must establish "(1) the party with control over the evidence had an obligation to preserve it at the time

22

it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F.Supp.2d 598, 615-16 (S.D. Tex. 2010). In the Fifth Circuit, "mere negligence is not enough" to warrant an instruction on spoliation. *Vick v. Tex. Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975).

Here, disputed fact issues exist with respect to whether any relevant evidence was actually destroyed or not preserved and, if it was, whether the individuals charged with its destruction acted in bad faith. On the record before it, which notably lacks any opportunity to observe the accused parties' demeanor, the court does not find that Defendants failed in bad faith to institute a litigation hold on deletion of electronically-stored information, that Wojcik in bad faith deleted any relevant communications, or that Crane acted in bad faith in disposing of his hard drive after it crashed. The question of intent ultimately turns on factual matters which are best decided by the District Court in the context of the trial itself where the court can consider the precise nature of the proof offered and the credibility of various witnesses. The court therefore denies without prejudice ThermoTek's request for a spoliation instruction.

ThermoTek asks the court to sanction Defendants for withholding information about the corporate structures of the defendant entities and related non-party entities by vacating the prior order dismissing WMI for lack of personal jurisdiction and adding Hoosier Medical LLC, CMW Partners, LLC, CMW Medical LLC, and Compression Therapy LLC as Defendants on its fraud and unfair competition claims. Mot. at 23. ThermoTek requests that the court make a conclusive finding, pursuant to Rule 37(b)(2)(A)(i)-(ii), that Wilford and his entities are alter egos and prohibit Defendants from arguing to the contrary. *Id.* Whether Wilford used WMI and

23

other corporate entities as alter egos is a key contested issue in this case. Although Defendants argue that the live complaint does not contain specific alter ego allegations, the District Court has accepted ThermoTek's assertion that it pled such a theory in support of its fraud allegations. *See, e.g.,* Mem. Op. (Doc. 451) at 31. The relationship between Wilford and the Defendant entities and related non-party entities is also an issue on which ThermoTek has been able to develop evidence, including alleged admissions from Wilford himself that "all of his entities are really one and the same."4 *See* Mot. at 8, 23; *see also* ThermoTek Hrg. Ex. 7. To the extent ThermoTek suffered prejudice from Defendants' failure to promptly disclose changes in their corporate structures, that prejudice takes the form of delay and additional costs due to the burden of conducting discovery outside the discovery period and late in the course of this litigation. Finally, a default judgment or an order striking pleadings or making conclusive factual findings is not appropriate because the failures of which ThermoTek complains are not entirely attributable to Defendants themselves. Defense counsel admitted that Hoosier Medical LLC, CMW Partners, LLC, CMW Medical LLC, and Compression Therapy LLC were intentionally not disclosed because she considered them to be part of WMI. *See* Def. App. at 20, 23-25. Under these circumstances, the appropriate sanction to address the prejudice suffered by ThermoTek and to achieve the deterrent value of Rule 37 is an award of fees, as previously discussed herein.

---

4

In its motion, ThermoTek generally asserts that the documents and testimony it elicited from Defendants after 2014 enabled it to obtain additional evidence, in the form of an admission from Wilford, that he "treats all of his entities as one," and that "[h]ad ThermoTek learned of this during the discovery period, it could have . . . sought to add them as defendants and reassert its claims against WMI under alter ego jurisdictional grounds." Mot. at 8. However, the deposition testimony on which ThermoTek relies is not that broad. *See id.* & Mot. App. at 1302. Wilford does not state that he "treats all of his entities as one." He only agreed that the reason he can't produce separate financial statements for WMI and Hoosier Medical is because "[i]t is like it is one big company." Mot. App. at 1302.

24

## CONCLUSION

For the reasons stated, ThermoTek's third motion for sanctions (Doc. 500) is GRANTED, in part.  Defendants Mike Wilford, Orthoflex, Inc., d/b/a Integrated Orthopedics, Motion Medical Technologies, LLC, Wabash Medical, LLC, Thermo Compression Solutions, LLC, and Tri-3 Enterprises, LLC are hereby ORDERED to pay to ThermoTek the reasonable expenses and attorneys' fees ThermoTek incurred from February 19, 2014 through November 3, 2014, including the fees incurred in bringing the instant motion for sanctions.

ThermoTek shall submit to Defendants on or before **April 1, 2015** an affidavit from its counsel supporting the amount of fees to be paid.  Defendants, who are jointly and severably liable for this monetary sanction, shall tender payment to ThermoTek by **May 1, 2015** or the date this case is called to trial, whichever is earlier.

All other relief not expressly granted herein, including ThermoTek's request for a spoliation instruction to the jury, is DENIED without prejudice.

SO ORDERED, March 17, 2015.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

25