IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THERMOTEK, INC., | § | |
| | § | |
| Plaintiff-counterdefendant, | § | Civil Action 3:11-CV-0870-D |
| | § | (consolidated with |
| | § | Civil Action No. 3:10-CV-2618-D) |
| VS. | § | |
| | § | |
| ORTHOFLEX, INC. d/b/a | § | |
| INTEGRATED ORTHOPEDICS, | § | |
| MOTION MEDICAL TECHNOLOGIES, | § | *This memorandum opinion and order was originally filed |
| LLC, and | § | under seal on August 15, 2016.  It was filed |
| WABASH MEDICAL COMPANY, LLC, | § | unsealed on September 7, 2016, after the parties agreed |
| | § | that no part needed to remain under seal. |
| Defendants-counterplaintiffs, | § | |
| | § | |
| and | § | |
| | § | |
| MIKE WILFORD, | § | |
| THERMO COMPRESSION | § | |
| SOLUTIONS, LLC, and | § | |
| TRI 3 ENTERPRISES, LLC, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

After extensive pretrial proceedings, plaintiff-counterdefendant ThermoTek, Inc.

("ThermoTek"), defendants-counterplaintiffs Orthoflex, Inc. d/b/a Integrated Orthopedics

("Orthoflex"),[1] Motion Medical Technologies, LLC ("Motion Medical"), Wabash Medical

Company, LLC ("Wabash Medical"), and defendants Mike Wilford ("Wilford"), Thermo

---

[1]Orthoflex is only a counterplaintiff.  For ease of reference, the court refers to
Orthoflex as a defendant-counterplaintiff.

Compression Solutions, LLC ("Thermo"), and Tri 3 Enterprises, LLC ("Tri 3") tried to a jury ThermoTek's remaining claims for fraud, unfair competition, and breach of contract, and Orthoflex, Motion Medical, and Wabash Medical's counterclaim for breach of express warranty.[2] The jury returned a verdict in favor of ThermoTek, finding, in pertinent part, that Wilford committed fraud against ThermoTek, and that Wilford and Thermo unfairly competed with ThermoTek through common law misappropriation, and it awarded compensatory damages on both claims. The court entered judgment for ThermoTek in accordance with the jury verdict.

Defendants now move under Fed. R. Civ. P. 50(b) for judgment as a matter of law on ThermoTek's fraud and unfair competition claims, and, in the alternative, for a new trial under Rule 59. ThermoTek moves under Rule 25 to substitute CMW Partners, LLC ("CMW") and WMI Enterprises, LLC ("WMI") for Thermo, or to join CMW and WMI as defendants for purposes of enforcing the judgment. For the reasons that follow, the court grants defendants' motion for judgment as a matter of law, conditionally denies their motion for a new trial, and denies as moot ThermoTek's Rule 25 motion to substitute or join CMW and WMI. The court is entering today an amended judgment dismissing the claims and counterclaims of all parties with prejudice.[3]

_____

[2]Unless otherwise specified, the court will refer to Orthoflex, Motion Medical, and WMI collectively as the "Orthoflex companies." Depending on the context, the court sometimes refers to Wilford and Thermo collectively as "defendants."

[3]ThermoTek has pending a motion to determine the amount of attorney's fees and expenses owed to ThermoTek as discovery sanctions. The granting of the motion for

I

Because this case is the subject of multiple prior opinions,[4] the court will recount only the background facts and procedural history necessary to understand the present decision. ThermoTek designed and developed the VascuTherm System, which is a medical device intended to be used in conjunction with specially-designed wraps. Together, the VascuTherm System and wraps transfer pressure, heat, and cold to various body parts during medical therapy. ThermoTek sells its products to a network of distributors and nondistributors who then sell or lease the equipment to hospitals and clinics. They in turn provide the products to patients—the end-users.

Wilford is an executive of several medical supply companies, including Orthoflex, Motion Medical, and Wabash Medical, which are durable medical equipment providers that invest in and lease capital medical equipment. Tri 3 is a limited liability holding company for Motion Medical and Wabash Medical. Wilford is, in effect, the Chief Operating Officer of Wabash Medical and Motion Medical. Thermo is a medical sales company that Wilford also controls.

---

judgment as a matter of law does not adversely affect ThermoTek's recovery of such sanctions.

[4]*See, e.g.,Orthoflex, Inc. v. ThermoTek, Inc.,* 2013 WL 4045206, at *1 (N.D. Tex. Aug. 9, 2013) (Fitzwater, C.J.) (granting in part and denying in part ThermoTek's motion for summary judgment); *Orthoflex, Inc. v. ThermoTek, Inc.,* 983 F.Supp.2d 866, 869 (N.D. Tex. 2013) (Fitzwater, C.J.) (granting in part and denying in part the motions for summary judgment of Motion Medical, Wabash Medical, Wilford, Thermo, and Tri 3); *Orthoflex, Inc. v. ThermoTek, Inc.,* 2014 WL 320155, at *2 (N.D. Tex. Jan. 29, 2014) (Fitzwater, J.) (granting motion to realign the parties).

Beginning in 2008, Wilford purchased large quantities of VascuTherm System units and wraps on behalf of his companies, including Motion Medical, Wabash Medical, and, eventually, Orthoflex.   In his role as a distributor for ThermoTek, Wilford received from ThermoTek various types of information belonging to ThermoTek, such as billing codes and product manuals, and he visited the ThermoTek facilities at least twice.   Wilford also reported various problems with the VascuTherm units and wraps and requested information about product design, manufacturing processes, and repairs.   ThermoTek terminated its agreement with Wilford in August 2010.   Wilford later developed and sold his own system (Recovery+) and wraps.

In March 2010 Orthoflex, Motion Medical, and Wabash Medical sued ThermoTek in the Northern District of Illinois.   In November 2010 ThermoTek sued Wilford and WMI in Texas state court.   ThermoTek's case was removed to this court and was consolidated with the Orthoflex case.   The parties all moved for summary judgment or partial summary judgment, and the court granted in part and denied in part those motions.   Before trial, the court realigned the parties.

Based on rulings of the court and refined pleadings, the parties tried the following claims and counterclaims to a jury: (1) Orthoflex, Motion Medical, and Wabash Medical's counterclaim against ThermoTek for breach of express warranty; (2) ThermoTek's claim against Wilford for fraud; (3) ThermoTek's claim against Motion Medical, Wabash Medical, and Tri 3 for breach of contract; and (4) ThermoTek's claim against Wilford and Thermo for unfair competition.   The jury returned a verdict in favor of ThermoTek on its claim against

Wilford for fraud and its claim against Wilford and Thermo for unfair competition. The jury found that Motion Medical, Wabash Medical, and Tri 3 had breached the Distributor Agreement with ThermoTek, but it found no damages. And the jury found against Orthoflex, Motion Medical, and Wabash Medical on their counterclaim for breach of express warranty.

On ThermoTek's fraud claim against Wilford, the jury awarded lost profits damages in five subcategories: $770,000 for lost profits from VascuTherm wrap sales, $500,000 for lost profits from VascuTherm unit sales, $193,000 for lost profits from additional expenses for VascuTherm unit repairs, $90,000 for lost profits from additional engineering costs, and $13,000 for lost profits for additional evaluation and tooling costs. On ThermoTek's unfair competition claim against Wilford and Thermo, the jury awarded $4 million in lost profits as measured by infringing VascuTherm unit sales and $2 million in lost profits as measured by infringing wrap sales.

Defendants now move for judgment as a matter of law under Rule 50, and, alternatively, for a new trial under Rule 59. ThermoTek moves under Rule 25 to substitute or join parties. The court has heard oral argument on both motions.

## II

The court first addresses defendants' Rule 50(b) motion for judgment as a matter of law on ThermoTek's unfair competition and fraud claims. Defendants contend that ThermoTek's unfair competition claim is preempted by federal copyright and patent law, and that the evidence is legally insufficient to support the jury's award of damages on either claim.

"A motion for judgment as a matter of law 'challenges the legal sufficiency of the evidence to support the verdict.'" *Jacobs v. Tapscott*, 516 F.Supp.2d 639, 643 (N.D. Tex. 2007) (Fitzwater, J.) (quoting *Hodges v. Mack Trucks, Inc*., 474 F.3d 188, 195 (5th Cir. 2006)), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

> Judgment as a matter of law is appropriate with respect to an issue if there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on that issue. This occurs when the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary verdict. In considering a Rule 50 motion, the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party; the court may not make credibility determinations or weigh the evidence, because these are jury functions. In reviewing the record as a whole, the court must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that this evidence comes from disinterested witnesses.

*Id*. (quoting *Brennan's Inc. v. Dickie Brennan & Co*., 376 F.3d 356, 362 (5th Cir. 2004)). The court will "'uphold a jury verdict unless the facts and inferences point so strongly and so overwhelmingly in favor of one party that reasonable [jurors] could not arrive at any verdict to the contrary.'" *Goodner v. Hyundai Motor Co*., 650 F.3d 1034, 1039 (5th Cir. 2011) (quoting *Cousin v. Trans Union Corp*., 246 F.3d 359, 366 (5th Cir. 2001)). "In other words, the 'jury verdict must be upheld unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did.'" *Id.* at 1039-40 (quoting *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008)).

- 6 -

III

Defendants maintain that ThermoTek's unfair competition claim is entirely preempted by federal copyright and patent law.  They contend that, at trial, ThermoTek adduced evidence and argued that Wilford and Thermo misappropriated information that is within the scope of copyright protection—such as emails, website information, product codes, drawings, FDA filings, and reports—and functional aspects of articles of manufacture that are within the scope of patent protection—the VascuTerm machine and wraps.

A

The court must first decide whether Wilford and Thermo have waived their preemption defense by not pleading preemption as an affirmative defense.

Defendants contend that the preemption defense is timely because Wilford and Thermo expressly raised it before and during trial: in summary judgment briefing, in the Pretrial Order, and in arguing the jury charge.  ThermoTek responds that Wilford and Thermo waived their preemption defense because they did not plead preemption as an affirmative defense.  ThermoTek acknowledges that defendants argued preemption in a footnote in their summary judgment briefing and in a motion for reconsideration of the court's summary judgment ruling, but it argues that Wilford and Thermo did not reassert preemption until after ThermoTek presented its case at trial.

Defendants reply that the failure to plead preemption in a responsive pleading is not fatal because Wilford and Thermo raised preemption at a pragmatically sufficient time and in a manner that does not result in unfair surprise.

B

Under Rule 8(c), preemption is an affirmative defense that must be pleaded.  But an affirmative defense not asserted in responsive pleadings is not waived if it is asserted at a pragmatically sufficient time and the nonmovant is not prejudiced in its ability to respond. *Lee v. Tyco Elecs. Power Sys., Inc.*, 2006 WL 1722569, at *2-3 (N.D. Tex. June 20, 2006) (Fitzwater, J.) (citing *Lafreniere Park Found. v. Broussard*, 221 F.3d 804, 808 (5th Cir. 2000)).  In *Lee* this court held that the affirmative defense of conflict preemption under ERISA was not waived where the defendant raised the defense for the first time in summary judgment briefing. *Id.* Likewise, in *United States v. Shanbaum*, 10 F.3d 305, 312 (5th Cir. 1994), the Fifth Circuit held that the government did not waive the affirmative defense of res judicata when it raised the defense for the first time on the day the pretrial order was filed. The panel explained that the parties had adequate time to address the applicability of res judicata in their post-trial briefs.  *Id.*

In this case, defendants raised their preemption defense at a pragmatically sufficient time.  Although they did not plead preemption as an affirmative defense, they raised it before trial in their reply brief in support of the motion for summary judgment of Motion Medical, Wabash Medical, Wilford, Thermo, and Tri 3, Ds. 8/28/13 Mot. Summ. J. Reply Br. at 5 n.7 & 15 n.26; in their motion for reconsideration of the court's ruling on that summary judgment motion, Ds. 11/14/13 Mot. for Recons. at 3-6; in the Pretrial Order, Pretrial Order at 14-15; at trial in their motion for judgment as a matter of law, Trial Tr. 8:271-274; and during the charge conference, *id.* at 10:243.  At the charge conference, defendants argued that the jury

should be asked whether Wilford and Thermo had misappropriated each product or type of information at issue so that the court could later determine whether each misappropriated product or type of information fell within the scope of copyright or patent protection. ThermoTek did not agree to list individually in the jury charge the products and types of information that were allegedly misappropriated.

Moreover, ThermoTek has not demonstrated prejudice resulting from defendants' failure to plead preemption as an affirmative defense.  In response to defendants' motion for judgment as a matter of law, ThermoTek suggests that it would have altered its trial strategy to avoid preemption of its unfair competition claim, but it does not specify what steps it would have taken to avoid preemption, including what evidence it would have developed or introduced, or argument it would have made, to avoid the preemptive effect of federal copyright or patent law.  And when asked during the oral argument of the parties' post-judgment motions to identify specific prejudice, ThermoTek could not identify anything that it would have done differently had preemption been properly pleaded.

Additionally, ThermoTek should have been aware before trial that defendants intended to rely upon preemption.  More than two years before trial, the court decided defendants' motion for summary judgment.  Defendants filed a motion for reconsideration based on three grounds, one of which was that ThermoTek's unfair competition claim was preempted.  In denying the motion, the court explained that this defense could be decided post-judgment.  *See* 11/15/13 Order at 2.  Defendants raised the preemption defense again several times, both before and during trial.  Because ThermoTek has not identified anything

that it would have done differently had defendants pleaded the affirmative defense of preemption, ThermoTek has failed to establish prejudice. The court holds that defendants did not waive their preemption defense.

IV

The court next decides whether ThermoTek's unfair competition claim is preempted by federal copyright law.

A

Defendants maintain that ThermoTek's unfair competition claim is preempted by federal copyright law, 17 U.S.C. § 101, *et seq.*, because the products that ThermoTek claims were misappropriated were reduced to a tangible medium, and the alleged misappropriation would violate both unfair competition law and federal copyright law. According to defendants, in addition to the physical VascuTherm units and wraps, ThermoTek pointed to the following as its misappropriated products: drawings, user manual, wrap insert, safety reports, billing info and codes, Material Safety Data Sheet, FDA 510k documents, and pricing information. Because these products were reduced to writing or embodied in such writings, defendants argue that they are within the scope of federal copyright law.

ThermoTek responds that defendants have not demonstrated that the misappropriated information and products constitute original works of authorship, which is necessary to bring them within the scope of federal copyright law. ThermoTek maintains that, because defendants did not raise preemption before trial, the jury did not decide whether ThermoTek's products fall within the subject matter of copyright. ThermoTek also argues

that its unfair competition claim is not preempted because it contains an "extra element" not required for a claim of copyright infringement: an unfair competition claim requires that the misappropriated information be wrongfully obtained.

Defendants reply that (1) the only question is whether ThermoTek's products were reduced to writing; (2) ThermoTek's products must be original works of authorship because ThermoTek alleges that defendants misappropriated them from ThermoTek; and (3) it is irrelevant that ThermoTek's products are not actually protected by copyright law.

B

The Copyright Act provides that

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title.

17 U.S.C. § 301(a). A right granted by state law is preempted by federal copyright law where two conditions are satisfied: (1) "the work in which the right is asserted must come within the subject matter of copyright as defined in sections 102 and 103," and (2) "the right that the author seeks to protect must be equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 786-86 (5th Cir. 1999).

- 11 -

C

The first prong of the copyright preemption analysis requires the court to determine whether the works at issue fall within the subject matter of copyright, as defined by 17 U.S.C. §102, which covers "original works of authorship fixed in any tangible medium of expression." The "subject matter of copyright" includes all works of a type covered by sections 102 and 103, "'even if federal law does not afford protection to them.'" *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 596-97 (5th Cir. 2015) (quoting *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 455 (6th Cir. 2001)). In other words, even if works are not actually protected by copyright, if they are the types of works contemplated by copyright, state law cannot extend those works additional protection.

*Alcatel* is instructive. In *Alcatel* the Fifth Circuit held that written manuals were within the subject matter of copyright for purposes of the preemption analysis. *Alcatel*, 166 F.3d at 786; *see also M-I LLC v. Stelly*, 733 F.Supp.2d 759, 781 (S.D. Tex. 2010) (holding that plaintiff's drawings, designs, technical manuals, specifications, and plans fell within the subject matter of copyright). Similarly, ThermoTek's allegedly misappropriated information—including manuals, reports, billing information, and other written documents—is within the subject matter of copyright because it includes original works of authorship fixed in a tangible medium of expression.

ThermoTek does not argue that any of its misappropriated information falls outside the scope of copyright. Instead, ThermoTek maintains that defendants have not proved that ThermoTek's products are original works. This argument fails for at least two reasons. First,

- 12 -

ThermoTek's unfair competition claim is based on the time, skill, labor, and money that it invested in developing its products; in other words, in attempting to prove its unfair competition claim, ThermoTek necessarily proved that it created its products.  Second, ThermoTek has neither provided any evidence nor has it argued that any of this information is outside the scope of copyright protection for any reason.

## D

The second prong of the copyright preemption analysis requires "a comparison of the nature of the rights protected under federal copyright law with the nature of state rights for which [the plaintiff] seeks protection." *Alcatel*, 166 F.3d at 787.  If the state law rights are equivalent to federal copyright, the state law cause of action is preempted. *Id.*  Equivalency is evaluated under the "'extra element'" test: "if the act or acts of [the defendant] about which [the plaintiff] complains would violate both misappropriation law and copyright law, then the state right is deemed 'equivalent to copyright.'" *Id.*  On the other hand, if "one or more qualitatively different elements are required to constitute the state-created cause of action being asserted, then the right granted under state law does not lie 'within the general scope of copyright,' and preemption does not occur." *Id.*

Under Texas law, a cause of action for unfair competition based on misappropriation "is specifically designed to protect the labor—the so-called 'sweat equity'—that goes into creating a work." *Id.* at 788.  To prove this common law unfair competition claim, a plaintiff must establish that: (1) it created a product through extensive time, labor, skill and money; (2) the defendant used that product in competition with the plaintiff, thereby giving the

defendant a special competitive advantage because it was not burdened with the expense incurred by the plaintiff in the creation of the product; and (3) the plaintiff suffered commercial damage. *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App. 1993, writ denied). Similarly, the Copyright Act protects against the reproduction, use, and distribution of certain works. *Alcatel*, 166 F.3d at 789.

In *Alcatel* the defendant argued that the plaintiff's unfair competition claim based on misappropriation of sweat equity was preempted by the Copyright Act. The Fifth Circuit explained that the acts that formed the basis for the plaintiff's misappropriation claim—reproduction, use, and distribution of the plaintiff's firmware, software, and manuals—touched on interests clearly protected by the Copyright Act. *Id.* at 789. The plaintiff argued that its misappropriation claim was not preempted because the claim required proof of extra elements: (1) the misappropriated product was created through extensive time, labor, skill and money; and (2) the defendant used the misappropriated product "in competition with" the plaintiff. *Id.*

The Fifth Circuit rejected these arguments. First, the court reasoned that where a work has been granted copyright protection, "the time, labor, skill, and money expended by the author in creating the work are necessarily contemplated in that copyright." *Id.* In other words, these "sweat equity" elements of misappropriation are subsumed within a claim for copyright infringement. *Id.* Second, where a copyrighted work is used in competition with the author, this use would violate both the Copyright Act and state misappropriation law. *Id.* The *Alcatel* panel concluded that the plaintiff had failed to identify any element that rendered

- 14 -

its rights under state misappropriation law different from its rights under federal copyright law; therefore, the state misappropriation claim was preempted by federal copyright law. *Id.; see also Spear Mktg.*, 791 F.3d at 598 (holding that claim brought under Texas Theft Liability Act ("TTLA") was preempted by the Copyright Act because the alleged copying, communicating, and transmitting of confidential information contemplated by the TTLA was equivalent to reproducing and distributing that information, contemplated by the Copyright Act); *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 823 F.Supp.2d 578, 586-87 (S.D. Tex. 2011) (holding that, under *Alcatel*, the plaintiff's common law misappropriation claim was preempted where the plaintiff failed to show any difference between the two claims); *M-I LLC*, 733 F.Supp.2d at 791-92 (same).

ThermoTek has similarly failed to identify any extra element that distinguishes its claim for unfair competition based on misappropriation from a claim for copyright infringement.  ThermoTek argues that it was required to prove that defendants improperly obtained ThermoTek's products, pointing to this instruction in the court's charge:

> [a] person does not improperly use a product or improperly gain a special advantage in competition if he develops a competing product through inspection, analysis, or reverse engineering applied to publicly available information or to another's finished product, or through independent research, skill and know-how.

Court's Charge at 14.  But ThermoTek overlooks the fact that, to find that defendants unfairly competed with ThermoTek, the jury was only required to find three elements, enumerated in the charge: (1) ThermoTek created a product through extensive time, labor, skill, and money; (2) Wilford and Thermo used the product in competition with ThermoTek;

- 15 -

and (3) ThermoTek was injured as a result.  The jury was not required to find that Wilford and Thermo wrongfully obtained ThermoTek's information; put differently, the jury was not required to decide any "extra element" above and beyond the reproduction, use, or distribution of ThermoTek's products and information.

ThermoTek appears to confuse its claim for unfair competition through common law misappropriation with a different claim: unfair competition through trade secret misappropriation.[5]  Trade secret misappropriation is not necessarily preempted by federal copyright law because it "requires either a breach of confidential relationship or discovery by improper means."  *M-I LLC*, 733 F.Supp.2d at 785.  This extra element, which is not required for a misappropriation claim, renders a trade secret claim "qualitatively different than the conduct regulated by copyright law."  *Id.*  Although ThermoTek cites a number of cases analyzing claims for trade secret misappropriation, ThermoTek's claim is for common law misappropriation, which is not qualitatively different from copyright infringement.

Accordingly, the court holds that, to the extent ThermoTek's claim is based on manuals, reports, billing information, and other forms of authorship fixed in a tangible medium of expression, the claim is preempted.

---

[5]ThermoTek originally asserted a trade secret misappropriation claim, but at an early stage of the litigation it moved to voluntarily dismiss that claim, or, alternatively, for leave to file an amended complaint that omitted the claim.  *See Orthoflex, Inc. v. ThermoTek, Inc.*, 2011 WL 4398279, at *2 (N.D. Tex. Sept. 21, 2011) (Fitzwater, C.J.) (granting ThermoTek's alternative motion for leave to amend for purposes of omitting claim for misappropriation of trade secrets).

V

The court next decides whether ThermoTek's claim for unfair competition through common law misappropriation is preempted by federal patent law.

A

Defendants maintain that the allegedly misappropriated ThermoTek products—the VascuTherm machine and wraps—are within the subject matter governed by federal patent law. According to defendants, ThermoTek has sought patent protection for its VascuTherm units and wraps. Defendants posit that federal patent law preempts state law to the extent state law is used to protect functional aspects of any product, including patented products, unpatented products, and unpatentable products.

ThermoTek appears to concede that the VascuTherm units and wraps are within the scope of federal patent law, *see* P. 1/15/16 Mot. J. Matter of Law Resp. Br. at 15-16, but it argues that patent law does not preempt its claim for unfair competition through common law misappropriation because the claim serves a different purpose from a patent infringement claim. According to ThermoTek, its unfair competition claim does not impede the public use of an otherwise unprotected design; therefore, the claim is not preempted by patent law.

B

"[W]hen an article is unprotected by a patent or a copyright, state law may not forbid others to copy that article." *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 237 (1964) (citing *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964)). In other words, a state-law claim that forbids copying an article that is within the scope of patent law

- 17 -

impermissibly interferes with federal policy of "allowing free access to copy whatever the federal patent and copyright laws leave in the public domain." *Id.*

Federal patent law preempts state law to the extent state law is used to protect functional aspects of a product; state misappropriation claims can only go as far as to protect nonfunctional aspects of a product. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 151-52 (1989) (explaining that federal patent laws must determine not only what is protected, but what is free for all to use, and reconfirming decisions making clear that state regulation of intellectual property must yield where it clashes with the balance struck by Congress via the patent system); *Astoria Indus. of Iowa v. Brand FX Body Co.*, 2010 WL 1433404, at *8 (Tex. App. 2010, pet. denied) (mem. op.) (noting that state unfair competition laws are not preempted unless they conflict with federal patent law by protecting "functional aspects" of a product).

ThermoTek's claim for unfair competition through common law misappropriation is based in part on Wilford and Thermo's misappropriation of the VascuTherm units and wraps. ThermoTek does not argue that any part of the VascuTherm units and wraps is non-functional; in fact, it appears to concede that its products are functional and within the scope of patent law. Because ThermoTek seeks to protect functional aspects of its VascuTherm units and wraps by asserting an unfair competition claim, the claim is preempted by patent law.

VI

Having held that ThermoTek's unfair competition claim is entirely preempted by federal copyright and patent law, the court next decides the appropriate relief.

ThermoTek contends that, if its unfair competition claim is preempted, the court should convert the claim into one for copyright infringement and adjudicate that claim on the merits. ThermoTek cites *Spear Marketing*, 791 F.3d at 598 n.62, in which the Fifth Circuit noted that it was undecided whether a preempted claim should be dismissed or converted into the corresponding federal claim. ThermoTek also maintains that, because defendants did not plead preemption as an affirmative defense, ThermoTek has been effectively precluded from amending its complaint to assert a claim for copyright infringement.

Defendants—also relying on *Spear Marketing*—respond that if ThermoTek's unfair competition claim is preempted, the court should dismiss it. They maintain that ThermoTek had notice more than two years before trial that defendants were asserting a preemption defense, yet did not seek leave to allege a claim for copyright or patent infringement.

In *Spear Marketing* the Fifth Circuit recognized that, while most district courts hold that complete preemption results in dismissal of the state-law claim, they typically allow parties to replead and assert the federal-law claims. *Id*. at 598 n.62. The panel also noted that, in that case, the plaintiff could not assert a plausible claim for copyright infringement. The court holds in this case that, once ThermoTek became aware that defendants were relying on preemption, it had ample opportunity (two years) to seek leave to plead claims for copyright and/or patent infringement, and it had ample opportunity at trial to request that the

- 19 -

court submit these claims to the jury as alternative claims. Accordingly, the court dismisses ThermoTek's claim for unfair competition through common law misappropriation without permitting ThermoTek to replead, or converting the corresponding state-law claim into federal-law claims for copyright and/or patent infringement.

VII

Even if ThermoTek's unfair competition claim were not preempted by federal law, the jury's award of damages for this claim is not supported by legally sufficient evidence.

A

The jury found that Wilford and Thermo unfairly competed with ThermoTek, and it awarded damages in the sum of $4 million for lost profits as measured by infringing unit sales and $2 million for lost profits as measured by infringing wrap sales. The jury did not award damages for lost profits from wrap sales, from unit sales, from additional expenses from unit repairs, from additional engineering costs, or from additional evaluation and tooling costs.

ThermoTek offered the expert testimony of Karl Weisheit ("Weisheit") in support of its damages claims. Weisheit testified that ThermoTek suffered lost profits in the amount of $36,534,525.00 due to "infringing unit sales" and $3,990,999.00 due to "infringing wrap sales." Trial Tr. 8:95-96; Ds. 12/18/15 Mot. J. Matter of Law App. 1270. Weisheit used the description "infringing" to refer to the Orthoflex companies' sales of VascuTherm and Recovery+ units and wraps to third parties that resulted from the wrongful use of ThermoTek's information.

- 20 -

Weisheit calculated the lost profits due to lost unit sales by first combining the unit sales[6] made by Wabash Medical, WMI, and Integrated Orthopedics (i.e., Orthoflex) from 2011 through 2015, for a total of $85,241,543.00 in unit sales. Trial Tr. 8:102-108; Ds. 12/18/15 Mot. J. Matter of Law App. 1262.  Weisheit then multiplied the total sales by 42.86%—ThermoTek's gross profit margin for VascuTherm units—for a gross profit of $36,534,525.00.  Trial Tr. 8:103-104; Ds. 12/18/15 Mot. J. Matter of Law App. App. 1268. Weisheit applied ThermoTek's gross profit margin, instead of the profit margins of Wabash Medical, WMI, and Integrated Orthopedics, to derive the value of ThermoTek's proprietary information to ThermoTek.  According to Weisheit, these "lost profit" amounts estimated the loss of value that ThermoTek sustained from defendants' use of ThermoTek's proprietary information.

Similarly, Weisheit calculated the lost profits due to lost wrap sales by first combining the wrap sales[7] made by Wabash Medical, WMI, and Integrated Orthopedics from 2010[8] through 2015, for a total of $7,213,084.00.  Trial Tr. 8:111-112; Ds. 12/18/15 Mot. J. Matter

---

[6]Weisheit combined unit sales for accounts numbered 4000 and 4060, which Wilford identified as accounts containing unit sales.  Weisheit identified account number 4000 as "Sales – Other" and account number 4060 as "Rental of Equipment – Other."  Ds. 12/18/15 Mot. J. Matter of Law App. 1262.

[7]Weisheit combined the sales for accounts numbered 4017 and 4022, which correspond to accounts for "VascuTherm Pad," "VascuTherm Pad Sales," "New Wrap Sales," and "VascuTherm/DVT Pad."  Ds. 12/18/15 Mot. J. Matter of Law App. 1264.

[8]Weisheit did not explain at trial or in his report why he considered VascuTherm unit sales from 2011 to 2015, but considered VascuTherm wrap sales from 2010 to 2015.  He also did not explain why he used a five-year period to measure the value of ThermoTek's proprietary information to ThermoTek.

of Law App. 1264.  Weisheit then multiplied the total wrap sales by 55.33%—ThermoTek's gross profit margin for VascuTherm wrap sales—for a gross profit of $3,990,999.00.  Ds. 12/18/15 Mot. J. Matter of Law App. 1264, 1270.  Weisheit applied ThermoTek's gross profit margin, instead of the profit margins of Wabash Medical, WMI, and Integrated Orthopedics, to estimate the value of ThermoTek's proprietary information to ThermoTek.

On cross-examination, Weisheit admitted that his opinion "compared apples and oranges" because he applied ThermoTek's gross profit margin to the gross sales of the Orthoflex companies.  Trial Tr. 8:164-165.  In his expert report, Weisheit acknowledged that the Orthoflex companies' profit margins, which ranged from 7% to 35%—not ThermoTek's profit margin—should be applied to the gross sales to determine lost profits.  Ds. 12/18/15 Mot. J. Matter of Law App. 1104.  But Weisheit used ThermoTek's gross profit margin because (1) he needed to use a variable profit margin; (2) the precise profit margins of the Orthoflex companies were unclear; and (3) the Orthoflex companies' profit margins of 7% to 35% "appear[ed] to be low when compared to ThermoTek's profit margin" of approximately 43% to 55%.  Trial Tr. 8:166; Ds. 12/18/15 Mot. J. Matter of Law App. 1104.  Despite this acknowledged difference in profit margins—ThermoTek's ranging between 42.86% and 55.33%, and the Orthoflex companies' ranging between 7% and 35%—Weisheit assumed in formulating his opinions that "ThermoTek's gross profit percentages on wrap and unit sales reasonably approximate those of the Wilford Companies."  Ds. 12/18/15 Mot. J. Matter of Law App. 1105.  Weisheit also acknowledged that the Orthoflex companies rent the VascuTherm units to multiple patients, so it is difficult to determine an appropriate profit

margin.  Ds. 12/18/15 Mot. J. Matter of Law App. 1104.  Accordingly, Weisheit applied ThermoTek's higher gross profit margin to the Orthoflex companies' gross sales.

B

Defendants contend that the evidence is legally insufficient to support any award of lost profits for ThermoTek's unfair competition claim.  They maintain that ThermoTek pleaded, sought, and introduced evidence of disgorgement damages, which are not available under Texas law for unfair competition; there is no evidence of the value of the "head start" defendants enjoyed by using ThermoTek's product; ThermoTek improperly used the Orthoflex companies' profits as a "yardstick" for ThermoTek's lost profits, even though the businesses are not sufficiently comparable; ThermoTek improperly applied its own gross profit margin to the Orthoflex companies' gross sales; and there is no evidence of net lost profits, as required by Texas law.

ThermoTek responds that no law prohibits it from measuring the value of its information by defendants' lost profits; Weisheit properly applied ThermoTek's gross profit margin, instead of the Orthoflex companies', because defendants did not provide information from which he could calculate the Orthoflex companies' gross profit margin and because ThermoTek's gross profit margin provides the value of the information to ThermoTek; Weisheit's use of a gross profit margin accounted for variable expenses; and defendants bore the burden of proving any additional expense that should be deducted to calculate net lost profits.

Defendants reply that it was ThermoTek's burden to prove net lost profits, and it did

not; and ThermoTek did not explain how the Orthoflex companies' profits can serve as a yardstick for ThermoTek's profits or why ThermoTek cannot use its own profits as evidence of the value of ThermoTek's information.

C

As a threshold matter, the parties disagree on the proper measure of damages for ThermoTek's unfair competition claim.

Defendants contend that, under Texas law, a plaintiff asserting common law misappropriation is entitled to damages associated with the development of the misappropriated product, often called the "head start" period of damages.  Ds. 12/18/15 Mot. J. Matter of Law Br. at 28.  Defendants cite *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 842 (5th Cir. 2004), in which the Fifth Circuit affirmed a jury award of development costs as damages for the defendant's fraud and common law misappropriation.[9] Defendants also rely on *Alcatel*, in which the Fifth Circuit explained that common law misappropriation protects the labor, or "sweat equity," that the plaintiff invested in creating the product.  *Alcatel*, 166 F.3d at 788.  Although ThermoTek acknowledges that its development costs are a proper measure of damages for unfair competition, it posits that it is not limited to such damages under Texas law.  ThermoTek maintains that it can seek the value of the misappropriated information to defendants, which can be measured by

---

[9]The *Dresser-Rand* panel did not decide the appropriate measure of damages for a common law misappropriation claim.

defendants' actual profits attributable to the misappropriation.[10]   ThermoTek also contends, however, that it seeks the value of ThermoTek's information *to Thermotek*, *see, e.g.,* P. 1/15/16 Mot. J. Matter of Law Resp. Br. at 28; Trial Tr. 8:107-108, and that it seeks damages in the amount of defendants' profits as a surrogate for ThermoTek's lost profits, which it did not suffer, *see* P. 1/15/16 Mot. J. Matter of Law Resp. Br. at 28 ("However, in most cases, like here, the defendant has utilized the information to its advantage with no obvious effect on the plaintiff save for the relative differences in their subsequent competitive positions.").

The court need not decide what is the proper measure of damages for common law misappropriation.  Even assuming *arguendo* that ThermoTek sought and proved the correct measure of damages, the court holds, for the reasons that follow, that the evidence is legally insufficient to support the jury's award of lost profits for ThermoTek's unfair competition claim.

## D

## 1

To recover lost profits under Texas law, "'the amount of the loss must be shown by competent evidence with reasonable certainty.'"  *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex.1994) (quoting *Sw. Battery Corp. v. Owen,* 131 Tex. 423, 115 S.W.2d 1097, 1098-99 (1938)).  "Recovery for lost profits does not require that the

---

[10]ThermoTek relies on *University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 535 (5th Cir. 1974), in which the Fifth Circuit decided the measure of damages for trade secret misappropriation.  This case is inapposite, however, because the panel did not decide the proper measure of damages for common law misappropriation.

loss be susceptible of exact calculation." *Hiller v. Mfrs. Prod. Research Grp. of N. Am., Inc.*, 59 F.3d 1514, 1521 (5th Cir. 1995) (quoting *Holt Atherton Indus., Inc., v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992)).   Nevertheless, "[a]s a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained." *Id.*

"Lost profits are damages for the loss of net income to a business," and a calculation of lost profits damages must be "based on net profits, not gross revenue or gross profits." *Hunter Bldgs. & Mfg., L.P. v. MBI Glob. L.L.C.*, 436 S.W.3d 9, 18 (Tex. App. 2014, pet. denied) (quoting *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002)).   "'Net profits' are defined as 'what remains in the conduct of business after deducting from its total receipts all of the expenses incurred in carrying on the business." *Atlas Copco Tools, Inc. v. Air Power Tool & Hoist, Inc.*, 131 S.W.3d 203, 209 (Tex. App. 2004, pet. denied) (quoting *Turner v. PV Int'l*, 765 S.W.2d 455, 456 (Tex. App. 1988, pet. denied)).

2

Defendants argue that, even if ThermoTek's lost profits are an appropriate measure of damages for the unfair competition claim, defendants' lost profits cannot be used as a "yardstick" for ThermoTek's lost profits.

Texas law recognizes two methods of proving lost profits: (1) the before-and-after method, and (2) the yardstick method.   *Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 667 (5th Cir. 1974).   Under the before-and-after method, the plaintiff compares its profits before and after the wrongful conduct.   *Id.*   Under the yardstick method, the plaintiff's lost profits are

estimated by studying the profits of business operations that are closely comparable to the plaintiff's operations. *Id.* Texas courts have approved the yardstick method for calculating lost profits where the plaintiff's business is relatively new and thus has insufficient historical profits from which to employ the before-and-after method. *Id.*; *see also DaimlerChrysler Motors Co. v. Manuel*, 362 S.W.3d 160, 190-91 (Tex. App. 2012, no pet.) (holding that plaintiff appropriately relied on yardstick method where plaintiff's business was new and plaintiff relied upon profits of closely comparable businesses that were also owned and operated by plaintiff).

The yardstick method requires that the businesses used as a standard for plaintiff's business be "as nearly identical to the plaintiff's [business] as possible." *Lehrman*, 500 F.2d at 667. In at least two cases, the Fifth Circuit has held that the comparison businesses were improper yardsticks because the plaintiffs did not demonstrate that the comparison businesses were reliable benchmarks for the plaintiffs' businesses. *See, e.g., El Aguila Food Prods., Inc. v. Gruma Corp.,* 131 Fed. Appx. 450, 453 (5th Cir. 2005) (where an expert "made no effort to demonstrate the reasonable similarity of the plaintiffs' firms and the businesses whose earnings data he relied on as a benchmark"); *Eleven Line, Inc. v. N. Tex. State Soccer Ass'n*, 213 F.3d 198, 208 (5th Cir. 2000) (where the expert's yardstick was not nearly identical and he offered no evidence of the comparators' geographic location, size, market served, or costs of operation).

It is unclear whether ThermoTek can properly use the yardstick method because it is not a new business and did not establish that it could not calculate its lost profits using the

before-and-after method.  But assuming *arguendo* that ThermoTek can use the yardstick method, it did not present sufficient evidence for a reasonable jury to find that its business is closely comparable to the businesses of Wabash Medical, WMI, and Integrated Orthopedics.  ThermoTek manufactures VascuTherm units and wraps and sells them to distributors in exchange for a one-time payment.  By contrast, Wabash Medical, WMI, and Integrated Orthopedics distribute durable medical equipment to end users in exchange for recurring rental payments.  Weisheit testified that he did not determine whether the Wilford companies were manufacturers or distributors because it was not important to his opinions. ThermoTek did not otherwise adduce any evidence that the Orthoflex companies were sufficiently closely comparable to ThermoTek such that their profits could be used as a yardstick for ThermoTek's profits.

It is also unclear whether the accounts of the Wilford companies that Weisheit analyzed reflect only products that are comparable to ThermoTek's products.  For example, Weisheit stated in his expert report that he used accounts 4022 and 4017 as benchmarks for ThermoTek's lost profits from wraps.  Wilford testified that account 4022 "contains sales of the possible infringing wraps," and Weisheit stated that "it appears that Account 4017 contains sales of infringing wraps, as the account identifies ThermoTek's VascuTherm system." Ds. 12/18/15 Mot. J. Matter of Law App. 1104.  Similarly, Weisheit assumed that all sales in accounts 4000 and 4060 reflected the Wilford companies' unit sales, but he acknowledged that Wilford testified that there may be non-unit sales or rentals in those accounts.  ThermoTek did not introduce sufficient evidence for a reasonable jury to find that

the entire sales recorded in these accounts reflected comparable products to the VascuTherm units and wraps.

3

Defendants also maintain that there is no evidence of either defendants' or ThermoTek's lost profits because Weisheit applied ThermoTek's own gross profit margin to the Wilford companies' gross sales.

ThermoTek must prove lost profits by using one method that results in a complete calculation of lost profits. *See Holt Alterton Indus., Inc. v. Heine*, 835 S.W.2d 80, 85-86 (Tex. 1992) (reversing award of lost profits where plaintiffs did not provide evidence supporting one complete calculation of lost profits). For example, in *Fluor Enterprises, Inc. v. Conex International Corp.,* 273 S.W.3d 426, 448 (Tex. App. 2008, pet. denied), the court of appeals reversed a lost profits award where the plaintiff's expert inconsistently applied his lost profits methodology, based his opinion on different aspects of plaintiff's business as it benefited plaintiff to do so, and provided piecemeal computations.

ThermoTek contends that it was entitled to apply its own gross profit margin to the Orthoflex companies' gross sales because defendants did not identify variable profit margins for the Orthoflex companies. ThermoTek's arguments are inconsistent. On the one hand, ThermoTek argues that it properly applied its own gross profit margin because the Orthoflex companies' profit margins were not sufficiently specified and were generally lower than ThermoTek's, and therefore incomparable. On the other hand, Weisheit assumed that ThermoTek's profit margins approximated those of the Orthoflex companies, which

- 29 -

necessarily indicates that Weisheit knew the Orthoflex companies' profit margins and that they were comparable.   Regardless, ThermoTek did not prove its lost profits with one complete calculation.

ThermoTek maintains that, in awarding damages, the jury could have applied the Orthoflex companies' profit margins of 7% to 35%, instead of ThermoTek's profit margins of approximately 43% and 55%.   But ThermoTek argued to the jury that it should apply ThermoTek's gross profit margin, and it offered expert testimony regarding lost profits calculated using those margins.   ThermoTek did not introduce any evidence of the Orthoflex companies' profit margins to be applied to any specific product.

4

Defendants also contend that, under Texas law, ThermoTek can only recover net—not gross—lost profits, and that there is no legally sufficient evidence of ThermoTek's net lost profits.

A proper calculation of net lost profits accounts for all expenses incurred in carrying out the plaintiff's business, not just the incremental costs associated with selling the particular product at issue.  *See, e.g., Atlas Copco Tools*, 131 S.W.3d at 209 (reversing and rendering take nothing judgment for plaintiff who presented evidence of incremental costs of selling the product at issue but not other business expenses incurred); *Exel Transp. Servs.*, 323 S.W.3d at 234 (reversing and rendering take nothing judgment on lost profits issue where plaintiff did not present evidence of net profits or proof from which jury could calculate lost net profits); *Texaco, Inc. v. Phan*, 137 S.W.3d 763, 772-73 (Tex. App. 2004,

no pet.) (reversing and remanding for new damages trial where there was no evidence of net profit that accounted for plaintiff's operating expenses).

ThermoTek did not present sufficient evidence from which a reasonable jury could determine ThermoTek's net lost profits.  Weisheit applied ThermoTek's gross profit margin—which accounted for the costs associated with the sale of each unit or wrap—to the Orthoflex companies' gross sales.  ThermoTek did not present any evidence of its fixed costs, such as rent, insurance, office supplies, and advertising expenses.  In fact, Weisheit acknowledged that ThermoTek's gross profit margins are high (approximately 43% to 55%) because they do not account for fixed expenses. Trial Tr. 8:166 ("Q: That's a pretty good chunk, 55 percent profit margin?  A: Well, that profit margin goes to — to pay the fixed expenses of the company.  So that's just the profit margin on the items that we're talking about, the units and the wraps.").

ThermoTek acknowledges that it presented only evidence of its *gross* lost profits—not its *net* lost profits—but it argues that defendants bore the burden of proving fixed costs to be deducted from gross profits to arrive at net lost profits.  The court disagrees.  It was ThermoTek's burden to prove its damages with reasonable certainty.  *Holt Alterton Indus.*, 835 S.W.2d at 85; *see also Phan*, 137 S.W.3d at 773 (reversing damages award where plaintiffs failed to meet their burden of proving net profits from which expenses had been subtracted).

- 31 -

ThermoTek cites the Restatement (Third) of Unfair Competition,[11] which notes in a comment that, where the plaintiff seeks the defendant's lost profits as damages, the defendant bears the burden of proving any fixed expenses that should be deducted from the defendant's gross profits. *See* Restatement (Third) of Unfair Competition §37 cmt. d, g (1995). That is not the case here. ThermoTek applied its own gross profit margin to the Orthoflex companies' sales. ThermoTek bore the burden of proving its fixed costs to be deducted from its gross profit, and it did not meet this burden.

5

Accordingly, even if ThermoTek's unfair competition claim is not preempted, it fails because a reasonable jury could not have awarded ThermoTek the lost profits that it sought. At a minimum, Wilford and Thermo would be entitled to a new trial on damages. *See, e.g., ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 877-78 (Tex. 2010) (holding that when there is some evidence of a lower, reasonably certain amount, court should reverse and remand for new trial on damages); *Phan*, 137 S.W.3d at 773 (reversing and remanding for a new damages trial). And here, where a reasonable jury could not have found lost profits damages, Wilford and Thermo are entitled to dismissal of ThermoTek's unfair competition claim with prejudice. *See, e.g., Kellmann v. Workstation Integrations, Inc.*, 332 S.W.3d 679, 686-87 (Tex. App. 2010, no pet.) (reversing and rendering take-nothing judgment because

---

[11]The court need not decide whether Texas has adopted the Restatement (Third) of Unfair Competition. The court notes, however, that § 37 does not address common law misappropriation.

plaintiff failed to prove net lost profits).

### VIII

The court next addresses the jury's award of damages on ThermoTek's fraud claim.

### A

Defendants contend that the jury's award of lost profits on ThermoTek's fraud claim is not supported by legally sufficient evidence. The jury awarded $770,000 in lost profits from wrap sales, $500,000 in lost profits from unit sales, $193,000 in lost profits from additional expenses for unit repairs, $90,000 in lost profits from additional engineering costs, and $13,000 in lost profits from additional evaluation and tooling costs. Weisheit opined that, due to Wilford's fraud, ThermoTek suffered lost profits in the amount of $1,463,378.00 from sales of VascuTherm units and $3,553,217.00 from sales of VascuTherm wraps that ThermoTek would have sold to defendants or other Wilford companies but for Wilford's fraud.[12] He derived this amount based on the historical buying pattern of ThermoTek's sales of VascuTherm units and wraps to the Wilford companies. Weisheit assumed that the companies' historical buying patterns prior to 2010 would have continued into the future but for Wilford's fraud, and he determined how many VascuTherm wraps and units ThermoTek would have sold to the Wilford companies from June 2010 to November 2014 according to that buying pattern. To derive lost profits, Weisheit applied ThermoTek's profit margin of

---

[12]Weisheit testified that ThermoTek incurred damages of $1,610,940 in lost sales of VascuTherm wraps for units ThermoTek had previously sold defendants, $1,463,378.00 in lost sales of new VascuTherm units, and $1,942,277.00 in lost sales of VascuTherm wraps for the new units that ThermoTek would have sold defendants but for the fraud.

- 33 -

55% for wraps and 43% for unit sales to the projected lost sales figures.

Weisheit also opined that ThermoTek suffered lost profits in the amount of $193,084.00 for repair costs, $90,190 for engineering costs, and $13,100 for retooling and evaluation costs that it incurred for the damaged VascuTherm units that Wilford fraudulently returned to ThermoTek.  According to Weisheit, these amounts correspond to the actual losses that ThermoTek sustained from damaged VascuTherm units and wraps that Wilford returned to ThermoTek.

Weisheit explained that his lost profits calculations did not take into account ThermoTek's fixed expenses, only the profit margin on the specific products: the VascuTherm wraps and units.

B

According to defendants, no evidence supports the jury's award because there is no proof that, but for Wilford's fraud, the Wilford companies would have continued purchasing VascuTherm wraps and units at the historical rate; ThermoTek failed to prove lost profits with reasonable certainty; ThermoTek's lost profits evidence demonstrates *gross* lost profits, not *net* lost profits, and is therefore legally insufficient; and there is no evidence that ThermoTek lost profits due to the additional expenses for repairs, engineering, and retooling and evaluation of the VascuTherm units Wilford returned to ThermoTek.

ThermoTek responds that Weisheit properly calculated lost profits based on the Wilford companies' historical buying patterns, as reflected by the parties' distribution agreement; by using a gross profit margin, Weisheit took into account the per-unit expenses

- 34 -

that would be incurred in sales of VascuTherm units and wraps; and the additional expenses for repairs, engineering, and retooling and evaluation of the damaged, returned VascuTherm units are properly considered lost profits because they reflect expenses that lowered ThermoTek's profits.

Defendants reply that ThermoTek's calculation of gross profits does not account for all of ThermoTek's expenses, such as overhead expenses like rent, insurance, office supplies, and advertising expenses, and therefore is not a proper measure of lost profit damages; and that it is the burden of ThermoTek, not of defendants, to prove lost profits, including all expenses that must be deducted from sales to calculate net profits.

C

As the court has explained above, *see supra* § VII(D)(1), to recover lost profits under Texas law, the amount of the loss must be shown by competent evidence with reasonable certainty.  Recovery of lost profits does not require that the loss be susceptible of exact calculation.  At a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained.

Lost profits are damages for the loss of net income to a business, and a calculation of lost profits damages must be based on net profits, not gross revenue or gross profits.  Net profits are what remains in the conduct of business after deducing from its total receipts all of the expenses incurred in carrying on the business.  A proper calculation of net lost profits accounts for all expenses incurred in carrying out the plaintiff's business, not just the incremental costs associated with selling the particular product at issue.

- 35 -

D

There is no evidence from which a reasonable jury could have found that ThermoTek incurred lost profits in the form of lost sales of VascuTherm units and wraps to the Wilford companies as a result of Wilford's fraud.   ThermoTek maintains that Wilford falsely represented to ThermoTek that he intended to keep ThermoTek's information to himself and that he would not share it, and that ThermoTek's VascuTherm wraps and units were defective.   Under Texas law, to recover from Wilford for fraud, ThermoTek was obligated to present evidence that would enable a reasonable jury to find that ThermoTek acted in reliance on these misrepresentations and suffered injury as a result.   *See, e.g., Hoffman v. L&M Arts*, 2013 WL 4511473, at *1 (N.D. Tex. Aug. 26, 2013) (Fitzwater, C.J.) (citing *Beijing Metals & Minerals Import/Export Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1185 (5th Cir. 1993) (Texas law)), *appeals docketed*, Nos. 15-10046, 15-10090, and 15-10293 (5th Cir. Jan. 20, 2015, Feb. 6, 2015, and Apr. 8, 2015).   But ThermoTek did not introduce sufficient evidence for a reasonable jury to find that Wilford's misrepresentations caused ThermoTek to suffer damages in the form of lost sales to the Wilford companies.   The evidence introduced at trial would not permit a reasonable jury to find that the reason the Wilford companies did not purchase units from ThermoTek was because Wilford committed fraud.   Put differently, ThermoTek failed to present sufficient evidence for a reasonable jury to find that Wilford's fraud caused the Wilford companies not to purchase VascuTherm units and wraps after June 2010.

In fact, ThermoTek argued at trial that all of the Wilford companies' purchases—not

just the projected sales after June 2010—were part of Wilford's scheme to defraud ThermoTek. Under ThermoTek's theory, it follows that, but for Wilford's fraud, the Wilford companies would not have purchased VascuTherm units or wraps in the first place.[13]

Defendants also maintain that ThermoTek can only recover its net lost profits, and that there is no legally sufficient evidence from which a reasonable jury could find ThermoTek's net lost profits. For the reasons explained *supra* at § VII(D)(4), the court agrees, and it holds that the jury's award of lost profits for fraud fails on this basis as well.

Finally, ThermoTek did not introduce sufficient evidence to support the jury's award of lost profits in the form of ThermoTek's additional expenses for unit repairs, engineering costs, and evaluation and tooling costs.  ThermoTek did not present any calculation of ThermoTek's lost profits from expenses for unit repairs, engineering costs, and evaluation and tooling costs.  Instead, Weisheit only testified that ThermoTek incurred these expenses, which he labeled "actual losses."  Weisheit did not perform any lost profits analysis on theses costs, nor did ThermoTek present evidence of any profit associated with these expenses or any fixed expenses from which a net lost profits figure could be calculated.  Because there is no evidence from which a reasonable jury could have found the amount of net lost profits due to unit repairs, engineering costs, and evaluation and tooling costs, Wilford is entitled to judgment as a matter of law on ThermoTek's fraud claim.

---

[13]In addition, there is legally insufficient evidence that, but for Wilford's fraud, the Wilford companies would have purchased VascuTherm wraps and units for four years after the fraud was committed.

IX

Wilford moves in the alternative for a new trial on ThermoTek's fraud claim.[14]  Under

Rule 59(a), a court can grant a new jury trial "for any reason for which a new trial has

heretofore been granted in an action at law in federal court."  Rule 59(a)(1)(A).  A court can

grant a new trial if it concludes that the verdict is against the weight of the evidence, the

damages awarded are excessive, the trial was unfair, or prejudicial error was committed in

its course.  *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir.1985) (citations

omitted).

Wilford maintains that the trial was unfair because the jury was permitted to hear

evidence in support of ThermoTek's unfair competition claim, which is preempted by federal

copyright and patent law.  ThermoTek responds that the same evidence supports both claims.

The court conditionally denies defendants' motion for a new trial.  If the court's grant

of judgment as a matter of law is reversed on appeal and the Fifth Circuit holds that

_____

[14]Under Rule 50(c)(1), the court must conditionally rule on defendants' motion for a new trial.

> If the court grants a renewed motion for judgment as a matter of
> law, it must also conditionally rule on any motion for a new trial
> by determining whether a new trial should be granted if the
> judgment is later vacated or reversed. The court must state the
> grounds for conditionally granting or denying the motion for a
> new trial.

Rule 50(c)(1).  If the court conditionally grants a new trial and the appellate court finds that
the grant of judgment was in error, "the new trial must proceed unless the appellate court
orders otherwise." Rule 50(c)(2). If the court conditionally denies a new trial and the
appellate court reverses judgment, "the case must proceed as the appellate court orders." *Id.*

ThermoTek is entitled to recover the damages awarded by the jury on ThermoTek's unfair competition and/or its fraud claim, the court cannot say that the verdict was against the weight of the evidence, the damages awarded were excessive, the trial was unfair, or prejudicial error was committed.

## X

Because the court is granting judgment as a matter of law dismissing ThermoTek's unfair competition claim, the court denies as moot ThermoTek's motion to substitute or join parties.  Because the court is entering an amended judgment that obligates the parties to bear their own taxable costs,[15] the court overrules defendants' objections to ThermoTek's bill of costs filed December 4, 2015 without prejudice as moot.

---

[15]Because ThermoTek, Orthoflex, Motion Medical, and Wabash Medical did not recover on their claims or counterclaims, and because the costs incurred by Wilford, Thermo, and Tri 3 likely overlap substantially with those incurred by Orthoflex, Motion Medical, and Wabash Medical (and the jury found against Wilford, Thermo, and Tri 3 as to liability, although without awarding damages (Tri 3) or recoverable damages (Wilford and Thermo), the court in its discretion is ordering the parties to bear their own taxable costs of court.

* * *

The court grants defendants' motion for judgment as a matter of law; conditionally denies defendants' alternative motion for a new trial; and denies as moot ThermoTek's motion to substitute or join parties. The court will enter an amended judgment today.

**SO ORDERED**.

August 15, 2016.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE